## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>POLISHED.COM INC., *et al.*,<br><br>Debtors. [1] | Chapter 7<br><br>Case No. 24-10353 (TMH)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Polished.com Inc., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT FOUERTI; MARIA JOHNSON; DOUGLAS T. MOORE; ELLERY W. ROBERTS; ROBERT BARRY; ELLETTE A. ANDERSON; CLARK R. CROSNOE; GLYN C. MILBURN; ALAN P. SHOR; EDWARD J. TOBIN; G. ALLAN SHAW; JAMES SCHNEIDER; and ELIE FOUERTI,<br><br>Defendants. | Adv. Proc. No. 26-50213 (TMH) |

**OPENING BRIEF OF DEFENDANTS ALBERT FOUERTI AND ELIE FOUERTI
IN SUPPORT OF THEIR MOTION TO DISMISS
THE CHAPTER 7 TRUSTEE'S COMPLAINT**

Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
**MORRIS JAMES LLP**
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Email:  ckunz@morrisjames.com
      jwaxman@morrisjames.com

John F. Sylvia  (admitted *pro hac vice*)
Emily K. Musgrave (admitted *pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 348-1820
Email:  JFSylvia@mintz.com
      EKMusgrave@mintz.com

Dated: June 8, 2026      *Counsel to Defendants Albert and Elie Fouerti*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629); Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); Superior Deals Inc. (0096); and YF Logistics LLC (8373).

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

NATURE AND STAGE OF PROCEEDING ..........................................................2

STATEMENT OF FACTS ................................................................................3

    I.      The Trustee's Allegations of Improper Business Practices. ....................................5

          A.     Post-Merger allegations concerning allegedly false inventory numbers. ...................................................................................6

          B.     Post-Merger allegations concerning falsified documents. ..........................6

          C.     Post-Merger allegations concerning tax law violations. ...........................7

          D.     Allegations concerning labor and immigration law violations. ...................7

          E.     Audit Committee Investigation and Restatement of Financials. .................7

    II.     The Company's Financial Distress. ..........................................................8

    III.    The Eastern District of New York dismissed with prejudice a putative class action complaint alleging securities fraud on these same allegations. ............9

ARGUMENT ..............................................................................................10

    I.      Legal Standard. ...............................................................................10

    II.     The constructive fraudulent transfer claims must be dismissed because the Trustee failed to adequately plead insolvency and lack of reasonably equivalent value (Claims 7 & 8). .......................................................11

          A.     The Trustee's bare allegation that Polished "was insolvent" is not enough. ..................................................................................12

          B.     Polished's publicly available SEC filings contradict any allegation of insolvency at the time, or as a result, of the Merger. ...........................13

          C.     Even were Polished's insolvency adequately pled, the Complaint fails to allege the absence of reasonably equivalent value for the Merger. .................................................................................14

          D.     The Section 544 claim fails to adequately allege a triggering creditor. .................................................................................16

          E.     The Section 550 claim fails with the Sections 1304(a) & 1305(a) claims. ...................................................................................17

    III.    The remainder of the Claims must be dismissed because they rely on hearsay allegations which another Court dismissed as not credible and which the Trustee has neither investigated nor verified. ...................................17

    IV.    The Pre-Merger Common Law Fraud claims must be dismissed because the Complaint does not plead with particularity any of the requirements (Claim 1). .....................................................................................19

          A.     The Complaint does not plead a single fraudulent representation Albert or Elie made in connection with the Merger. ................................20

i

B.     The Complaint fails to plead with particularity Albert or Elie's pre-Merger knowledge or intent concerning any allegedly fraudulent activities. ..................................................................................21

C.     The Complaint fails to plead with particularity any damage to Polished from the Merger. ........................................................22

V.     The unjust enrichment claim against Albert fails for the same reason as the pre-Merger fraud claim (Claim 6).............................................................22

VI.     The Trustee lacks standing to allege post-Merger fraud (Claims 1 & 5).............23

VII.     The claims for post-Merger fraud and breach of fiduciary duty fail because the Complaint fails to plead with particularity the elements of these claims, including that Polished was damaged as a result of this alleged conduct (Claims 1, 2, & 3). ..................................................................24

A.     The Trustee fails to plead facts sufficient to establish that either Albert or Elie owed the Company a fiduciary duty at the relevant times. ...........................................................................................25

B.     The Trustee fails to plead, much less with particularity for the fraud claim, facts sufficient to establish post-Merger misconduct. ...........25

VIII.     The Trustee fails to plead any facts sufficient to establish that Elie Fouerti aided and abetted any breach of fiduciary duty or fraud (Claims 4 & 5). .............28

IX.     The Complaint should be dismissed with prejudice because amendment would be futile. ..................................................................................29

CONCLUSION...................................................................................30

RULE 7008-1 STATEMENT ................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accelerant Twister, LLC v. Marjo, LLC,*
2023 U.S. Dist. LEXIS 119275 (D. Del. July 11, 2023) ..........................................23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................................11

*Basho Techs. Holdco B, Ltd. Liab. Co. v. Georgetown Basho Inv'rs, Ltd. Liab. Co.,*
No. 11802-VCL, 2018 Del. Ch. LEXIS 222 (Del. Ch. July 6, 2018) ....................26

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................................10

*Beskrone v. Opengate Capital Grp., LLC (In re Pennysaver USA Publ'g, LLC),*
602 B.R. 256 (Bankr. D. Del. 2019) ......................................................................30

*Bond v. Rosen (In re NSC Wholesale Holdings LLC),*
637 B.R. 71 (Bankr. D. Del. 2022) ................................................................. *passim*

*Eden Alpha CI LP v. Polished.com Inc.,*
763 F. Supp. 3d 270 (E.D.N.Y. 2025) ...........................................................9, 18, 22

*Eden Alpha CI UP v. Polished.Com Inc.,*
No. 22-CV-6606 (NGG) (VMS), 2026 U.S. Dist. LEXIS 49394 (E.D.N.Y. Mar. 10, 2026)..........................................................................................9, 10, 17, 18

*Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP),*
2021 Bankr. LEXIS 1643 (Bankr. N.D. Tex. June 18, 2021).................................14

*FS Parallel Fund L.P. v. Ergen,*
No. 19853, 2004 Del. Ch. LEXIS 160 (Del. Ch. Nov. 3, 2004)............................24

*FTC v. Shire ViroPharma, Inc.,*
917 F.3d 147 (3d Cir. 2019).....................................................................................3

*FTX Recovery Trust v. Goodly Inst. (In re FTX Trading Ltd.),*
No. 22-11068 (KBO), 2026 Bankr. LEXIS 472 (Bankr. D. Del. Feb. 27, 2026) ...................22

*Giuliano v. Ferdinand (In re Liquid Holdings Group, Inc.),*
Nos. 16-10202 (KG), 17-50662 (KG), 2018 Bankr. LEXIS 2650 (Bankr. D. Del. Sep. 4, 2018) ....................................................................................................16

*Giuliano v. Ferdinand (In re Liquid Holdings Group, Inc.)*,
Nos. 16-10202 (KG), 17-50662 (KG), 2018 Bankr. LEXIS 1665 (Bankr. D.
Del. June 6, 2018) ................................................................................................11, 12, 17

*Gordon-Oliver v. Wiesner Prods. (In re Ryan & Jane Ltd.)*,
Nos. 13-23243 (RDD), 14-08253 (SHL), 2016 Bankr. LEXIS 2479 (Bankr.
S.D.N.Y. July 5, 2016)..............................................................................................23

*Great Western Mining & Mineral Company v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010)......................................................................................29

*In re AgFeed USA, LLC.*,
2015 Bankr. LEXIS 4272 (Bankr. D. Del. Dec. 15, 2015)........................................27

*In re Connectics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) ...............................................................17, 19

*In re Endo Int'l Plc*,
Nos. 22-22549 (DSJ), 24-7030 (DSJ), 2026 Bankr. LEXIS 1337 (Bankr.
S.D.N.Y. May 29, 2026) ......................................................................................15, 16

*In re Garcia*,
494 B.R. 799 (Bankr. E.D.N.Y. 2013)........................................................................15

*In re Oracle Corp. Derivative Litig.*,
2020 Del. Ch. LEXIS 218 (Del. Ch. June 22, 2020) .................................................28

*In re OSC 1 Liquidating Corp.*,
529 B.R. 825 (Bankr. D. Del. 2015) ..........................................................................22

*In re Worth Collection, Ltd.*,
2024 Bankr. LEXIS 2265 (Bankr. D. Del. Sept. 24, 2024) .......................................13

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
Nos. 15-11469 (LSS), 2019 Bankr. LEXIS 2817 (Bankr. D. Del. Sep. 6, 2019) ....13

*JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*,
558 B.R. 116 (Bankr. D. Del. 2016) .............................................................10, 24, 28

*Körber Supply Chain US, Inc. v. DOT Holdings Co.*,
No. 24-00236-RGA, 2025 U.S. Dist. LEXIS 26658 (D. Del. Feb. 13, 2025) .......21,

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991)........................................................................................3

*Kravitz v. Samson Energy Co., LLC (In re Samson Res. Corp.)*,
2023 Bankr. LEXIS 1538 (Bankr. D. Del. June 14, 2023)........................................11

*Leo Invs. Hong Kong Ltd. v. Tomales Bay Capital Anduril III Ltd. Partnership*,
    342 A.3d 1166 (Del. Ch. 2025) ................................................................................28

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
    No. 2:10-CV-0302 MRP, 2011 U.S. Dist. LEXIS 125203 (C.D. Cal. May 5,
    2011) ........................................................................................................................19

*McGown v. Silverman & Borenstein, PLLC*,
    No. 13-cv-748-RGA/MPT, 2014 U.S. Dist. LEXIS 15489 (D. Del. Feb. 7,
    2014) ........................................................................................................................17

*Mooney v. Pioneer Nat. Res. Co.*,
    2017 Del. Super. LEXIS 533 (Super. Ct. Oct. 24, 2017) ........................................22

*NACCO Indus. v. Applica Inc.*,
    997 A.2d 1 (Del. Ch. 2009) .....................................................................................25

*North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
    930 A.2d 92 (Del. 2007) ..........................................................................................25

*Off. Comm. of Unsecured Creditors of Pack Liquidating, LLC v. Vagenas (In re
    Pack Liquidating, LLC)*,
    Nos. 22-10797 (CTG), 23-50590 (CTG), 2025 Bankr. LEXIS 2215 (Bankr. D.
    Del. Sep. 5, 2025) ...........................................................................................12, 14, 15

*Official Comm. of Unsec. Creditors of Vivaro Corp. v. Leucadia Nat'l Corp. (In re
    Vivaro Corp.)*,
    524 B.R. 536 (Bankr. S.D.N.Y. 2015) .....................................................................15

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ......................................................................................3

*Percoco v. Deckers Outdoor Corp.*,
    No. 12-1001, 2013 U.S. Dist. LEXIS 94558 (D. Del. July 8, 2013) .......................22

*PR Acquisitions, LLC v. Midland Funding LLC*,
    No. 2017-0465-TMR, 2018 Del. Ch. LEXIS 137 (Del. Ch. Apr. 30, 2018) ...........28

*Premier Healthcare, Inc. v. Waters*,
    No. 2023-1263-BWD, 2024 Del. Ch. LEXIS 336 (Del. Ch. Oct. 4, 2024) .....11, 12, 13

*Skajem v. Chicken Soup for the Soul Entm't (In re Chicken Soup for the Soul
    Entm't)*,
    Nos. 24-11442, 24-50128 (MFW), 2025 Bankr. LEXIS 3185 (Bankr. D. Del.
    Dec. 9, 2025) .................................................................................................10, 11, 21

*Smith v. Smitty McGee's, Inc.*,
    No. 15668, 1998 Del. Ch. LEXIS 87 (Del. Ch. May 8, 1998) ................................28

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006)........................................................................24

*West Realm Shires, Inc. v. Nass (In re FTX Trading Ltd.)*,
   Nos. 22-11068 (KBO), 24-50210 (KBO), 2025 Bankr. LEXIS 1793 (Bankr.
   D. Del. July 23, 2025).................................................................................29

**Statutes**

11 U.S.C. § 544.............................................................................................16,

11 U.S.C. § 548(a)(1)(B) .............................................................................13, 16

15 U.S.C. § 78u-4 ..........................................................................................9

**Other Authorities**

Fed. R. Bankr. P. 7011....................................................................................2

Fed. R. Bankr. P. 7012.................................................................................2, 3

Fed. R. Bankr. P. 7009..................................................................................11

Fed. R. Bankr. P. 9011..................................................................................18

Fed. R. Civ. P. 8(a) ....................................................................................2, 12

Fed. R. Civ. P. 9(b) ................................................................................... *passim*

Fed. R. Civ. P. 11(b) ....................................................................................19

Fed. R. Civ. P. 12(b)(6)..............................................................................2, 9, 17

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In 2015, Albert and Elie Fouerti founded Appliances Connection, an online seller of appliances. On June 2, 2021, having finally persuaded the Fouertis to sell their successful business along with its deep ties to the vendors and customers who made it so, Polished (the "Debtor") acquired Appliances Connection (the "Merger"). Glomming on to the Fouertis' vendor and customer relationships, Polished tried—and failed—to emulate Appliances Connection's success. Albert and Elie resigned as Polished's CEO and COO (respectively) within sixteen months in October 2022. Polished experienced worsening financial troubles over the ensuing years, ultimately leading to its Chapter 7 filing on March 7, 2024—***nearly three years*** after the Merger.

By this Complaint, though, the Trustee now seeks to (1) claw back the money Polished paid to acquire Appliances Connection three years before Polished's demise on theories of constructive fraudulent transfer (Claims 7 & 8), fraud (Claim 1), and unjust enrichment (Claim 6); and (2) impose additional (and perhaps overlapping) monetary damages on Albert and Elie for alleged post-transaction fraud (Claim 1) and a breach of fiduciary duty (Claims 2 & 3) (or perhaps aiding and abetting the same (Claims 4 & 5)). Yet the Complaint does not adequately plead a single legal basis for these demands. The constructive fraudulent transfer claims fail because the Complaint does not allege a single fact in support of its conclusion that Polished was insolvent or was rendered insolvent by the Merger, nor does it mention a single fact about the Company's valuation or any basis for concluding the transaction did not provide reasonably equivalent value. The common law fraud claim fails because the Complaint does not plead with particularity a single material misrepresentation that either Albert or Elie made in connection with the Merger on which Polished supposedly relied to its detriment. The unjust enrichment claim falls with the fraud claims: the Complaint does not explain what benefit Albert has "unjustly retained," particularly when Polished dragged his successful company into bankruptcy.

1

Unable to adequately plead pre-Merger misconduct, the Complaint meanders to instead demand damages for alleged harm to "Polished and its creditors" *after* the Merger. Despite alleging a vague collection of "fraudulent business and accounting practices," the Complaint adequately pleads none, and, even if it did, the Complaint does not explain how any of these alleged "practices" caused the harm the Trustee identifies: Polished's Chapter 7 bankruptcy *three years after the Merger, and seventeen months after Albert resigned as CEO and Elie resigned as COO*. The Trustee's claims for breach of fiduciary duty similarly fail.

Even were the Court to look beyond the Complaint's legal deficiency, the Complaint also lacks any reasonable factual basis. Although the Trustee does not tell this Court, the Complaint is actually a summary of allegations presented in a putative class action in the Eastern District of New York (the "Securities Fraud Case"). Plaintiff's counsel there attributed the allegations to anonymous, former Polished employees. Five days after the Trustee filed this Complaint, the court in EDNY dismissed that case with prejudice, declining to credit these anonymous allegations. The Trustee does not plead a single, affirmative step he took to reasonably investigate these borrowed, hearsay allegations, nor does he in any way shore up their reliability.

Bankruptcy Rules 7011 and 7012 (and the civil procedure rules they incorporate) preclude this type of pleading, and this Court should reject it.

Because the Complaint relies on facts another federal court already found unreliable and on legal theories it does not and cannot adequately plead, it must be dismissed with prejudice.

## NATURE AND STAGE OF PROCEEDING

Polished.com Inc. ("Polished") filed for Chapter 7 bankruptcy on March 7, 2024. The Trustee filed his Complaint in this Adversary Proceeding on March 5, 2026. (D.I. 1, the "Complaint"). Albert and Elie Fouerti (collectively, "the Fouertis") hereby move to dismiss the Complaint in its entirety, with prejudice, pursuant to Rules 12(b)(6), 8(a), and 9(b) of the Federal

2

Rules of Civil Procedure, made applicable to this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, for failure to state a claim for relief.

## STATEMENT OF FACTS

Albert and Elie Fouerti founded Appliances Connection, a privately held online seller of appliances in 2015. ¶ 27.[2] Albert was the CEO, and Elie a founder and Vice President. ¶¶ 11, 23. Polished.com Inc. was an online appliance company that sold furniture, appliances, and other home goods to consumers, as well as commercial appliances to businesses. [Ex. 1, S-1 at 1, 3].[3,4] Founded in 1951 as 1847 Goedeker, Inc, Polished grew from a privately held company in St. Louis into a nationwide retailer. ¶¶ 24–26. In January 2019, Polished (then still known as 1847 Goedeker) was incorporated in Delaware as a special purpose acquisition company and, on April 5, 2019, began trading on the NYSE under the ticker symbol "GOED." ¶ 26. The Company changed its name to "Polished.com Inc." on July 20, 2022. ¶ 33.

In August 2020, Polished began pursuing the Fouertis to sell Appliances Connection. ¶ 28. On October 20, 2020, Polished's Board of Directors approved the Merger. ¶ 29. The parties executed the initial purchase agreement that same day, with subsequent amendments on December 20, 2020 and April 6, 2021. *Id.*

To fund the acquisition, Polished filed with the SEC a Form S-1 dated May 3, 2021

---

[2] All ¶ citations refer to paragraphs in the Complaint [D.I. 1].

[3] All citations to Exhibits (Ex.) refer to the Exhibits attached to the Declaration of Emily Kanstroom Musgrave dated June 8, 2026, and filed herewith.

[4] This Court may take judicial notice of SEC filings in deciding a motion to dismiss because "no serious questions as to their authenticity can exist." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (finding that the information derived from the Form 4s and Forms 5s filed with the SEC is a "matter of public record"); *see FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 151 n.5 (3d Cir. 2019) (taking notice of a fact contained within the defendant's Form 8-K SEC filings even though filings were not in the complaint).

representing that (1) it completed an IPO of common stock yielding "net proceeds of $8,602,166" on August 4, 2020; (2) it received net proceeds of $4,590,000 from the sale of notes and warrants on March 19, 2021, to "supplement our cash flow…and provide additional liquidity"; and (3) "Management has prepared estimates of operations for fiscal years 2021 and 2022 and believes that sufficient funds will be generated from operations to fund our operations and to service our debt obligations for one year from the date of the filing of this prospectus." [Ex. 1 at 59]. On May 27, 2021, Polished issued a prospectus in connection with an offering of common stock. [Ex. 2]. There, Polished explained its intention "to enter into a senior secured credit facility involving a term loan in the expected principal amount of $60 million, which we intend to use to pay a portion of the purchase price to acquire Appliances Connection," with the remainder funded from the proceeds of a $190 million public offering. [Ex. 2 at 1]. Neither the Form S-1 nor the prospectus contains any going concern qualification. The Merger closed on June 2, 2021. Polished paid $222 million for Appliances Connection in cash and stock, $180 million of which was paid to Albert in cash. ¶ 34. Albert and Elie served as CEO and COO (respectively) from September 1, 2021 until October 14, 2022, when they both resigned; Albert also served as a Director during that same period, resigning in December 2022. ¶ 11.

On March 7, 2024, Polished filed for Chapter 7 bankruptcy. The Complaint appears to allege misconduct and attendant causes of action arising from two time periods: (1) in connection with the Merger, yielding damages of $180 million, i.e., the cash portion of the amount Polished paid to acquire Appliances Connection (Claim 1 Fraud, Claim 6 Unjust Enrichment, and Claims 7-8 Constructive Fraudulent Transfer); and (2) some unspecified period of time after the Merger and before the Chapter 7 filing, yielding an unquantified amount of damages "but which exceed the sum of $200 million" (Claims 2–4 Breach of Fiduciary Duty, Aiding and Abetting the same,

and Claim 5 Aiding and Abetting Fraud).

## I.    The Trustee's Allegations of Improper Business Practices.

The Trustee alleges that "fraudulent business and accounting practices" "resulted in falsified financial statements, [which] showed Appliances Connection to be profitable and valuable when it was not, and caused Polished to materially overpay to purchase Appliances Connection" and resulted in "a $180 million cash payout for Albert Fouerti." ¶¶ 35, 97, 130, 133. Nearly all the allegedly "false and misleading statements" the Trustee says constitute "fraudulent business and accounting practices" are statements ***Polished (not Albert) made before the Merger***. The Complaint does not explain how Polished's pre-Merger statements could be a fraud that Albert committed when he was not yet even a part of that Company. The Trustee cites:

(i)    a misrepresented liability in ***Polished's*** April 22, 2020 IPO Registration Statement (four months before the Trustee even alleges Polished approached Albert to discuss the Merger and a year before it was consummated), ¶ 40(a);

(ii)    Form 10-Q quarterly reports for the second and third quarters of 2020 and all quarters of 2021[5] in which Polished "falsely represent several line items (which later had to be restated) and failed to disclose inadequate internal controls" ¶ 40(b);

(iii)    continued failure "to disclose issues with internal controls" in the Secondary Public Offering Registration Statement filed with the SEC on May 3, 2021 and in the Form 10-Q for 2Q 2021. ¶ 40(a)-(c).

(iv)    a March 2021 issuance of restated financials. ¶ 45.

After the Merger, the Complaint alleges that the 2021 Proxy Statement (filed five months later, on November 8, 2021), contained "material misstatements and omissions about executives' compliance with the Company's Code of Conduct and executive compensation," certain financial restatements, and "inadequate internal controls." ¶ 40(d).

---

[5] Although the Trustee does not specify, Polished filed three 10-Qs for 2021: (1) a 10-Q filed 05/12/2021 for quarter ending 3/31/2021; (2) a 10-Q filed 08/12/2021 for quarter ending 06/30/2021; and (3) a 10-Q filed 11/15/2021 for quarter ending 09/30/2021. Of these, Albert signed only the September 30, 2021 10-Q.

#### A. *Post-Merger allegations concerning allegedly false inventory numbers.*

Although the Complaint repeatedly alleges that Polished reported "false inventory numbers," ¶¶ 46, 49, 56, it only pleads one specific instance: Polished's VP of Logistics conducted "two hand counts of inventory" at some unspecified time "[f]ollowing the Merger" and determined the ledger "overstated inventory by approximately 1,200 pieces." ¶¶ 46, 48. The Complaint pleads nothing about the type, value, or materiality of this inventory given that Appliances Connection offered 300,000 products. [Ex. 2 at 84].] The remaining allegations are equally vague and unattributed: (i) "the physical count number was much smaller than the numbers that were in the ledger" ¶ 52(d); (ii) "[e]mployees would regularly search the warehouse for pieces that had been sold online but did not actually exist" ¶ 52(e); (iii) "an inventory control manager" "made numerous recommendations to Elie Fouerti about how to improve inventory practices" which Elie declined to adopt ¶ 52(f); and (iv) "Refurbished, used, and damaged items were fraudulently advertised as 'brand new'." ¶ 52(g).

#### B. *Post-Merger allegations concerning falsified documents.*

The Trustee alleges that, at unspecified times, Polished "under the leadership of Albert Fouerti and other Defendants" altered business records "defrauding customers, vendors, and others and exposing Debtors to liability." ¶ 58. The Trustee variously alleges that "the Fouertis implemented" (¶ 57), "directed" (¶ 59), "routinely ordered" ¶¶ 58(a), (c), or perhaps were not even involved in (¶ 58(b), (d)) altering documents to facilitate manufacturer returned outside permitted windows, and changing invoices dates to win chargeback disputes. ¶ 58(a)–(d). The Complaint does not name a single employee, provide a single specific example, or plead any connection between this conduct and the Merger or the Company's bankruptcy. *See* ¶¶ 57–59.

### C.  *Post-Merger allegations concerning tax law violations.*

The Complaint alleges Albert "directed employees to stop filing sales taxes on behalf of Polished, allowed employees to accept inadequate documents from customers claiming to be tax exempt, and knowingly failed to pay the appropriate workman's compensation insurance premiums." ¶ 61. In support, the Trustee alleges a single, specific action by Albert: that, in or about August 2022, he "directed [John Winters, a Polished employee] to stop uploading the Company's sales information" to the platform the Company used to assist with calculating its sales and tax use compliance, TaxJar. ¶ 64(b). The Trustee then alleges that, again at some unspecified point in time, Albert inaccurately assessed the payroll amounts that were submitted to the insurance company, resulting in an increased premium of $494,401. ¶ 68.

### D.  *Allegations concerning labor and immigration law violations.*

The Trustee alleges that the Company "employed large numbers of undocumented workers," ¶¶ 69-71, relying—explicitly and entirely—on allegations from confidential Former Employees quoted in the pleadings in the now-dismissed Securities Fraud Case. ¶ 70 (prefacing all substantive allegations in this regard with "as alleged in the Securities Fraud Case").

### E.  *Audit Committee Investigation and Restatement of Financials.*

The Trustee relies on two of Polished's public filings (and associated stock drops following each) to attempt to connect the causal impact of his collection of allegations of wrongdoing to any harm to the Company. First, nearly two years before filing for Chapter 7 bankruptcy, on August 15, 2022, Polished announced it was delaying its current Form 10-Q filing because the Audit Committee of the Board of Directors "recently began an independent investigation regarding certain allegations made by certain former employees related to the Company's business operations." ¶ 72. This investigation resulted in Albert ***reimbursing*** the Company $3.7 million

($800,000 of which he had allegedly used for personal expenses plus nearly $3 million the Company claims the Audit Committee's investigation cost). *See* ¶ 81. It also resulted in a settlement agreement between Albert and the Company signed on December 21, 2022 and included with the Company's December 27, 2022 8-K in which the Company expressly released Albert "from and against any and all actions, causes of action, suits" etc. "related to the Audit Committee Investigation." [Ex. 3].

Second, on July 31, 2023, Polished filed a restatement of previously issued financial statements for Fiscal Year 2021 and Q1 2022. ¶ 85, [Ex. 4 at 33]. The restatement made adjustments for, *inter alia*: revenue recognition timing, allowances for sales returns, sales tax collections improperly recognized as revenue, over-accrual of vendor rebates, under-accrual of vendor purchases, inventory cutoff errors, and increases in bad debt expense. [Ex. 4 at 33, F-14]. The restated Q1 2022 financials included adjustments to revenue, costs of goods sold, operating expenses, income tax expenses, and other "various miscellaneous adjustments." [*Id.* at F-43]. The Trustee does not explain how any of the alleged misconduct is related to the restatement.

## II.    The Company's Financial Distress.

On May 9, 2022, Polished entered into a Credit Agreement with various lenders and Bank of America (the "Lenders"). [Ex. 5, Form 10-Q at 13]. The Lenders made available senior secured credit facilities totaling $140 million (a $100 million term loan and $40 million revolving credit facilities). *Id.* Polished immediately borrowed the full $100 million term loan, repayable in quarterly installments of $1,250,000 each. *Id.* On July 25, 2023, the Credit Agreement was amended to require liquidity maintenance; as of September 30, 2023, the term loan balance was $92.3 million. *Id.* Bank of America froze the revolver loan due to covenant non-compliance. *Id.* After a further amendment on November 20, 2023 waiving events of default, the Company began discussions to refinance—but those discussions never materialized because Polished filed for

8

Chapter 7 on March 7, 2024. ¶ 91.  Other than the execution of the initial Credit Agreement in May 2022, *none* of these events occurred on the Fouertis' watch.

**III.    The Eastern District of New York dismissed with prejudice a putative class action complaint alleging securities fraud on these same allegations.**

The Trustee tells this Court that "a Polished shareholder commenced a securities fraud action against Polished and Defendants" (including Albert), and that complaint "contains information provided by eleven former employees." ¶¶ 51-52. The Trustee does not, however, tell this Court what happened to that case. On June 21, 2024, certain Defendants (including Albert) moved to dismiss under Rules 12(b)(6) and 9(b), and the PSLRA, 15 U.S.C. §78u-4. *See* Individual Defs.' Mot. to Dismiss the Am. Compl., *Maschhoff v. Polished.com Inc.*, No. 1:22-cv-06606-NGG-VMS (E.D.N.Y. June 21, 2024), ECF No. 48-1. On January 24, 2025, the Eastern District of New York (Garaufis, J.) dismissed the Complaint, finding it failed to "sufficiently allege a material misrepresentation or omission or scienter." [Ex. 6, *Eden Alpha CI LP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 317 (E.D.N.Y. 2025)]. The Court "made three central findings":

(1) It "could not credit [the former employee] accounts, as currently pleaded, for the purposes of establishing" the false or misleading nature of the alleged representations or omissions, or scienter." [Ex. 7, *Eden Alpha CI UP v. Polished.Com Inc.*, No. 22-CV-6606 (NGG) (VMS), 2026 U.S. Dist. LEXIS 49394, at *5 (E.D.N.Y. Mar. 10, 2026) (citing Dkt. 51, M&O at 23, 23–29)]; and

(2) Of the statements Plaintiff alleged were false or misleading, "Plaintiff had only successfully pleaded false and misleading statements with respect to restated financial metrics, specifically Polished's 2021 10-K and 1Q2022 10-Q, as a result of the July Restatement" [*Id.* (citing Dkt. 51 at 30–54)];

(3) Plaintiff's reliance on facts including the [former employee] accounts, individual defendant's resignations, the independent accounting firm's resignation, and alleged GAAP violations, "failed to sufficiently raise a strong inference of scienter," [*Id.* at *5–6 (citing Dkt. 51 at 56–62)].

Though apprehensive whether Plaintiff could "remedy the flaws" in its complaint, the Court permitted Plaintiff to try. [Ex. 6, *Eden Alpha CI LP*, 763 F. Supp. at 318–19.] On February

24, 2025, Plaintiff filed its Second Amended Complaint; on June 9, 2025, the defendants again moved to dismiss it, for substantially the same reasons. [Ex. 7, *Eden Alpha CI UP*, 2026 U.S. Dist. LEXIS 49394]. On March 10, 2026—five days after the Trustee filed his Complaint here—the Eastern District of New York dismissed the Securities Fraud Case with prejudice. *Id.* at *42. Of particular concern to that Court, and of particular relevance here, are the "anonymous witness accounts" attributed to former employees and which the Plaintiff (and now the Trustee) offer "to attempt to prove both material falsity and scienter." *Id.* at *14. The court found "each of the eleven anonymous FEs suffer[] from at least one of the[] deficiencies" that lead courts not to credit anonymous witness statements and so "cannot support Plaintiff's claims." *Id.* at *15.

The Trustee does not reveal that his Complaint is at best a summary of, and, in places, cribbed nearly verbatim from, the Securities Fraud Case, nor does he allege that he spoke with any of these anonymous witnesses or in any way attempted to verify their identities or their allegations.

## ARGUMENT

### I.    Legal Standard.

"[O]nly well-plead facts are considered in ruling on a motion to dismiss, and conclusory statements may be disregarded." *Bond v. Rosen (In re NSC Wholesale Holdings LLC)*, 637 B.R. 71, 80 (Bankr. D. Del. 2022). To survive this motion to dismiss, the Trustee must "provide the grounds of [his] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Skajem v. Chicken Soup for the Soul Entm't (In re Chicken Soup for the Soul Entm't)*, Nos. 24-11442, 24-50128 (MFW), 2025 Bankr. LEXIS 3185, at *31 (Bankr. D. Del. Dec. 9, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although "reasonable inferences are drawn in favor of the plaintiff," "some factual allegation" is necessary: "[l]egal conclusions… are not entitled to a presumption of truth." *JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*, 558 B.R. 116, 123 (Bankr. D.

10

Del. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Two of the Trustee's claims—Fraud (Claim 1) and Aiding and Abetting Fraud (Claim 5)—additionally require the Trustee to satisfy the heightened standard of pleading his claims with particularity. *See* Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b); *In re NSC Wholesale Holdings LLC*, 637 B.R. at 80. The Trustee must state "with particularity the circumstances constituting the fraud" to put defendants "on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Skajem*, 2025 Bankr. LEXIS 3185, at *33.

**II.   The constructive fraudulent transfer claims must be dismissed because the Trustee failed to adequately plead insolvency and lack of reasonably equivalent value (Claims 7 & 8).**

"To plead a claim for constructive fraudulent transfer under Section 1304(a)(2), a plaintiff must allege (i) that the transferor failed to receive reasonably equivalent value for the asset transferred; ***and*** (ii) that the transferor was insolvent at the time of the transfer, or was rendered insolvent by the transfer." *Premier Healthcare, Inc. v. Waters*, No. 2023-1263-BWD, 2024 Del. Ch. LEXIS 336, at *6 (Del. Ch. Oct. 4, 2024) (quoting *Kravitz v. Samson Energy Co., LLC (In re Samson Res. Corp.)*, 2023 Bankr. LEXIS 1538, at *24 (Bankr. D. Del. June 14, 2023)). "Essential to both Section 1304(a)(2) and Section 1305(b) is the allegation of insolvency at the time of the transfer (or the rendering of insolvency due to the transfer)." *Giuliano v. Ferdinand (In re Liquid Holdings Group, Inc.)*, Nos. 16-10202 (KG), 17-50662 (KG), 2018 Bankr. LEXIS 1665, at *49 (Bankr. D. Del. June 6, 2018).

Although constructive fraudulent transfer is subject to the "more lenient Rule 8(a) notice pleading standard," "conclusory allegations" about insolvency are not enough. *Premier Healthcare, Inc.*, 2024 Del. Ch. LEXIS 336, at *6–7 (dismissing constructive fraudulent transfer

11

claim under Section 1304(a)(2) for failure to allege facts from which the court can infer insolvency); *Giuliano*, 2018 Bankr. LEXIS 1665, at \*50–52. Instead, "there must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place." *Giuliano*, 2018 Bankr. LEXIS 1665, at \*50 (citations omitted) (dismissing where complaint "does not include any financial data surrounding the Transfers that the Court can use to infer [Debtor's] insolvency.").

### A.  *The Trustee's bare allegation that Polished "was insolvent" is not enough.*

The Trustee's only allegations concerning insolvency are that: (1) "[o]n or around June 2, 2021, Polished transferred $180 million to Albert Fouerti and/or affiliates of Albert Fouerti, in cash (the "Transfer")"; and (2) "[a]t all times material hereto, Polished was insolvent or was rendered insolvent as a result of this Transfer." ¶¶ 130, 132. This is not an allegation of insolvency sufficient to withstand a motion to dismiss.

"Insolvency" in this context "effectively means" that "the debtor (i) was balance sheet insolvent at the time of the transfer (or became so as a result thereof); (ii) had unreasonably small capital; or (iii) was unable to pay its debts as those debts matured." *Off. Comm. of Unsecured Creditors of Pack Liquidating, LLC v. Vagenas (In re Pack Liquidating, LLC)*, Nos. 22-10797 (CTG), 23-50590 (CTG), 2025 Bankr. LEXIS 2215, at \*21–22 (Bankr. D. Del. Sep. 5, 2025). As a result, "[a] claim for constructive fraudulent conveyance accordingly requires factual allegations that would support such a determination. '***Mere recitations by a trustee that a debtor is insolvent are conclusory', and are therefore insufficient to survive a motion to dismiss***." *Id.* at \*22 (explaining "conclusory allegations of insolvency…ought to be disregarded.").

Similarly, the court in *Premier Healthcare* dismissed a complaint where, as here, "[d]espite conclusory allegations that '[a] substantial portion of [Decedent's] assets, funds, and income' was

12

transferred and Decedent 'was otherwise insolvent,' Plaintiff pleads no *facts* supporting an inference that Decedent was insolvent." *Premier Healthcare, Inc.*, 2024 Del. Ch. LEXIS 336, at *6–7. The Complaint here similarly lacks even a single allegation about Polished's "assets [or] income" at the time of the transfer. Indeed, the Trustee pled even less than in *Premier Healthcare* because he does not even allege that the $180 million was a "substantial portion of [Polished's] assets, funds or income." *See id.* After paying the cash portion of the purchase price, Polished still had approximately $54 million in cash.[6] Nor does the Complaint explain why, if the Transfer rendered Polished insolvent, Polished did not file for Chapter 7 *for another 3 years*.[7] Courts routinely dismiss complaints for failure to adequately plead insolvency. *See Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, Nos. 15-11469 (LSS), 2019 Bankr. LEXIS 2817, at *43–45 (Bankr. D. Del. Sep. 6, 2019) (dismissing a constructive fraudulent transfer claim where the trustee failed to plead facts supporting insolvency and relied merely on conclusory allegations); *In re Worth Collection, Ltd.*, 2024 Bankr. LEXIS 2265, at *33–35 (Bankr. D. Del. Sept. 24, 2024) (same). Claims 7 and 8 must be dismissed with prejudice.

**B. *Polished's publicly available SEC filings contradict any allegation of insolvency at the time, or as a result, of the Merger.***

The Trustee does not and cannot allege that Polished was insolvent at the time of the Merger. In fact, the Company's SEC filings are to the contrary: there is no going concern qualification in the S-1, the stock offering prospectus or the two years of audited financials filed therewith. None of these documents so much as hint at balance sheet insolvency. [Exs. 1, 2]. The

---

[6] [Ex. 8, 10-Q, June 30, 2021 at 2]. The July 2023 restatement did not change this cash balance.

[7] This lengthy delay is what precludes the Trustee from bringing a claim under 11 U.S.C. § 548(a)(1)(B): that Section has only a two-year lookback, reflecting the Bankruptcy Code's perspective that a gap longer than two years between the alleged fraudulent transfer and the bankruptcy filing untethers the two, making the transfer less likely to be considered fraudulent.

very fact that Polished raised over $200 million from the public markets also belies any allegation of insolvency. *See In re Pack Liquidating, LLC,* 2025 Bankr. LEXIS 2215, at *22 (allegation that company "was able to raise hundreds of millions of dollars in equity financing in late 2020 counsels strongly against any reading of the complaint that would suggest that the company was insolvent at that time."). Nor does the Trustee allege that the lender requested a solvency opinion, which is typical if a lender is concerned the transaction creates insolvency risk.

The Complaint also fails to plead facts showing the Merger rendered Polished insolvent. The Trustee announces that "[a]s a result of the wrongdoing of the Defendants, Debtors were driven out of business and into liquidation in bankruptcy." ¶ 92. Yet the Trustee nowhere connects the vague allegations of "wrongdoing" to Polished being driven "out of business" three years later. The more plausible inference is that Polished's demise was its own doing. This inference is supported by the $100 million bank loan on which Polished defaulted at least once, and which was again coming due when Polished filed for bankruptcy—all events that occurred *years* after the Merger—and long after the Fouertis had resigned. [*See* Ex. 5 at 13–14].

**C. *Even were Polished's insolvency adequately pled, the Complaint fails to allege the absence of reasonably equivalent value for the Merger.***

Even were the Court to nonetheless conclude that the Complaint adequately pleads insolvency, to adequately plead constructive fraudulent transfer, it "must still sufficiently allege that the value received in exchange for the transfer was not reasonably equivalent." *In re Pack Liquidating, LLC,* 2025 Bankr. LEXIS 2215, at *23.

A complaint "that only states that the debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8," and must be dismissed. *Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*, 2021 Bankr. LEXIS 1643, at *11–12 (Bankr. N.D. Tex. June 18, 2021) (dismissing where complaint "contains one sentence regarding

14

reasonably equivalent value" and "no factual allegations to support this conclusory statement");

*see also In re Pack Liquidating, LLC,* 2025 Bankr. LEXIS 2215, at *11, 26 (same); *In re Garcia*, 494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) (same). "[A] court looks to the totality of the circumstances of the transfer," including: (i) "fair market value of the benefit received," (ii) "the existence of an arm's-length relationship between the debtor and the transferee," and (iii) the transferee's good faith." *In re Pack Liquidating, LLC,* 2025 Bankr. LEXIS 2215, at *25–26.

The Trustee never mentions any of these elements. Instead, although the Complaint insists the Merger was "the vehicle to sell Fouerti's companies for substantially more than they were worth" (¶ 30); that Polished "materially overpay[ed]" in the Merger (¶ 35); and "the purchase price paid for Appliances Connection substantially exceeded the fair market value of the company" (¶ 133), ***there is not a single factual allegation*** supporting that the price Polished paid to acquire Appliances Connection was more than it was worth. Instead, even beyond the fatal pleading deficiencies, the facts and attendant inferences are squarely to the contrary: (1) this was an arm's-length transaction with a non-insider—there is no allegation that Albert was in any way affiliated with Polished before the Merger; (2) the Merger was supported by a capital raise in which the underwriter, the investors, and presumably the lender plainly concluded the purchase price reflected fair market value; and (3) the Board approved the action by written consent, based on shareholder majority approval. [Ex. 8, Schedule 14C at i.] "Courts have consistently found that the price achieved through an arm's length transaction between informed and sophisticated parties should be afforded deference as it represents the best evidence of fair market value." *In re Endo Intl Plc*, Nos. 22-22549 (DSJ), 24-7030 (DSJ), 2026 Bankr. LEXIS 1337, at *24 (Bankr. S.D.N.Y. May 29, 2026); *see Official Comm. of Unsec. Creditors of Vivaro Corp. v. Leucadia Natl Corp. (In re Vivaro Corp.)*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015) (dismissing fraudulent

15

transfer claim where plaintiff failed to "rebut the presumption that the Acquisition was negotiated at arm's length").

In sum, where, as here, "sophisticated parties make reasoned judgments about the value of assets that are supported by then prevailing marketplace values and by the reasonable perceptions about growth, risks, and the market at the time, it is not the place of fraudulent transfer law to reevaluate or question those transactions with the benefit of hindsight" and "Courts thus are reluctant to subject these sorts of transactions to fraudulent conveyance liability . . . ." *In re Endo Int'l Plc*, 2026 Bankr. LEXIS 1337, at *25 (quotations omitted).

### D.  *The Section 544 claim fails to adequately allege a triggering creditor.*

Because the Merger occurred beyond Bankruptcy Code Section 548's two-year lookback period, the Trustee has no choice but to rely on Section 544—which requires that the Trustee also allege the existence of a triggering creditor. The Trustee's single-sentence legal conclusion that "[a]t all times material hereto, Polished had at least one creditor prior to making the Transfer" is insufficient. ¶ 131. "Section 544(b)(1) requires the following allegations: (1) a creditor, (2) holding an unsecured claim and (3) that is allowable under Section 502." *Giuliano v. Ferdinand (In re Liquid Holdings Group, Inc.),* Nos. 16-10202 (KG), 17-50662 (KG), 2018 Bankr. LEXIS 2650, at *5 (Bankr. D. Del. Sep. 4, 2018). "The 'triggering creditor' is **indispensable** for the Section 544 fraudulent transfer claim." *Id.* The Trustee must allege that a creditor exists with an allowable unsecured claim as of the petition date **and** that such creditor could have asserted the avoidance claim absent the bankruptcy. *Id.* The allegation "that there is at least one creditor" "falls well short of the requirements of the Bankruptcy Code." *Id.* at *6–7 (dismissing fraudulent transfer claim under 6 Del. Ch. § 1304(a)(1) and 11 U.S.C. §544 on this basis, and collecting cases).

16

**E.** ***The Section 550 claim fails with the Sections 1304(a) & 1305(a) claims.***

Because the Trustee's Sections 1304 and 1305 claims fail for the reasons discussed *supra*, the Section 550 claim fails, too. *Giuliano*, 2018 Bankr. LEXIS 1665, at \*52.

**III.     The remainder of the Claims must be dismissed because they rely on hearsay allegations which another Court dismissed as not credible and which the Trustee has neither investigated nor verified.**

The Complaint (largely without attribution) relies almost entirely on statements anonymous witnesses made in the Securities Fraud Case. By abstracting and summarizing these statements, the Trustee elides their hearsay character in an attempt to insulate them from the scrutiny otherwise leveled at anonymous witnesses. This is a problem for two reasons: (1) substantively, the EDNY court found these allegations were pled with insufficient detail to credit and the Trustee here has pleaded even less; and (2) procedurally, this approach allows this Court to erroneously infer the Trustee "conduct[ed] a reasonable factual investigation" sufficient to "validate the truth and legal reasonableness" of the Complaint when he has not. *In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (citations omitted); *see McGown v. Silverman & Borenstein, PLLC*, No. 13-cv-748-RGA/MPT, 2014 U.S. Dist. LEXIS 15489, at \*3 (D. Del. Feb. 7, 2014) ("duty" to "conduct a reasonable pre-filing factual investigation.").

*First*, these same allegations proved inadequate to stave off dismissal of the Securities Fraud Case, even when presented in substantially more detail. True, the PSLRA applied there, in addition to Rules 9(b) and 12(b)(6), and the legal claims are not identical. The underlying factual allegations, however, are nearly identical. Because the Trustee barely attributes these appropriated allegations, he does not explain why they would be sufficient here when they were not in New York. Ultimately, the EDNY court found "each of the eleven anonymous FEs suffer[] from at least one of the[] deficiencies" that lead courts not to "credit the statements of anonymous witnesses" and so "cannot support Plaintiff's claims." [Ex. 7, *Eden Alpha CI UP*, 2026 U.S. Dist. LEXIS

49394, at *14–15].

*Second,* the Trustee nowhere alleges he spoke with any of these anonymous witnesses (or their counsel) to assess the veracity of their statements. The Complaint drafts around this problem: rather than acknowledging it is pleading hearsay from another case, the Complaint alleges "[m]ultiple former employee witnesses confirmed that Polished knowingly employed large numbers of undocumented workers," ¶ 70(c), acknowledging only generally that this comes from "the Securities Fraud Case." ¶ 70. Paragraph 70(c) is actually an abstraction of six paragraphs of the First Amended Complaint, containing statements from three different anonymous former employees. [Ex. 6, *Eden Alpha CI LP*, 763 F. Supp. at 287–88 (citing Dkt. 53-1 ¶¶ 66–72)].

As another example, the Trustee relies on statements by the "Vice President of Logistics" concerning alleged inventory fraud. ¶¶ 48, 49, 50, 52(a)–(c), 70(a), (g). The Trustee never mentions that the EDNY court "decline[d] to credit" this person's allegations (identified there as 'FE1'). [Ex. 7, *Eden Alpha CI UP v. Polished.Com Inc.*, 2026 U.S. Dist. LEXIS 49394, at *19]. FE1's allegations were Plaintiff's unsuccessful attempt at saving his complaint from dismissal with prejudice. *Id.* The court concluded "[t]he main reason that FE1's allegations as to falsity and scienter fails is because FE1 was not in a position to know, nor had the expertise to value, the allegedly missing inventory." [*Id.* at *23]. As a result, "the allegations about the fraudulent inventory practices and 'false financials' before the acquisition are not pleaded with sufficient detail for this court to credit them." [*Id.* at *35]. The Trustee has not conducted a reasonable factual investigation. He lifted these allegations from another case dismissed with prejudice at the pleadings stage, itself premised on hearsay from witnesses the Trustee does not and cannot identify, and does not plead a single fact suggesting he did anything verify them. The fraud claims must be dismissed on this basis alone. *See* Fed. R. Bankr. 9011.

18

"Attorneys have a non-delegable duty to make a reasonable inquiry into whether the factual contentions made in a complaint have evidentiary support." *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, at *65 (C.D. Cal. May 5, 2011) (citing Fed. R. Civ. P. 11(b)). "This duty means Plaintiffs cannot rely on allegations from complaints in other cases if the Plaintiffs themselves have not investigated the allegations." *Id.* at *65–66. "Investigat[ing]" the allegations "would include speaking directly to the sources upon which the other complaints rely… or contacting the attorneys whose allegations they copied to discuss the basis for the claims." *Id.* at *66–67 (dismissing complaint where plaintiffs "do not claim to have" either "contacted the witnesses quoted in an SEC complaint, from which counsel copied their allegations" or "cited other anonymous sources on their own"); *see also Connectics*, 542 F. Supp. 2d at 1005 (disregarding allegations where plaintiffs made "no effort to inform the Court what other sources of information besides the SEC complaint and press release they relied on in formulating their specific claims" and so failed to satisfy Rule 11(b)). This Court should disregard every factual allegation in the Complaint derived from those misappropriated and now-dismissed allegations.

**IV.**     **The Pre-Merger Common Law Fraud claims must be dismissed because the Complaint does not plead with particularity any of the requirements (Claim 1).**

Under Delaware law, common law fraud requires the Trustee to plead with particularity that Albert and Elie: (1) made a false representation or omission of material fact; (2) which they knew was false; (3) with the intent that Polished act on it; (4) that Polished justifiably relied on it; and (5) that Polished was damaged as a result. *In re NSC Wholesale Holdings LLC*, 637 B.R. at 81. The fraud claim conflates two time periods and two damages claims, and pleads neither with particularity: (1) the $180 million Albert received in the Merger; and (2) the nebulous damage the Trustee alleges Polished suffered "which exceed[s] the sum of $200 million."

### A. *The Complaint does not plead a single fraudulent representation Albert or Elie made in connection with the Merger*.

The Trustee relies exclusively on vague generalities. He repeats, verbatim, his headline allegation that Albert "caused Appliances Connection to engage in fraudulent business and accounting practices, which resulted in falsified financial statements which showed Appliances Connection to be profitable and valuable when it was not, and caused Polished to materially overpay to purchase Appliances Connection." ¶¶ 35, 97; *see also* ¶ 30.

The Complaint does not identify: (i) a single, allegedly false representation—whether concerning a "business practice" or "accounting practice"—at Appliances Connection before the Merger; (ii) a single pre-Merger "falsified financial" statement from Appliances Connection; or (iii) a single allegation concerning any valuation of Appliances Connection which could establish that Polished "materially overpa[id]" in the Merger. Although the Trustee claims to allege "fraudulent business and accounting practices" that "were regular occurrences at Appliances Connection before the Merger," and promises that these practices "are set forth in greater detail below" ¶ 36, the promised "detail" concerning Appliances Connection never comes.

Instead, the pre-Merger conduct the Trustee alleges is fraudulent is conduct by ***Polished*** (not Appliances Connection): (1) a misrepresented liability in the April 22, 2020 IPO Registration Statement ***Polished*** filed with the SEC; (2) ***Polished's*** Form 10-Q quarterly reports for the second and third quarters of 2020 and all quarters of 2021[8] "which falsely represent several line items … and failed to disclose inadequate internal controls; (3) continued failure "to disclose issues with internal controls" in ***Polished's*** Secondary Public Offering Registration Statement filed with the SEC on May 3, 2021; and (4) a March 2021 issuance of Polished's restated financials. ¶¶ 40(a)–

---

[8] The only exception is the 10-Q filed 11/15/2021 for quarter ending 09/30/2021, which is after the Merger, and which Albert signed. That 10-Q is separately discussed *infra* Section VII(B).

(c), 45. None of this is relevant to the Trustee's claim that Albert and Elie committed fraud *in connection with the Merger*: neither was an officer or director at Polished until *after* the June 2, 2021 Merger.[9]

Because the Complaint "does not plead any facts to show that [Albert or Elie] misrepresented any information to the *Debtors*, or that the *Debtors* relied on any misrepresentations made by [Albert and Elie]…[o]n that basis alone, the Trustee's claims fail." *In re NSC Wholesale Holdings LLC*, 637 B.R. at 82; *see also Skajem*, 2025 Bankr. LEXIS 3185, at *33 (to satisfy Rule 9(b), plaintiff must plead the "who, what, where, when, how, and why" of the alleged fraud); *Körber Supply Chain US, Inc. v. DOT Holdings Co.,* No. 24-00236-RGA, 2025 U.S. Dist. LEXIS 26658, at *15 (D. Del. Feb. 13, 2025) (same).

### B.   *The Complaint fails to plead with particularity Albert or Elie's pre-Merger knowledge or intent concerning any allegedly fraudulent activities.*

Even if the Complaint had alleged "falsified financial statements" which could be attributed to Albert and Elie, ¶ 97, it does not allege that either *knew* those statements were false when made. Under Rule 9(b), "plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter.'" *Körber Supply Chain*, 2025 U.S. Dist. LEXIS 26658, at *15–16 (citation omitted). A plaintiff "must either (1) identify circumstances indicating conscious or reckless behavior by defendants or (2) allege facts showing both a motive and a clear opportunity for committing the fraud." *Id.* at 16 (dismissing fraud claims for failure to satisfy Rule 9(b)). This Complaint does neither. Because the Complaint identifies no materially false pre-

---

[9] The Trustee appropriated these allegations from the since dismissed shareholder derivative action, which alleged wrongdoing by Polished and a number of individual defendants across a class period that begins nearly a year before the Merger, on July 27, 2020. *See* Stipulation and Order to Voluntarily Dismiss Action Without Prejudice, *Wong v. Moore*, No. 1:23-cv-00559-NGG (E.D.N.Y. Apr. 7, 2026), ECF No. 23. These allegations are in any event irrelevant to the Trustee's claim here that Albert and Elie committed fraud in connection with the Merger.

Merger statements Albert or Elie made, it also cannot allege those statements "had a natural tendency to influence, or was capable of influencing, [Polished's] decision" to enter the Merger. *See In re OSC 1 Liquidating Corp.,* 529 B.R. 825, 832 (Bankr. D. Del. 2015). Instead, these are post-Merger statements about Polished's employees—not about Appliances Connection.

In fact, the inferences concerning the Fouertis' knowledge and intent are to the contrary: the purchase price included a combination of common and Series A preferred stock in addition to cash. Stock purchases generally negate an inference of scienter. *Cf. Percoco v. Deckers Outdoor Corp.*, No. 12-1001, 2013 U.S. Dist. LEXIS 94558, at *17–18 (D. Del. July 8, 2013).

### C. *The Complaint fails to plead with particularity any damage to Polished from the Merger.*

Finally, the Complaint fails to allege with particularity how the Merger damaged Polished. Although the Complaint twice alleges (verbatim) that "falsified financial statements" "caused Polished to materially overpay to purchase Appliances Connection," the Complaint nowhere alleges why that would be: what statements, when were they made, and how or in what way did they "cause[]" Polish to "materially overpay"? The Trustee pleads no facts showing, for example, that Appliances Connection was unprofitable or explaining why the Merger price was an "overpay[ment]."[10] This is not enough to make a claim for fraud. *See Mooney v. Pioneer Nat. Res. Co.,* No. N17C-01-225 RRC, 2017 Del. Super. LEXIS 533, at *19 (Super. Ct. Oct. 24, 2017).

### V. **The unjust enrichment claim against Albert fails for the same reason as the pre-Merger fraud claim (Claim 6).**

"Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *FTX Recovery Trust v. Goodly Inst. (In re FTX Trading Ltd.)*, No. 22-

---

[10] The Court in EDNY noted the same. Ex. 6, *Eden Alpha CI LP*, 763 F. Supp. at 301 ("Plaintiff does not plead *any* facts demonstrating that [Appliances Connection] was unprofitable.").

11068 (KBO), 2026 Bankr. LEXIS 472, at *12 (Bankr. D. Del. Feb. 27, 2026) (citation omitted). Its elements are "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.* (dismissing unjust enrichment claim as "not [] adequately stated").

The Trustee's unjust enrichment claim is co-extensive with the claim for pre-Merger common law fraud. *See* ¶ 127 ("Having received and retained $180 million through fraud and deceit in connection with the sale of his companies, Defendant Albert Fouerti has unjustly retained that benefit at the expense of the Debtors' estates."). It fails for the same reasons. *See supra* Section IV; *Accelerant Twister, LLC v. Marjo, LLC*, 2023 U.S. Dist. LEXIS 119275, at *26 (D. Del. July 11, 2023) (dismissing both fraud and unjust enrichment claims, explaining "because Plaintiffs' fraud claims are not pled with particularity, [the unjust enrichment claim] must follow suit because it is based on the same underlying conduct."). Because the Trustee pleads no other basis for unjust enrichment, that claim must be dismissed.

## VI.    The Trustee lacks standing to allege post-Merger fraud (Claims 1 & 5).

The Trustee lacks standing to assert common law fraud arising from Albert and Elie's post-Merger conduct. Standing in the debtor's shoes, the Trustee may assert only claims belonging to the debtor at the time of the bankruptcy: he "does not seize control over a cause of action that belongs solely to a debtor's creditors or shareholders" and his claims "are limited to those that the bankrupt corporation could have instituted if it had not filed for bankruptcy." *Gordon-Oliver v. Wiesner Prods. (In re Ryan & Jane Ltd.)*, Nos. 13-23243 (RDD), 14-08253 (SHL), 2016 Bankr. LEXIS 2479, at *6 (Bankr. S.D.N.Y. July 5, 2016) (citations omitted).

This type of fraud, one which the affected stockholders might assert, is a cause of action the Trustee does not control. "Fraud claims are personal claims that belong to affected stockholders, not the Company. As such the claims are not estate property, and therefore the

23

Trustee lacks standing to bring them." *In re AgFeed USA, LLC*, 558 B.R. at 132 (dismissing claim for common law fraud because Trustee lacked standing to assert it); *see also Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191 (Del. Ch. 2006) (holding litigation trustee lacked standing to bring fraud claims belonging to creditors, explaining "federal bankruptcy law is clear that litigation trusts do not have standing to pursue the direct claims of creditors."); *FS Parallel Fund L.P. v. Ergen*, No. 19853, 2004 Del. Ch. LEXIS 160, at *12 (Del. Ch. Nov. 3, 2004) (a stockholder's fraud claim against directors is inherently direct"), *aff'd*, 879 A.2d 602 (Del. 2005). The post-Merger fraud claims must be dismissed on this basis alone.

**VII.    The claims for post-Merger fraud and breach of fiduciary duty fail because the Complaint fails to plead with particularity the elements of these claims, including that Polished was damaged as a result of this alleged conduct (Claims 1, 2, & 3).**

The Trustee vaguely alleges that, after the Merger: (1) "as a result of the fraud and deceit of [Albert and Elie] … Polished suffered damages which have yet to be fully determined and quantified, but which exceed the sum of $200 million" (Claim 1, ¶ 99); and (2) "Albert Fouerti's conduct as alleged above"—with no indication of which conduct or when it occurred— "constituted a breach of his fiduciary duty to Polished and his creditors" (Claim 2, ¶ 109).

Although the Complaint repeats the catch phrase "fraudulent business and accounting practices" ***seven times***, it actually identifies only the following allegedly improper business practices, post-Merger, most untethered to any (mis)statement or alleged breach of any duty: (1) "material misstatements and omissions about executives' compliance with the Company's Code of Conduct and executive compensation" in the November 18, 2021 Proxy Statement ¶ 40(d); (2) the "false[] represent[ation] of several line items (which later had to be restated) and fail[ure] to disclose inadequate internal controls" in the September 30, 2021 10-Q Albert signed ¶ 40(b); (3) "fraudulent inventory practices" ¶¶ 46–55; (4) "fraudulent practices with respect to customer records and other types of company record" which "defrauded customers, vendors, and other

24

exposing Debtors to liability" ¶¶ 57–58 (5) "non-compliance with obligations related to sales and use taxes" ¶¶ 60–68; and (6) employing "large numbers of undocumented workers" ¶¶ 69–71. For the reasons discussed below, none of these allegations is sufficient either to plead fraud with particularity, or to plead a breach of fiduciary duty.

### A. *The Trustee fails to plead facts sufficient to establish that either Albert or Elie owed the Company a fiduciary duty at the relevant times.*

Any fiduciary duties Albert and Elie owed to Polished commenced when they became officers of the Company after the Merger and terminated when they ceased to be either an officer or director of the Company: October 2022 (Elie) and December 2022 (Albert). ¶ 11 To the extent the Trustee's allegations pertain to any time before or after those dates (which is impossible to discern given the Complaint's vagueness), those allegations must be dismissed.

Further, the portion of the Trustee's breach-of-fiduciary-duty claim that relates to "creditors" (¶¶ 107, 109) must also be dismissed because neither Albert nor Elie owed any fiduciary duty to Polished's creditors unless the Company was insolvent at the time. *See North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) ("the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties*."*). For the reasons discussed *supra* Section II, the Trustee failed to allege insolvency and the publicly available information about the Company's finances is to the contrary. This portion of Claim 2 must be dismissed.

### B. *The Trustee fails to plead, much less with particularity for the fraud claim, facts sufficient to establish post-Merger misconduct.*

The post-Merger fraud claims fail for the same reason as the fraud claim in connection with the Merger: the Trustee again fails to plead any facts showing that Albert or Elie misrepresented information to Polished on which Polished relied to its detriment. *See In re NSC Wholesale Holdings LLC*, 637 B.R. at 83; *see NACCO Indus. v. Applica Inc.*, 997 A.2d 1, 29 (Del. Ch. 2009)

25

("Making a false statement is not a strict liability offense.").

To plead this claim, the Trustee would need to allege that, *after the Merger*: (1) Albert and Elie made material, false statements or omissions (2) with "the intent to induce" Polished to take a particular action; (3) that Polished acted in "justifiable reliance" on their representations: and (4) that Polished was damaged in the amount of $200 million as a result. *In re NSC Wholesale Holdings LLC*, 637 B.R. at 81. The only post-Merger "statements" the Trustee attributes to either Albert or Elie are that (1) the September 30, 2021 10-Q "falsely represented several line items (which later had to be restated) and failed to disclose inadequate internal controls" ¶ 40(b); (2) the 2021 Proxy Statement filed November 18, 2021 "contained material misstatements and omissions about Executives' compliance with the Company's Code of Conduct and executive compensation." ¶40(d); and (3) "knowingly false" "certifications" in "the annual report for 2021, and quarterly report for 2022 Q1" ¶ 44.

In the alternative, the Trustee avers that these damages were the result of a breach of the fiduciary duties Albert "owed…to Polished and its creditors." ¶ 107. A breach of fiduciary duty similarly requires showing both "harm to the beneficiary or, alternatively, the wrongful taking of a benefit by the fiduciary" and "that a sufficiently convincing causal linkage exists between the breach of duty and the remedy sought that makes the remedy an apt means of addressing the breach." *Basho Techs. Holdco B, Ltd. Liab. Co. v. Georgetown Basho Inv'rs, Ltd. Liab. Co.*, No. 11802-VCL, 2018 Del. Ch. LEXIS 222, at *57–58 (Del. Ch. July 6, 2018). In other words, at a bare minimum, the Trustee would need to plead a "sufficiently causal linkage" between the allegedly improper business practices and the $200 million it seeks as a remedy.

The Complaint pleads no causal connection between the allegedly "fraudulent business practices" and any harm to Polished exceeding $200 million. ¶¶ 99, 110, 115. This is fatal to both

26

the Trustee's post-Merger fraud and breach-of-fiduciary-duty claims.  The only post-Merger harms the Complaint associates with these allegations are two stock drops (one following the August 15, 2022 notice of the Audit Committee investigation, ¶ 73, and another following the restatement, ¶ 89), and then the Chapter 7 filing. The Complaint does not plead how Polished's reliance on these allegedly improper practices caused any of these. Because "[t]here are no facts plead whatsoever to support that any misrepresentations or omissions were made *to the Debtors* and that the *Debtors relied* on said misrepresentations," the post-Merger fraud claim fails. *In re NSC Wholesale Holdings LLC*, 637 B.R. at 82 (dismissing fraud claim where complaint was "devoid of particularized facts showing" Defendants made a misrepresentation to Debtors on which Debtors relied "to their detriment").

Even if the Complaint *had* pled reliance, it pleads no causation: the August 15, 2022 notice disclosed only that the Audit Committee "recently began an independent investigation regarding certain allegations made by certain former employees related to the Company's business practices." ¶ 72. It says nothing about the alleged improper business practices. Even if the stock drop was "caused" by "this news," ¶ 73, it was not caused by any disclosure of the allegedly "fraudulent business practices," that form sole basis for post-Merger claims.

The Audit Investigation also found Albert charged "approximately $800,000 for expenses unrelated to the Company." ¶ 77. But Albert reimbursed this amount *and* paid an additional $2.9 million for the investigation's cost—a total of $3.7 million. ¶ 81. This $800,000 then is not a harm requiring remedy. Moreover, Polished *explicitly released* Albert for any claims "related to the Audit Committee Investigation," [Ex. 3], which bars the Trustee's claims. *See In re AgFeed USA, LLC*, 2015 Bankr. LEXIS 4272, at *15 (Bankr. D. Del. Dec. 15, 2015) (dismissing trustee's claims where pre-petition settlement contained mutual release). As for the July 2023 restatement, this

27

occurred *seven months after* Albert resigned his director position, and *nine months* after Albert resigned as CEO and Elie resigned as COO; there is no allegation that it is connected to any of the allegedly improper business practices even had those practices occurred during their tenure. ¶¶ 74, 83. Finally, the Complaint vaguely alleges, the Company's Chapter 7 filing *fifteen months after Albert resigned*, is "a result of the wrongdoing of the Defendants, as aforesaid." ¶ 92.

The Trustee fails to plead (1) with particularity that the Company relied to its detriment on statements concerning those practices (fraud), and (2) that those practices constituted a breach of a duty resulting in $200 million in harm (breach of fiduciary duty). These claims must be dismissed. *See In re AgFeed USA*, 558 B.R. at 133; *Smith v. Smitty McGee's, Inc.*, No. 15668, 1998 Del. Ch. LEXIS 87, at *21 (Del. Ch. May 8, 1998) (dismissing fraud claim in part for failure to plead reliance with particularity); *Leo Invs. Hong Kong Ltd. v. Tomales Bay Capital Anduril III Ltd. P'ship*, 342 A.3d 1166, 1192–93 (Del. Ch. 2025) (breach of fiduciary duty requires "a sufficiently convincing causal linkage between the breach and the remedy sought.").

**VIII.     The Trustee fails to plead any facts sufficient to establish that Elie Fouerti aided and abetted any breach of fiduciary duty or fraud (Claims 4 & 5).**

Aiding and abetting fraud requires "(i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance." *PR Acquisitions, LLC v. Midland Funding LLC*, No. 2017-0465-TMR, 2018 Del. Ch. LEXIS 137, at *39 (Del. Ch. Apr. 30, 2018). Because the primary claim for fraud fails to allege underlying tortious conduct (*supra* Section VII(B)), the aiding and abetting claim fails, too. *See id.* Even if the Trustee had alleged a primary violation, moreover, "to withstand a motion to dismiss a plaintiff must plead facts making it reasonably conceivable that the defendant knowingly supported a breach of duty *and* that his resulting assistance to the primary actor constituted substantial assistance in causing the breach." *In re Oracle Corp. Derivative Litig.*, 2020 Del. Ch. LEXIS 218, at *33 (Del. Ch. June 22, 2020). The Complaint, however, barely mentions

28

Elie, and certainly does not plead either knowledge or substantial assistance in any of his actions. Aiding and abetting a breach of fiduciary duty requires even more: the Trustee must (but did not) plead Elie's "knowing participation", i.e., that he "acted with scienter and provided substantial assistance in causing [Albert's] breach." *West Realm Shires, Inc. v. Nass (In re FTX Trading Ltd.)*, Nos. 22-11068 (KBO), 24-50210 (KBO), 2025 Bankr. LEXIS 1793, at *7 (Bankr. D. Del. July 23, 2025) (dismissing where allegations showed only "passive awareness" not "active participation").

The only substantive allegations concerning Elie are that (1) "an inventory control manager working for Appliances Connection before the Merger made numerous recommendations to [him] about how to improve inventory practice," which he "did not implement," ¶ 52(f); (2) he "ordered" an employee "to alter documents to facilitate returns to the manufacturer outside the permitted return windows" and to "forge customer signatures," ¶ 58 (a), (c); (3) he resigned in October 2022, ¶ 74; and (4) and he "charged personal expenses to the Company" which were then reimbursed, ¶¶ 78 (c), 79. None is tethered in time, and none establishes either scienter or substantial assistance.

## IX. The Complaint should be dismissed with prejudice because amendment would be futile.

The Complaint should be dismissed with prejudice because: (1) the Trustee has the benefit of multiple pleadings in the Securities Fraud Case yet still cannot plead facts sufficient to maintain his claims; and (2) fundamental deficiencies persist that no amendment could cure: (a) the Trustee has no data concerning either insolvency or a lack of reasonably equivalent value; (b) the Trustee articulates no material misrepresentations on which Polished relied; and (c) the Trustee fails to plead that Albert and Elie owed fiduciary duties at the relevant times: a claim which substantially fails along with the failure to plead insolvency. Even taking all allegations as true and viewing them in a light most favorable to the Trustee, no amendment could cure these deficiencies. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 174 (3d Cir. 2010)

(affirming dismissal with prejudice where amendment was futile); *see also Beskrone v. Opengate Capital Grp., LLC (In re Pennysaver USA Publ'g, LLC)*, 602 B.R. 256, 274–75 (Bankr. D. Del. 2019) (dismissing legally deficient breach-of-fiduciary-duty claim with prejudice).

## CONCLUSION

For the foregoing reasons, Albert and Elie Fouerti respectfully request that the Court dismiss this case in its entirety, with prejudice.

## RULE 7008-1 STATEMENT

Albert and Elie Fouerti do not consent to the entry of final orders or judgments by the Court.

Dated: June 8, 2026

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*

Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Email: ckunz@morrisjames.com
jwaxman@morrisjames.com

and

John F. Sylvia (admitted *pro hac vice*)
Emily K. Musgrave (admitted *pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 348-1820
Email: JFSylvia@mintz.com
EKMusgrave@mintz.com

*Counsel to Defendants Albert and Elie Fouerti*

30