## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| POLISHED.COM INC., *et al.*, | Case No. 24-10353 (TMH) |
| Debtors. | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Polished.com Inc., *et al.*, | Adv. Pro. No. 26-50213 (TMH) |
| Plaintiffs, | |
| v. | **Re: Adv. D.I. 1** |
| ALBERT FOUERTI; MARIA JOHNSON; DOUGLAS T. MOORE; ELLERY W. ROBERTS; ROBERT BARRY; ELLETTE A. ANDERSON; CLARK R. CROSNOE; GLYN C. MILBURN; ALAN P. SHOR; EDWARD J. TOBIN; G. ALLAN SHAW; JAMES SCHNEIDER; and ELIE FOUERTI, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARIA JOHNSON'S
MOTION TO DISMISS COUNTS 3, 4, AND 5 OF THE COMPLAINT**

Dated: June 8, 2026

Douglas W. Greene (admitted *pro hac vice*)
Zachary R. Taylor (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

BAKER & HOSTETLER LLP
Jeremy D. Anderson (#4515)
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jdanderson@bakerlaw.com
jjlyons@bakerlaw.com

*Attorneys for Defendant Maria Johnson*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II. FACTUAL BACKGROUND..........................................................................................5

    A. The Company..................................................................................................5

    B. After the Merger, the Company Experienced a Period of Transition. ....................6

    C. In the Summer of 2022, the Company Announces an Internal Investigation. ..........7

    D. The Company Restates Certain Financials in 2023. ..............................................8

    E. Prior Dismissed Litigations................................................................................9

        (1) The Securities Class Action Was Dismissed with Prejudice ...........9

        (2) The Tag-Along Derivative Litigations were Dismissed ................11

III. LEGAL STANDARD..................................................................................................12

    A. The Trustee's Claims are Subject to Heightened Pleading Standards....................12

    B. The Trustee's Claims Against Ms. Johnson. ......................................................13

        (1) Breach of Fiduciary Duty (Count III). ............................................13

        (2) Aiding and Abetting Breach of Fiduciary Duty (Count IV). .........14

        (3) Aiding and Abetting Fraud (Count V). ...........................................15

IV. ARGUMENT................................................................................................................15

    A. The Complaint Relies on Improper Group Pleading. ...........................................15

    B. Ms. Johnson Cannot Be Liable for Conduct Outside of Her Discretionary Authority. .........................................................................................................17

    C. Count III: Ms. Johnson Did Not Breach Any Fiduciary Duty...............................18

        (1) Ms. Johnson Did Not Breach Any Fiduciary Duty in Connection with Polished's Financial Statements.........................18

        (2) Ms. Johnson Did Not Breach Any Fiduciary Duty in Connection with Polished's Tax Law Compliance........................26

    D. Count IV: Ms. Johnson Did Not Aid or Abet Any Breach of Fiduciary Duty. .....28

    E. Count V: Ms. Johnson Did Not Aid or Abet Fraud. ............................................28

V. CONCLUSION.............................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ...........................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................12

*Baca v. Insight Enters., Inc.*,
2010 WL 2219715 (Del. Ch. June 3, 2010)..........................................................................3, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................12

*Binks v. DSL.net, Inc.*,
2010 WL 1713629 (Del. Ch. Apr. 29, 2010) ............................................................................15

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ..........................................................................................................27

*In re Bridgeport Holdings, Inc.*,
388 B.R. 548 (Bankr. D. Del. 2008) ..........................................................................................17

*Brug v. Enstar Grp., Inc.*,
755 F. Supp. 1247 (D. Del. 1991)..............................................................................................15

*Burtch v. Zachem*,
2023 WL 6140247 (Bankr. D. Del. Sep. 19, 2023) .............................................................15, 16

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v.*
*Wachovia Bank of Del. Nat'l Ass'n*,
2011 WL 864421 (D. Del. Mar. 9, 2011) ..................................................................................15

*Capitaliza-T, Sociedad De Responsabilidad Limitada De Capital Variable v.*
*Wachovia Bank of Del., N.A.*,
2012 WL 3150386 (D. Del. Aug. 2, 2012) ................................................................................15

*Cavi v. Evolving Sys. NC, Inc.*,
2018 WL 2372673 (D. Del. May 24, 2018)...............................................................................12

*In re Columbia Pipeline Grp., Inc. Merger Litig.*,
342 A.3d 324 (Del. 2025) ..........................................................................................................15

*In re Conex Holdings, LLC*,
514 B.R. 405 (Bankr. D. Del. 2014) ..........................................................................................15

*In re Cred Inc.*,
  650 B.R. 803 (Bankr. D. Del. 2023), *aff'd,* 658 B.R. 783 (D. Del. 2024) ................................5

*In re Cred Inc.*,
  658 B.R. 783 (D. Del. 2024) ........................................................................12, 14, 27, 28

*In re Crimson Expl. Inc. S'holder Litig.*,
  2014 WL 5449419 (Del. Ch. Oct. 24, 2014) ........................................................................19

*In re Draw Another Circle.*,
  602 B.R. 878 (Bankr. D. Del. 2019) ........................................................................14

*In re DSI Renal Holdings, LLC*,
  2020 WL 550987 (Bankr. D. Del. Feb. 4, 2020) ........................................................................12

*Eden Alpha CI LLP v. Polished.com Inc.*,
  2026 WL 673462 (E.D.N.Y. Mar. 10, 2026)..................................................... *passim*

*Eden Alpha CI LLP v. Polished.com Inc.*,
  763 F. Supp. 3d 270 (E.D.N.Y. 2025) ........................................................................9, 21, 22, 25

*In re Energy Future Holdings Corp.*,
  593 B.R. 217 (Bankr. D. Del. 2018) ........................................................................5

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)........................................................................12

*Genworth Fin., Inc. Consol. Deriv. Litig.*, 2021 WL 4452338 (Del. Ch. Sep. 29,
  2021) ........................................................................24

*Green v. Paz*,
  2021 WL 11661345 (D. Del. Mar. 31, 2021) ........................................................................25

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003)........................................................................23, 24, 25

*Harcum v. Lovoi*,
  2022 WL 29695 (Del. Ch. Jan. 3, 2022)........................................................................19

*King v. Pratt & Whitney Canada Corp.*,
  2021 WL 663059 (D. Del. Feb. 19, 2021)........................................................................12

*Kolber v. Body Cent. Corp.*,
  967 F. Supp. 2d 1061 (D. Del. 2013)........................................................................25

*In re Lear Corp. S'holder Litig.*,
  967 A.2d 640 (Del. Ch. 2008)........................................................................23

iii

*In re Liquid Holdings Grp., Inc.*,
   2018 WL 2759301 (Bankr. D. Del. June 6, 2018) ................................................12

*Marchand v. Barnhill*,
   212 A.3d 805 (Del. 2019) ....................................................................................24

*In re McDonald's Corp. S'holder Derivative Litig.*,
   291 A.3d 652 (Del. Ch. 2023)..............................................................................23

*Melbourne Mun. Firefighters' Pension Trust Fund v. Jacobs*,
   2016 WL 4076369 (Del. Ch. Aug. 1, 2016) .........................................................27

*Newtyn Partners LP v. Alliance Data Systems Corp.*,
   2025 WL 872967 (S.D. Ohio Mar. 20, 2025), *aff'd*, 165 F.4th 947 (6th Cir.
   2026) ....................................................................................................................20

*In re Nobilis Health Corp.*,
   661 B.R. 891 (Bankr. D. Del. 2024) .......................................................................2

*In re: Old Bpsush, Inc.*,
   2021 WL 4453595 (D. Del. Sep. 29, 2021) ..........................................................13

*OptimisCorp v. Waite*,
   2015 WL 5147038 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016) .....................25

*Ponder v. Maaranu*,
   2021 WL 4928452 (D. Del. Oct. 21, 2021) ..........................................................19

*In re Quorum Health Corp.*,
   2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023).................................................5

*Raul v. Rynd*,
   929 F. Supp. 2d 333 (D. Del. 2013).......................................................................16

*Riverside Fund V, L.P. v. Shyamsundar*,
   2015 WL 5004924 (Del. Super. Aug. 17, 2015).....................................................15

*Segway Inc. v. Cai*,
   349 A.3d 628 (Del. Ch. 2023)......................................................................13, 24, 26, 27

*In re Space Case*,
   2024 WL 1628440 (Bankr. D. Del. Apr. 15, 2024)...........................................14, 17

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2000) ................................................................................13, 14

*In re Troll Commc'ns, LLC*,
   385 B.R. 110 (Bankr. D. Del. 2008) .....................................................................16

iv

*Witmer v. Armistice Cap., LLC*,
   344 A.3d 632 (Del. Ch. 2025) ..................................................................................14

*Zhou v. NextCure, Inc.*,
   2023 WL 4493541 (S.D.N.Y. July 12, 2023) ...........................................................20

**Statutes**

10 *Del. C.* § 8106 ...............................................................................................................1

Bankruptcy Code § 108(a) ...................................................................................................1

Securities Act of 1933 .........................................................................................................9

Securities Exchange Act of 1934 ............................................................................9, 10, 11

**Rules**

Fed. R. Bank. Proc. R. 7012 ................................................................................................1

Fed. R. Civ. Proc. R. 8(a) ...............................................................................................1, 12

Fed. R. Civ. Proc. R. 9(b) ...............................................................................................1, 12

Fed. R. Civ. Proc. R. 12(b)(6) ........................................................................................1, 20

Defendant Maria Johnson respectfully submits this memorandum of law in support of her motion to dismiss the Complaint (Adv. D.I. 1; the "**Complaint**" or "**Compl.**") as to Counts III, IV, and V *with prejudice* pursuant to Rules 12(b)(6), 8(a), and 9(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, for failure to state a claim for relief.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

This adversary proceeding was filed in great haste, along with 66 other adversary proceedings, [1] two days before the deadline to file any such claims was due to expire.[2] It is thus not surprising that the allegations, particularly as to Ms. Johnson, are notably weak and were entirely cut-and-pasted from separate complaints in unrelated actions, and do not reflect any independent investigation or fact finding on the part of the Trustee.

The Trustee asserts three claims against Ms. Johnson: breach of fiduciary duty (Count III); aiding and abetting breach of fiduciary duty (Count IV); and aiding and abetting fraud (Count V). However, the Complaint contains scant mention of Ms. Johnson and instead asserts vague and generalized allegations against all of the named "Director and Officer Defendants" collectively for alleged wrongdoing spanning all the way from early 2020 through late 2022, even though Ms. Johnson only joined Polished.com Inc. ("**Polished**" or "the **Company**") in late July 2021.

---

[1] Plaintiff George L. Miller, the Chapter 7 Trustee (the "Trustee") initiated 67 different adversary cases between March 1 and March 5, including the present case. *See In re Polished.com Inc.*, No. 24-bk-10353 (Bankr. D. Del.), Dkt. Nos. 301-356, 358-366, 368-369.

[2] Under section 108(a) of the Bankruptcy Code, where a debtor has outstanding claims at the time of its bankruptcy filing, the Chapter 7 trustee may bring such claims within the later of (i) the applicable statute of limitations deadline under state law or (ii) two years after the filing of the bankruptcy petition (here, March 7, 2024). Under Delaware law, claims for breach of fiduciary duty and fraud have a three-year statute of limitations, and all of the alleged misconduct occurred far more than three years ago. 10 *Del. C.* § 8106. Accordingly, the Trustee had until March 7, 2026 to file this adversary proceeding and only did so two days before the deadline.

From the little that can reasonably be conceived as the Trustee's actual claims against Ms. Johnson, it appears that the Trustee's claims boil down to two fundamentally flawed categories of allegations, namely that Ms. Johnson somehow "facilitated" or "failed to prevent": (1) the Company from filing four financial statements with the SEC from 2021 Q2 through 2022 Q2, which allegedly contained false or misleading statements and/or omissions; and (2) violation of "tax laws" pertaining to the payment of sales and use taxes.

This case, however, sits in a peculiar posture. Here, the Trustee stands in the shoes of the Company, and at issue are certain of the Company's SEC filings and tax payments. But this is not a shareholder or government enforcement action, and "[t]here is no suggestion that a bankruptcy trustee (standing in the shoes of the debtor) can sue a company's officers for the *company's* alleged violations of the securities [or tax] laws." *In re Nobilis Health Corp.*, 661 B.R. 891, 909, 914 (Bankr. D. Del. 2024) ("The trustee stands in the shoes of the debtors, not its shareholders or the SEC."). And "while there surely is a point at which a company's officers or directors breach their fiduciary duties to the company by flouting applicable law, that is different from authorizing the trustee to act as private attorney general with the authority to enforce every alleged violation, by the company, of any and every regulation or standard." *Id.* at 914.

Accordingly, this case is not about whether the Company or the defendants, including Ms. Johnson, violated any securities or tax laws. Instead, for the breach of fiduciary duty claims, the only relevant question is "whether the actions by the defendants deviated so far from ordinary business judgment to . . . violate their fiduciary duties" against the Company. *Id.* at 909. And, with respect to Counts IV and V, whether Ms. Johnson aided and abetted any breach of fiduciary duty or fraud against the Company. The Trustee has failed to plead any facts demonstrating any breach of fiduciary duty or any aiding and abetting claim.

Beyond the fact that the Complaint is largely devoid of any mention of Ms. Johnson, virtually all of the allegations against her are cut-and-pasted from a securities class action complaint that has been dismissed *with prejudice*, and other shareholder derivative complaints that repeat those same allegations and have also all been dismissed. *See Baca v. Insight Enters., Inc.*, 2010 WL 2219715, at *5 (Del. Ch. June 3, 2010) ("[D]ismissal of an underlying securities action should suggest to a rational plaintiff the need for an extensive investigation and detailed pleadings[.]"). As explained further below, the District Court's reasoning and conclusions in the securities class action compel dismissal of the Trustee's claims against Ms. Johnson here with respect to any claims premised on the challenged financial statements. Similarly, the Trustee's cut-and-paste allegations from a New York complaint against Mr. Fouerti (Ms. Johnson was not a defendant) are insufficient to plead that Ms. Johnson had any involvement in any alleged violation of tax laws.

As explained below, the claims against Ms. Johnson fail for the following reasons:

***The Trustee Fails to Plead that Ms. Johnson Breached Any Fiduciary Duty***. With respect to the challenged financial statements, the Trustee only alleges that certain inventory metrics were "materially false" or "misleading" and that Ms. Johnson's SOX certifications of those statements were "knowingly false." Compl. ¶¶43-44, 53. However, the Trustee fails to identify *any* specific statement that it alleges was false or misleading or explain why it was false or misleading.  And even if the Trustee had identified a false or misleading statement, the Trustee fails to plead any facts establishing that Ms. Johnson was grossly negligent or acted in bad faith in connection with the challenged statements.

Similarly, the Trustee does not plead any facts showing that Ms. Johnson violated any tax laws, much less that she was grossly negligent or acted in bad faith in connection with any tax

compliance issues.

***The Trustee Fails to Plead that Ms. Johnson Aided and Abetted Any Breach of Fiduciary Duty***. No factual allegations establish that Ms. Johnson "knowingly participated" in any alleged breach by Mr. Fouerti. As mentioned above, much of the misconduct alleged against Mr. Fouerti pre-dated Ms. Johnson's arrival at the Company, so the only conceivable breaches the Trustee may be alleging Ms. Johnson aided and abetted are with respect to the challenged financial statements and tax issues after her arrival. However, the Complaint contains no facts showing that Ms. Johnson knew that Mr. Fouerti was breaching any fiduciary duty (he was not), or that she provided him any substantial and affirmative assistance in doing so.

***The Trustee Fails to Plead that Ms. Johnson Aided and Abetted Fraud.*** Likewise, no facts establish that Ms. Johnson aided and abetted any alleged fraud by Mr. Fouerti. As an initial matter, the aiding and abetting claim does not appear to match the underlying fraud claim. In Count I, the Trustee alleges that the underlying fraud consisted of Mr. Fouerti allegedly providing false financial statements to 1847 Goedeker in connection with the merger between 1847 Goedeker and Appliances Connection, which allegedly resulted in a $180 million payment to Mr. Fouerti. Fatal to the Trustee's claims is that both the merger and payment occurred before Ms. Johnson joined the Company, and thus she could not have aided and abetted any such alleged fraud.

To the extent the Trustee is alleging that the challenged financial statements and tax issues constituted the underlying fraud, they fail for the same reasons as the breach of fiduciary duty claims, and because the Trustee fails to plead that Ms. Johnson had any fraudulent intent.

For all of these reasons, detailed below, Ms. Johnson respectfully requests that the Court dismiss the claims against her with prejudice.

4

## II.   FACTUAL BACKGROUND

### A.   The Company

Initially known as 1847 Goedeker ("**Goedeker**"), Polished was founded in 1951 in St. Louis, Missouri as a local brick and mortar operation serving the St. Louis metropolitan area. Compl. ¶24; Ex. 1 (Q2 2021 Form 10-Q, *Maschhoff v. Polished et al.*, No. 1:22-cv-06606 (E.D.N.Y.) (the "Securities Class Action" or "SCA") ECF 56-4) at 26.[3] Over the years, Goedeker grew to become a large nationwide online retailer of home furnishings, including appliances, furniture, home goods, and related products. *Id.*; Compl. ¶25.

Between 2019 and 2021, Goedeker took steps to capitalize on and increase its growth and market share. As a first step, Goedeker went public through a de-SPAC merger in April 2019. Ex. 1 at 6; Compl. ¶26. After going public, Goedeker sought strategic acquisitions to drive further growth and to increase its foothold in the online appliances market. Ex. 2 (2021 Form 10-K, SCA ECF 56-7) at 1. In mid-2020, Goedeker began negotiating a transaction with Appliances Connection ("**AC**" or "**Connection**"), an online appliance seller privately owned by Mr. Fouerti and his brother, Elie Fouerti. *Id.*; Compl. ¶28. AC was a leading retailer of household appliances based in Brooklyn, New York, with a 200,000 square foot warehouse in Hamilton, New Jersey and a 23,000 square foot showroom in Brooklyn. Ex. 2 at 28; Compl. ¶27. AC had a number of subsidiary companies, including: 1 Stop Electronics Center, Inc.; Gold Coast Appliances, Inc.; Superior Deals Inc.; Joe's Appliances LLC, and YF Logistics LLC. Compl. ¶28.

---

[3] All of the exhibits to this motion are cited in the Complaint and are thus incorporated by reference into the Complaint. *In re Cred Inc.*, 650 B.R. 803, 820 (Bankr. D. Del. 2023), *aff'd,* 658 B.R. 783 (D. Del. 2024). Moreover, the Court may consider these materials because they are publicly available SEC filings, and/or because they are available on the public docket of the Securities Class Action. *See, e.g.*, *In re Quorum Health Corp.*, 2023 WL 2552399, at *7 (Bankr. D. Del. Mar. 16, 2023) (SEC filings); *In re Energy Future Holdings Corp.*, 593 B.R. 217, 224 n.8 (Bankr. D. Del. 2018) (public filings).

On October 20, 2020, Goedeker entered into a securities purchase agreement with Connection. Ex. 2 at 31; Compl. ¶29. The parties completed the transaction on June 2, 2021. Ex. 2 at 31; Compl. ¶30. The aggregate purchase price for the transaction was $224,700,000, consisting of $180 million in cash and the remainder in stock. Ex. 2 at 31; Compl. ¶34. The combined company was renamed Polished.com, and as of March 31, 2022, had over 500,000 SKUs available for purchase. Ex. 2 at 3; Compl. ¶33.

**B.      After the Merger, the Company Experienced a Period of Transition.**

Initially, Goedeker executives were in charge of the combined company, with Douglas Moore serving as CEO and Robert Barry as CFO. Compl. ¶¶12, 15. Soon after the merger, however, there was a change in management where Goedeker executives were replaced. On July 26, 2021, Ms. Johnson was hired and replaced Mr. Barry as CFO, and on August 30, 2021, Mr. Fouerti replaced Mr. Moore as CEO. Ex. 2 at 1; Ex. 3 (Amended 2022 Form 10-K, SCA ECF 56-10) at 73; Compl. ¶¶11, 13.

Prior to joining Polished, Ms. Johnson had over 20 years of professional experience as a financial executive, including leadership roles at Hewlett Packard, PepsiCo, and ExxonMobil, as well as at a number of private equity firms focused on driving value creation and organizational transformation of mid-market companies in the technology, media, and fashion spaces. Ex. 4 (11/18/21 Proxy) at 26; ¶40(d). Ms. Johnson had served as, among other roles: Chief Financial Officer of E3 Investment Group, a private equity firm; Chief Financial Officer of John Hardy, a global omni channel luxury jewelry brand; Vice President of Finance of Cheetah Digital, a leading digital marketing solution provider; and Director of Financial Planning & Analysis of PepsiCo. Ms. Johnson holds an MBA in Finance from the University of Texas at Austin Red McCombs School of Business, an MA in Speech Communications from the Texas State University, and a BA in International Business from the State Academy of Management. *Id*. She is a Certified Public

Accountant and a Certified Internal Auditor. *Id*.

During Ms. Johnson's short tenure at the Company, the Company was still working on smoothing out the integration of Goedeker and Connection, no small task given their separate physical locations (Missouri and New York) and the fact that the integration was occurring at the height of the COVID-19 pandemic. Ex. 2 at 18-19; Compl. ¶¶47-48 (describing Polished's examination of Connection's main warehouse and its inventory management system). During that time, the Company worked closely with Friedman LLP ("**Friedman**"), the Company's independent auditor, in preparing the Company's financial statements. Ex. 2 at F-2.

When Ms. Johnson joined the Company, the Company was already completing its preparation of the Q2 2021 Form 10-Q, which was filed on August 12, 2021 (roughly two weeks after she was hired). Ex. 1.

In late 2021, the Company and Friedman concluded as part of the Company's annual review of internal controls that the Company should disclose a material weakness in internal controls over financial reporting in the 2021 Form 10-K. Ex. 2 at 19-20; Compl. ¶¶54, 82. That material weakness was repeated in the Q1 2022 Form 10-Q. Ex. 5 (Q1 2022 Form 10-Q, SCA ECF 56-8) at 28-29.

C.    **In the Summer of 2022, the Company Announces an Internal Investigation.**

On August 15, 2022, the Company announced that the Audit Committee had commenced an internal investigation "regarding certain allegations made by certain former employees related to the Company's business operations." Ex. 6 (8/15/22 Form 12b-25, SCA ECF 56-9) at 2; Compl. ¶72. Because of the investigation, the Company determined that it would not be able to timely file a Form 10-Q for Q2 2022, and the NYSE sent the Company a notice of non-compliance. Ex. 7 (11/2/22 Form 8-K Press Release, SCA ECF 56-12) at 4. On October 14, 2022, Mr. Fouerti resigned as CEO and Ms. Johnson resigned as CFO. See Ex. 8 (10/18/22 Form 8-K, SCA ECF 56-

7

11) ("Their decision to resign was not due to any disagreement with the Company on any matter relating to the Company's operations, policies, or practices (financial or otherwise)."); Compl. ¶74.

As the internal investigation continued, its scope widened. On November 2, 2022, the Company disclosed that the investigation also "focused on . . . inventory management processes." Ex. 7 at 4; Compl. ¶75. On December 27, 2022, the Company disclosed that Friedman resigned as independent auditor, and that the Audit Committee engaged Sadler, Gibb & Associates, LLC ("**Sadler**") in its stead. Ex. 9 (12/27/22 Form 8-K, SCA ECF 56-14) at 2; Compl. ¶82.

### D.    The Company Restates Certain Financials in 2023.

In early 2023, the Company and Sadler undertook a reevaluation of the Company's financials for Fiscal Year 2021 and Q1 2022, which ultimately led to a restatement of those financials on July 31, 2023 ("**Restatement**"). Ex. 3 at 33; Compl. ¶¶83-85. The Restatement made adjustments for: (i) "an increase in the allowance for sales returns," (ii) "revenue of $8.1 million that should be recognized in 2022," (iii) sales tax collections that had been "improperly recognized as revenue," (iv) a "reduction in product cost of sales due to an increase in the allowance for sales returns," (v) a "reduction in product cost . . . relating to revenue cutoff that should be recognized in 2022," (vi) an offsetting increase in cost of goods sold due to an over accrual of vendor rebates, an under accrual of vendor purchases, and an error in inventory cutoff, and (vii) an increase in G&A expenses resulting from an increase in bad debt expense and an over accrual of sales tax receivable. Ex. 3 at F-14; Compl. ¶87. The restated financials for Q1 2022 included adjustments to revenue, cost of goods sold, operating expenses, income tax expenses, and other "various miscellaneous adjustments." Ex. 3 at F-43; Compl. ¶88.

The restated items were largely the result of post-hoc adjustments made with information that was learned after the challenged statements, causing the Company to adjust those figures,

8

which had initially been determined based on the facts, subjective judgments, and accounting assumptions applicable at the time.

### E.    Prior Dismissed Litigations.

#### (1)    The Securities Class Action Was Dismissed with Prejudice

Shortly after announcement of the internal investigation, on October 31, 2022, a securities class action was filed in the Eastern District of New York ("Securities Class Action"), asserting claims under Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act, against Polished and Mr. Fouerti, Mr. Moore, and Ms. Johnson (the "Individual Defendants"). Compl. ¶51.

On October 31, 2023, after the Restatement, the Securities Class Action plaintiff filed a first amended complaint ("**FAC**"), which asserted only claims under Sections 10(b) and 20(a) of the Exchange Act. With respect to Ms. Johnson, plaintiff alleged certain statements in the Company's 2021 Q2 and Q3 Form 10-Qs, 2021 Form 10-K, and 2022 Q2 Form 10-Q were false or misleading, specifically: (1) financial metrics and opinions regarding Polished's future prospects; (2) restated financial metrics; (3) statements and certifications regarding Polished's internal controls; and (4) statements concerning Polished's fulfillment, logistics, and returns processes. *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 288 (E.D.N.Y. 2025). With respect to Ms. Johnson's scienter, plaintiff did not allege that Ms. Johnson had any "motive" to defraud, but instead only asserted that she was "reckless" with respect to the challenged statements. *Id.* at 314 n.11.

The Individual Defendants moved to dismiss, and on January 24, 2025, the District Court dismissed the FAC as against all Individual Defendants, without prejudice.[4] The District Court

---

[4] Given that Polished had already filed for bankruptcy prior to the District Court's order dismissing the FAC, the proceedings as against Polished were and currently are stayed.

found with respect to Ms. Johnson, that the financial metrics and opinions regarding Polished's future prospects in the Q2 and Q3 2021 Forms 10-Q were not adequately pleaded as false or misleading. *Id*. at 301 (the FAC's "conclusory allegations [were] plainly insufficient to prove the falsity of the Q2 or Q3 2021 financial metrics"). The District Court further found that plaintiff failed to adequately plead that Ms. Johnson's certifications regarding Polished's internal controls in each of the financial statements were false or misleading. *Id*. at 307-308 ("Plaintiff fails to adequately allege that the statements and SOX certifications were false or materially misleading.").

The District Court did find that certain financial metrics in the 2021 Form 10-K and 2022 Q2 Form 10-Q were adequately pleaded as false for the sole reason that those financial statements were later restated in July 2023. *Id*. at 305. However, the District Court held that plaintiff did not adequately plead scienter as to Ms. Johnson, meaning that the plaintiff failed to plead that any challenged statements attributed to her were made recklessly (plaintiff did not allege fraudulent intent). *Id*. at 313, 316 ("[T]he mere fact that Polished restated its financials for fiscal year 2021 and Q1 of 2022 does not mean that Fouerti or Johnson engaged in conscious misbehavior or recklessness.").

On February 24, 2025, the Securities Class Action plaintiff filed a second amended complaint ("**SAC**"), again asserting claims under Sections 10(b) and 20(a) of the Exchange Act. The Individual Defendants' motion to dismiss the SAC was fully briefed on June 9, 2025.

On March 10, 2026, the District Court dismissed the SAC as against all individual defendants, including Ms. Johnson, with prejudice. The District Court found that the allegations in the SAC were "nearly identical" to those in the FAC. *Eden Alpha CI LLP v. Polished.com Inc.*, 2026 WL 673462, at *10 (E.D.N.Y. Mar. 10, 2026). With regard to Ms. Johnson, the District Court held that plaintiff again failed to plead falsity for statements regarding certain financial metrics,

10

opinions regarding Polished's future prospects, and statements and certifications regarding Polished's internal controls, but that certain financial metrics contained in the 2021 Form 10-K and 2022 Q2 Form 10-Q were adequately pleaded as false solely because they were restated. *Id*. And the District Court concluded that plaintiff still had not pleaded that Ms. Johnson had any motive to defraud or acted recklessly. *Id*. at \*12-13 ("No motive allegations are made as to Ms. Johnson"; "There is not sufficient circumstantial evidence from which to infer conscious misbehavior or recklessness as to any Individual Defendant.").[5]

(2)    The Tag-Along Derivative Litigations were Dismissed

On January 26, 2023, plaintiff Mei Ling Wong filed a shareholder derivative action, which largely repeated allegations from the Securities Class Action and asserted claims under Section 14(a) of the Exchange Act, breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets against certain individual defendants, including Ms. Johnson. *Wong v. Moore et al.*, No. 1:23-cv-00559 (E.D.N.Y.) ("***Wong***"); Compl. ¶39

On February 13, 2023 plaintiff Brian Gossett filed a shareholder derivative action, which also largely repeated allegations from the Securities Class Action and asserted a claim for breach of fiduciary duty against certain individual defendants, including Ms. Johnson. *Gossett v. Moore et al.*, No. 1:23-cv-01168 (E.D.N.Y.) ("***Gossett***").

Both actions have been voluntarily dismissed without prejudice. Ex. 10 (*Wong*, ECF 23); Ex. 11 (*Gossett*, ECF 21).

---

[5] On April 7, 2026, the Securities Class Action plaintiff filed a motion for reconsideration of the District Court's order dismissing the SAC with prejudice as against the Individual Defendants. Securities Class Action, ECF 58. The motion for reconsideration was fully briefed on May 29, and is currently pending. *Id.* ECF 64.

### III.    LEGAL STANDARD

#### A.    The Trustee's Claims are Subject to Heightened Pleading Standards.

The Complaint sounds in fraud: each of the counts asserted against Ms. Johnson explicitly describe Ms. Johnson's alleged conduct in terms of fraud. *See, e.g.*, Compl. ¶37 ("Defendants . . . were aware of [the] fraudulent business and accounting practices at relevant times but participated in and encouraged them, and/or failed to take action to stop them."); *see also id.* ¶¶30, 35, 36, 56, 57, 59, 114, 118, 122, 123, 124.

Accordingly, the Complaint is subject to scrutiny under Rule 9(b). *See King v. Pratt & Whitney Canada Corp.*, 2021 WL 663059, at *3 (D. Del. Feb. 19, 2021) (explaining that "if [] a claim is *actually pleaded* in a manner that [] 'sounds in fraud,' then the claim has to meet Rule 9(b)'s requirements"); *In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, at *16 n.30 (Bankr. D. Del. June 6, 2018) (similar). Rule 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." *Cavi v. Evolving Sys. NC, Inc.*, 2018 WL 2372673, at *2 (D. Del. May 24, 2018); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Even under Rule 8, the Trustee still faces factual hurdles it can't clear. Under Rule 8, a complaint must provide "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *In re Cred Inc.*, 658 B.R. 783, 792 (D. Del. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This plausibility standard requires more than a mere possibility that a defendant is liable to the plaintiff." *Id.* (citing *Iqbal*, 556 U.S. at 678). "Although in a motion to dismiss all well-pleaded facts are accepted as true, the trial court need not accept as true conclusory statements, statements of law, or unwarranted inferences cast as factual allegations." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

12

### B.    The Trustee's Claims Against Ms. Johnson.

#### (1)    Breach of Fiduciary Duty (Count III).

Under Delaware law,[6] there are two primary fiduciary duties: the duty of care and the duty of loyalty. "A claim for breach of the duty of care requires a showing of gross negligence.'" *In re: Old Bpsush, Inc.*, 2021 WL 4453595, at *8 (D. Del. Sep. 29, 2021). "In contrast to ordinary negligence, 'gross negligence' is an 'extreme departure from the ordinary standard of care.'" *Id.* "To meet this standard at the pleading stage," the Trustee is required to allege particularized facts showing Ms. Johnson was "'recklessly uninformed' or acted 'outside of the bounds of reason.'" *Id.*

"[T]o state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs." *Id.* at *11. "The duty to act in good faith is a 'subsidiary element of the duty of loyalty'" and requires the Trustee to allege particularized facts showing "conduct motivated by a subjective bad intent, or conduct that is an 'intentional dereliction of duty or the conscious disregard for one's responsibilities." *Id.*

To plead a breach of the duty of loyalty based on lack of oversight theory (a *Caremark* claim), plaintiff must allege particularized facts showing that Ms. Johnson either: (1) "utterly failed to implement any reporting information system or controls" (*Caremark* Prong 1); or (2) "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling [herself] from being informed of risks or problems requiring [her] attention" (*Caremark* Prong 2). *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2000).[7] *Caremark* claims are

---

[6] Debtor Polished.com Inc. is a Delaware corporation. Delaware law applies to these claims. *In re DSI Renal Holdings, LLC*, 2020 WL 550987, at *9 n.61 (Bankr. D. Del. Feb. 4, 2020).

[7] The Delaware Supreme Court has made clear that *Caremark* claims, including against officers, are only construed under the duty of loyalty, and not the duty of care, and "the high bar" to plead

"'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *Id.*

Under Delaware law, all claims for breach of fiduciary duty are subject to the business judgment rule. *See In re Space Case*, 2024 WL 1628440, at *5 (Bankr. D. Del. Apr. 15, 2024). "[T]he business judgment rule is a presumption that, when making a business decision, the corporation's officers and directors acted on an informed basis and in the honest belief that the action taken was in the best interests of the company." *Id.* The presumption of the business judgment rule applies so long as there is "no evidence of fraud, bad faith, or self-dealing." *Id.*

(2)     Aiding and Abetting Breach of Fiduciary Duty (Count IV).

To state a claim for aiding and abetting breach of fiduciary duty, the Trust must establish four elements: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Cred Inc.*, 658 B.R. at 793.

To establish knowing participation, "one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach." *Id.* Conclusory allegations that a defendant "knew or should have known" of an underlying breach of fiduciary duty are not sufficient to plead knowledge. *See In re Draw Another Circle.*, 602 B.R. 878, 904 (Bankr. D. Del. 2019). And for participation, the Trustee must allege that Ms. Johnson "substantially" "participated in the [fiduciary] decisions, conspired with [the fiduciary], or otherwise caused the [fiduciary] to make the decisions at issue." *In re Cred Inc.*, 658 B.R. at 794. A failure to act and "passive awareness" are insufficient to give rise to aiding and abetting liability. *Witmer v. Armistice Cap., LLC*, 344

---

such claims requires evidence of bad faith as a "necessary predicate" to liability. *Segway Inc. v. Cai*, 349 A.3d 628, 629 (Del. Ch. 2023).

14

A.3d 632, 660-661 (Del. Ch. 2025).

(3)    Aiding and Abetting Fraud (Count V).

Delaware imposes an exacting standard for claims of aiding and abetting fraud. Plaintiff must adequately plead (1) the existence of an underlying fraud, (2) the defendant's knowledge of the fraud, and (3) the defendant's substantial assistance in perpetrating the fraud. *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. Nat'l Ass'n*, 2011 WL 864421, at *4 (D. Del. Mar. 9, 2011).

"[A]ctual knowledge is the standard for imposing liability for aiding and abetting" fraud. *Capitaliza-T, Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del., N.A.*, 2012 WL 3150386, at *1 (D. Del. Aug. 2, 2012). "[T]he requirement that the aider and abettor act [with scienter] . . . makes an aiding and abetting claim among the most difficult to prove." *In re Columbia Pipeline Grp., Inc. Merger Litig.*, 342 A.3d 324, 355 (Del. 2025); *Binks v. DSL.net, Inc.*, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010).

For participation, a plaintiff must plead that the defendant "consciously participated in the fraudulent acts." *Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1256 (D. Del. 1991). "[M]ere awareness" or a failure to act are not sufficient to establish the level of "substantial assistance" necessary to support a claim of aiding and abetting fraud. *Riverside Fund V, L.P. v. Shyamsundar*, 2015 WL 5004924, at *5 (Del. Super. Aug. 17, 2015).

## IV.    ARGUMENT

### A.    The Complaint Relies on Improper Group Pleading.

Under Delaware law, a claim for breach of fiduciary duty must be dismissed where a complaint "lumps all of the individual Defendants as 'Officers and Directors' . . . without supplying specific facts as to each defendant's wrongdoing," or fails to identify which individual defendant "breached his or her fiduciary duties, and when those duties were breached." *Burtch v.*

*Zachem*, 2023 WL 6140247, at *3 (Bankr. D. Del. Sep. 19, 2023); *In re Conex Holdings, LLC*, 514 B.R. 405, 414 (Bankr. D. Del. 2014) (same). Similarly, aiding and abetting claims cannot rely on allegations that are "vague and lack sufficient detail about which officers, if any, knowingly participated" in the underlying tort. *In re Troll Commc'ns, LLC*, 385 B.R. 110, 120 (Bankr. D. Del. 2008); *Burtch*, 2023 WL 6140247, at *3 ("[A] plaintiff must differentiate between defendants" and cannot rely on group pleading). Nor can a plaintiff rely on generalized allegations that directors and officers, "by virtue of [their] positions," are liable for breach of fiduciary duty or fraud. *Raul v. Rynd*, 929 F. Supp. 2d 333, 348 (D. Del. 2013).

Here, the vast majority of the Complaint's allegations "lump" Ms. Johnson together with other defendants without any particularized allegations as to her conduct or knowledge, and must be dismissed as improper group pleading. *See, e.g.*, Compl. ¶56 ("By virtue of their positions . . . Defendants were aware of (i) the fraudulent inventory practices; (ii) that Polished did not have a sufficient inventory management system to accurately track inventory; and (iii) that false inventory numbers were being reported on Polished's books and to the public."); *id.* ¶57 ("Defendants[] routinely implemented fraudulent practices with respect to customer records and other types of company records, which had the effect of defrauding customers, vendors, and others."); *id.* ¶59 (similar); *id.* ¶60 ("Defendants created and permitted an environment at Polished that fostered non-compliance with obligations related to sales and use taxes."); *id.* ¶62 ("Defendants failed to have sufficient controls or procedures in place to prevent Albert Fouerti from causing the Company to flout tax laws."); *id.* ¶ 69 ("The . . . large numbers of undocumented workers. . . . was common knowledge among employees and, given their role as officers and directors, among the Defendants."); *id.* ¶71 (similar); *see also id.* ¶¶114, 117-19, 122-24 (allegations regarding the conduct of the "Director and Officer Defendants" collectively).

16

The only allegations specific to Ms. Johnson are derived from the dismissed Securities Class Action and derivative actions or from certain sparse allegations in a New York Tax Case[8] filed against Mr. Fouerti (Ms. Johnson was not a defendant). None are sufficient.

The Trustee's copy-paste allegations from the now-dismissed Securities Class Action and derivative actions include: (1) Ms. Johnson was allegedly "directly told about the inventory problems and missing appliances by Polished's Vice President of Logistics during the summer and fall of 2021 but took no action to correct the issues or prevent materially false inventory numbers from continuing to be reported in Polished's financials." (*id.* ¶¶49, 52(a)-(d)); (2) "Polished's quarterly report for 2021 Q2 . . . . [and] 2021 Q3, annual report for 2021, and quarterly report for 2022 Q1 were certified by [Ms. Johnson], and these certifications were knowingly false." (*id.* ¶¶43-44); and (3) "Polished's VP of Logistics knew of at least 15 people working for Appliances Connection who were not legally documented, and he informed . . . Fouerti and Johnson of this issue on September 21, 2021" (*id.* ¶70(a)).

The Trustee's allegations from the Tax Case are limited to the allegations that Polished's former Director of Financial Planning & Analysis ("**FP&A**") Brad Adelsky "spoke" with Ms. Johnson "about his concerns with the decision to stop filing sales and use taxes and explained that Polished was not in compliance with its sales and use tax obligations and would begin accruing interest on any taxes owed"; and (2) Ms. Johnson allegedly "ignored these concerns and made no effort to ensure the Company's compliance, responding only by telling Adelsky that the Company would 'do whatever Albert decides'" (*id.* ¶64(e)-(f)).

### B. Ms. Johnson Cannot Be Liable for Conduct Outside of Her Discretionary Authority.

"Different corporate offices obviously hold different responsibilities," and Ms. Johnson, as

---

[8] *Polished.com, Inc. v. Foureti*, No. 505260/2024 (N.Y. Sup. Ct. Feb. 21, 2024).

CFO, can only be liable for "decision[s] [within her] authority." *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 573 (Bankr. D. Del. 2008); *In re Space Case*, 2024 WL 1628440, at *5 (similar). Yet, the Complaint alleges that the Director and Officer Defendants (collectively) "knowingly facilitated and/or failed to prevent Polished from issuing false financial statements, defrauding customers and vendors, and violating labor, immigration, and tax laws." Compl. ¶¶114, 118, 123.

However, as explained above, the Trustee does not assert any specific allegations against Ms. Johnson related to "defrauding customers and vendors," nor does the Trustee allege any facts demonstrating that Ms. Johnson, as CFO, was involved in or had any authority over the Company's dealings with customers and vendors, which would likely have been under the purview of sales and procurement employees. Similarly, the Trustee provides no factual basis supporting any notion that Ms. Johnson, as the CFO, was involved in or had any authority over the decision to employ, or terminate, undocumented workers at some Connection warehouse, which would likely have been under the purview of Human Resources. *Supra* at 16-17. Accordingly, to the extent the Trustee relies on these ill-pled allegations, they cannot support any claim against Ms. Johnson.

### C.   Count III: Ms. Johnson Did Not Breach Any Fiduciary Duty.

Separating whatever wheat can be derived from the Complaint's chaff, the Trustee only conceivably attempts to allege that Ms. Johnson breached her fiduciary duties by "knowingly facilitating and/or failing to prevent Polished from": (1) "issuing false financial statements"; and (2) "violating . . . tax laws." *Supra* at 2. Both theories fail.

#### (1)   Ms. Johnson Did Not Breach Any Fiduciary Duty in Connection with Polished's Financial Statements.

While the Trustee claims that the Company issued a number of allegedly false or misleading statements, many of those statements were made prior to Ms. Johnson joining the Company in July 2021. *See* Compl. ¶40(a)-(c). The Complaint appears to allege that these

statements were false or misleading because in March 2021, the Company restated certain financial metrics for the year 2019, all of which predated Ms. Johnson joining the Company. *Id.* ¶45. All allegations regarding the financial statements or other representations made in connection with the Merger also pre-date Ms. Johnson's arrival. *Id.* ¶¶29-32, 45. Additionally, Ms. Johnson did not sign and is not alleged to have been involved in the preparation of the November 18, 2021 Proxy Statement. *Id.* ¶40(d). Accordingly, Ms. Johnson cannot be liable for any of these statements under any theory of liability. *Harcum v. Lovoi*, 2022 WL 29695, at *27 & n.20 (Del. Ch. Jan. 3, 2022) (no breach of fiduciary duty where "the Complaint fails to allege well-pleaded facts that [the officer defendant] was involved in drafting the Proxy").

The Complaint only alleges that Ms. Johnson certified four financial statements: (1) the 2021 Q2 Form 10-Q; (2) the 2021 Q3 Form 10-Q; (3) the 2021 Form 10-K; and (4) the 2022 Q2 Form 10-Q. *Id.* ¶¶43-44. Plaintiffs claim that the "reported inventory numbers" in these financial statements were "materially false," and that Ms. Johnson's certifications of them were "knowingly false." *Id.* ¶¶43-44, 46, 53. But the Complaint does not identify any specific statement that is alleged to be false or misleading, or the reasons why any statement was false or misleading. *Id.* (alleging only that "Polished reported false inventory numbers in its public filings"); *id.* ¶52(d) (vaguely alleging that "Polished's inventory numbers were not even close to the actual inventory in" a particular warehouse); *id.* ¶53 (alleging only that "Polished's publicly reported inventory numbers for the fiscal year of 2021 and the first quarter of 2022 were materially false"). Without adequately pleading what particular statement was allegedly false or misleading and why, the Trustee fails to adequately plead any underlying breach. *See, e.g.*, *Ponder v. Maaranu*, 2021 WL 4928452, at *2 n.4 (D. Del. Oct. 21, 2021) (rejecting fiduciary duty claims where plaintiff failed to state with "specificity" what the false statements were or why they were false); *In re Crimson*

19

*Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *7 n.31 (Del. Ch. Oct. 24, 2014) (similar).

To the extent the Trustee may be attempting to indirectly incorporate the Securities Class Action allegations into its Complaint, the Trustee's claims that (i) the four financial statements contained false or misleading statements or (ii) Ms. Johnson was grossly negligent or acted in bad faith in connection with those statements, fail for multiple reasons.

*First*, allegations from complaints in other litigations do not constitute well-pleaded facts sufficient to survive a motion to dismiss under Rule 12(b)(6). *Zhou v. NextCure, Inc.*, 2023 WL 4493541, *11 (S.D.N.Y. July 12, 2023) ("paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have . . . not resolved, are, as a matter of law, immaterial" under Rule 12); *Newtyn Partners LP v. Alliance Data Systems Corp.*, 2025 WL 872967, *19 (S.D. Ohio Mar. 20, 2025), *aff'd*, 165 F.4th 947 (6th Cir. 2026) (similar). That is especially true here, where the Securities Class Action was dismissed with prejudice. *See Baca*, 2010 WL 2219715, at *5 ("dismissal of an underlying securities action should suggest to a rational plaintiff the need for an extensive investigation and detailed pleadings" for fiduciary duty claims).

*Second*, relying on the Securities Class Action complaint, the Trustee cites the allegations of Polished's former VP of Logistics (referred to as "Former Employee 1" or "FE1") concerning the Company's "inventory issues" as support for its argument that Polished's financial statements were materially false or misleading. Compl. ¶¶52(a)-(c). Specifically, the Trustee alleges that FE1: (1) "told" Mr. Fouerti, Mr. Moore, and Ms. Johnson about "inventory issues on multiple occasions"; (2) "told" Mr. Fouerti and Ms. Johnson "that inventory was missing and materially overstated on the balance sheet"; and (3) "spent approximately 30 minutes explaining the problems with the inventory system and missing appliances" on a phone call with Mr. Fouerti and Ms. Johnson on September 21, 2021. *Id.*

20

However, as the District Court correctly concluded, FE1's allegations are fatally insufficient to establish that any financial statements were materially false or misleading. *Polished*, 2026 WL 673462, at *7-8. Although not pled here, FE1 had based his allegation that the Company's financial statements were materially false on the contention that he, on one occasion sometime in June 2021 (before Ms. Johnson joined the Company), had conducted "two separate hand counts" of the inventory at one warehouse of a Company subsidiary, and believed that there were "1,200 missing appliances." *Id.* The District Court rejected the securities plaintiffs' claim that these allegations somehow demonstrated the Company's financial statements were false or misleading because: (1) FE1 "was not in a position to know, nor had the expertise to value, the allegedly missing inventory"; (2) "[t]here are not sufficient allegations that lay out in detail how many units were in the warehouse at the time, what percentage of total units this number represented, if the warehouse was closed to prevent units from coming in and out and keep the numbers stable, and importantly, whether this count was ever repeated at a later point in time"; (3) although 1,200 appliances may have been missing at one point in time at a single warehouse of a Company subsidiary, "FE1 would not have a complete picture of the entire inventory of the Company"; and (4) "Polished allegedly had 500,000 stock keeping units, or items of inventory for sale, as of March 31, 2022" and "[t]here is no allegation that FE1 understood how to value this inventory" or the unspecified allegedly missing 1,200 appliances. *Id.*

The District Court also rejected similar allegations of other lower-level former employees, also cited in the Complaint, for similar reasons. Compl. ¶52(e)-(g); *Polished*, 763 F. Supp. 3d at 296-299. The District Court's analysis and conclusions rejecting these far more particularized allegations in the Securities Class Action compel rejection of the Trustee's vague and truncated

21

version of them here as well.[9]

*Third*, as the District Court correctly concluded, no statements in the 2021 Q2 or 2021 Q3 Form 10-Qs were false or misleading, including because they were never restated (including any inventory metrics). *Polished*, 763 F. Supp. 3d at 300-304; *Polished*, 2026 WL 673462, at \*10.

Similarly, Ms. Johnson's SOX certifications of the 2021 Q2 and 2021 Q3 Form 10-Qs were not false or misleading. *Id.* As in the Securities Class Action, the Trustee appears to be arguing that because the Company disclosed a material weakness in internal controls in its 2021 Form 10-K, somehow these earlier certifications must have been false. Compl. ¶54. However, the District Court correctly concluded that the disclosure of a material weakness in March 2022 could not render the earlier certifications false because: (1) SOX certifications are statements of opinion; (2) there are "no fact[s] indicating that material weaknesses in internal controls existed in Q2 or Q3 of 2021, or that Fouerti or Johnson knew of those weaknesses"; and (3) plaintiff failed to "explain how the alleged [improper business] practices affected Polished's internal controls, let alone how they rendered the [certifications] false or misleading." *Polished*, 763 F. Supp. 3d at 305-308. And while the District Court concluded that certain financial metrics in the Company's 2021 Form 10-K and 2022 Q2 Form 10-Q were adequately pleaded as false because they were later restated, the District Court correctly concluded that Ms. Johnson's SOX certifications of those financial statements were not false or misleading for the same reasons discussed above. *Id*. The same reasoning applies here. *See, e.g., Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at

---

[9] All of the Trustee's other allegations concerning alleged "forged records and falsified [] documents" and alleged violations of "labor and immigration laws" are similarly derived from the Former Employee allegations already rejected in the Securities Class Action. Compl. ¶¶57-59, 69-70. The Court should reject the Trustee's truncated version of those allegations here for the same reasons and, in any event, none of them concern or are otherwise connected to Ms. Johnson or any of the Company's financial statements. *Supra* at 18-19.

22

*3 (Del. Ch. Aug. 26, 2005) (dismissing a disclosure-based fiduciary duty claim because "there is no allegation in the complaints that this statement of opinion was not honestly held, i.e., false").

*Fifth*, even assuming any of the challenged financial statements were false (they were not), the Trustee fails to point to any facts showing that Ms. Johnson was grossly negligent (duty of care) or that she engaged in any self-dealing or otherwise acted in bad faith (duty of loyalty) in connection with the challenged financial statements. To the extent any such allegations may be divined from the Complaint, they could only be limited to the allegations concerning: (1) FE1's alleged conversations with Ms. Johnson, as discussed above (*supra* at 20); and (2) the fact that the challenged financial statements were later restated. Compl. ¶86. The Trustee does not allege that Ms. Johnson engaged in any self-dealing. The Trustee's allegations, separately or together, cannot satisfy the Trustee's burden of pleading any breach of fiduciary duty.

"In the corporate context, gross negligence has its own special meaning that is akin to recklessness." *In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d 652, 689 (Del. Ch. 2023); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 n.45 (Del. Ch. 2008) (similar).

Here, FE1's allegations do not and cannot establish Ms. Johnson was grossly negligent or reckless with respect to the financial statements. Not only are FE1's allegations not credible or reliable on their face (*supra* at 21), there was no reason for Ms. Johnson to take what FE1 allegedly told her as true at the time, or, even accepting the account of the 1,200 missing appliances as true, that there was any reason to believe that the Company's financial statements were false, much less materially so. *See Guttman v. Huang*, 823 A.2d 492, 507 n.39 (Del. Ch. 2003) (rejecting gross negligence allegations for failure to plead particularized facts demonstrating why particular defendants should have known about accounting irregularities); *Polished*, 2026 WL 673462, at *12 (FE1's allegations could not establish "conscious misbehavior or recklessness" because they

23

did not "play any direct or meaningful role in the company-wide financial forecasting or reporting process," including in connection with the Company's inventory).

Nor can FE1's allegations establish that Ms. Johnson acted in bad faith (duty of loyalty) in connection with the financial statements, for many of the same reasons. Beyond not being grossly negligent, the Complaint lacks any facts indicating that Ms. Johnson made any of the challenged statements attributable to her in bad faith. Nor can FE1's allegations establish that the Ms. Johnson utterly failed to implement internal controls within her purview with respect to the Company's financial statements, that FE1's vaguely described allegations demonstrate that Ms. Johnson "consciously failed to act after learning about evidence of illegality," or that Ms. Johnson "consciously failed" to report any illegality to the Board. *Cai*, 349 A.3d at 633–34; *Guttman*, 823 A.2d at 507 (rejecting loyalty claim where there were no factual allegations showing defendants "had clear notice of serious accounting irregularities and simply chose to ignore them" or any facts showing that the company's "financial compliance systems" were utterly inadequate). At the very most, the Trustee "merely asserts that [Ms. Johnson] learned (at some point) about 'issues'" regarding "unspecified" inventory matters, which cannot establish a breach of fiduciary duty. *Cai*, 349 A.3d at 633–34 (rejecting fiduciary duty claims against President/in-house accountant based on similar allegations).

To the contrary, the pleaded facts demonstrate that Ms. Johnson acted at all times in good faith and was not grossly negligent or otherwise consciously disregarding her duties. As discussed above, and in the Complaint, Ms. Johnson worked closely with the Company's outside auditor, Friedman, to ensure the accuracy of the financial statements. *Supra* at 7. Indeed, in late 2021 (approximately six months after Ms. Johnon joined the Company), when Ms. Johnson and Friedman determined that there was a material weakness in certain controls, the Company

24

disclosed that fact in the 2021 Form 10-K and implemented remedial measures to address the deficiencies. *Supra* at 7. These facts further support dismissal of any fiduciary duty claim. *See Marchand v. Barnhill*, 212 A.3d 805, 821 (Del. 2019) (*Caremark* claims are regularly dismissed where defendants "use third-party monitors, auditors, or consultants"); *Genworth Fin., Inc. Consol. Deriv. Litig.*, 2021 WL 4452338, at *19 (Del. Ch. Sep. 29, 2021) (no breach of fiduciary duty in part because company's auditor "certified [the company's] financial statements and internal controls").

Similarly, and for many of the same reasons stated above, the mere fact of a restatement is not sufficient to establish that Ms. Johnson was grossly negligent or acted in bad faith under Delaware law. *See, e.g., Guttman*, 823 A.2d at 493-94, 507 (restatement did not establish breach of fiduciary duty); *Polished*, 763 F. Supp. 3d at 316 ("[T]he mere fact that Polished restated its financials for fiscal year 2021 and Q1 of 2022 does not mean that Fouerti or Johnson engaged in conscious misbehavior or recklessness.").

In sum, because the Trustee has failed to plead any facts showing that Ms. Johnson was grossly negligent or acted in bad faith, any breach of fiduciary duty claim must fail. *Green v. Paz*, 2021 WL 11661345, at *16 (D. Del. Mar. 31, 2021) ("For the same reasons the federal securities claims fail, Plaintiffs' breach of fiduciary duty claims fail. The [Complaint] fails to identify false and/or misleading statements. Moreover, Plaintiffs have not alleged specific facts about any Individual Defendant, with particularity, that they knowingly caused [the Company] to make false disclosures, or in bad faith consciously disregarded red flags that should have alerted them to the purported falsity of [the Company's] public disclosures."); *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1068–69 (D. Del. 2013) (rejected fiduciary duty claims because "[a]s discussed in

connection with the securities fraud claim . . . Plaintiffs have not sufficiently alleged scienter").[10]

### (2)    Ms. Johnson Did Not Breach Any Fiduciary Duty in Connection with Polished's Tax Law Compliance.

The factual pleadings are equally insufficient with respect to the alleged tax law violations, which the Trustee misleadingly paraphrases from the underlying Tax Case. In the Tax Case, the Company asserted that: (1) Polished used a platform called TaxJar to assist with its sales and use tax compliance; (2) in or about August 2022, Mr. Fouerti directed a sales employee to stop uploading the Company's sales information to TaxJar until the TaxJar account under Polished's name had been set up; (3) in or about October 2022, TaxJar sent a notice to Brad Adelsky, Director of FP&A, stating that Polished's sales for September 2022 appeared to be inconsistent with prior periods; (4) Mr. Adelsky then spoke with Ms. Johnson "about his concerns with the decision to stop filing sales and use taxes," "that there were technical issues with setting up Polished's TaxJar account," and "[i]n the meantime, Polished was not in compliance with its sales and use tax obligations"; (5) Ms. Johnson allegedly "responded by stating that the Company would 'do whatever Albert decides'"; and (6) the Company resumed paying sales and use taxes in December 2022." Ex. 12 (Tax Case, Doc. No. 2), at 3-4.

As explained in Mr. Fouerti's motion to dismiss (which Ms. Johnson joins in full), none of this establishes that Mr. Fouerti breached any fiduciary duty. That Mr. Fouerti directed a lower-level employee to abstain from using a particular program to upload sales data for a couple months until a new account was created under the Company's name does not constitute gross negligence or bad faith.

---

[10] The mere fact that Ms. Johnson resigned from the Company also cannot establish any breach of fiduciary duty. *OptimisCorp v. Waite*, 2015 WL 5147038, at *73 (Del. Ch. Aug. 26, 2015) ("[T]he act of resigning" cannot establish fiduciary duty claims "absent unusual circumstances[.]"), *aff'd*, 137 A.3d 970 (Del. 2016).

With respect to Ms. Johnson, the allegations are even weaker. Ms. Johnson is not alleged to have directed anyone to stop uploading sales data to TaxJar. And the single conversation between one mid-level employee and Ms. Johnson is insufficiently particularized to establish that she was aware that the Company was violating any tax law. At most, the conversation reflects a short conversation wherein an employee responsible for FP&A—not tax law compliance—raised general concerns about the potential delay caused by setting up the Company's account on TaxJar, and Ms. Johnson respected Mr. Fouerti's authority to make the decision. *Cai*, 349 A.3d at 633–34 (rejecting fiduciary duty claims against President/in-house accountant responsible for "tax matters" where allegedly reported "issues" did not establish clear knowledge of illegality).

Moreover, this conversation allegedly took place in October 2022, days before Ms. Johnson was set to resign, and the Trustee does not explain what Ms. Johnson should have or could have done about the alleged concerns at all, much less in that short window of time.

In sum, the Trustee's sparse, borrowed allegations about this short conversation cannot demonstrate that Ms. Johnson's response was totally outside the bounds of reason or the result of bad faith. *Brehm v. Eisner*, 746 A.2d 244, 264, 264 n.65 (Del. 2000) ("[c]ourts do not measure, weigh or quantify directors' [or officers'] judgments" or "even decide if they are reasonable"; instead, their "business decisions will not be disturbed if they can be attributed to any rational business purpose"). "Officers' management of day-to-day matters does not make them guarantors of negative outcomes from imperfect business decisions." *Cai*, 349 A.3d at 633–34. And mere disagreement between a mid-level employee and Ms. Johnson cannot establish any breach of fiduciary duty. *Id.* ("[M]ere disagreement cannot serve as grounds for imposing liability" because "[t]o rule otherwise would invite courts to become super directors [and officers], measuring matters of degree in business decisionmaking . . . ."); *Melbourne Mun. Firefighters' Pension Trust*

27

*Fund v. Jacobs*, 2016 WL 4076369, at *9 (Del. Ch. Aug. 1, 2016); *Cai*, 349 A.3d at 633–34 (rejecting allegations against President/in-house accountant where plaintiffs merely alleged that he was aware of "issues" related to customers, revenue decreases, and increases in receivables).

**D.      Count IV: Ms. Johnson Did Not Aid or Abet Any Breach of Fiduciary Duty.**

The Trustee's aiding and abetting claims against Ms. Johnson fail for many of the same reasons. The Complaint contains no facts establishing that Ms. Johnson "had actual or constructive knowledge that" Mr. Fouerti was making false or misleading statements in the Company's public financial statements or that he was committing alleged tax law violations. *In re Cred Inc.*, 658 B.R. at 793. Nor does the Trustee allege that Ms. Johnson "participated in [Mr. Fouerti's] decisions, conspired with [Mr. Fouerti], or otherwise caused [Mr. Fouerti] to make the decisions at issue." *Id.* At most, the Trustee's theory boils down to the assertion that Ms. Johnson "failed to prevent" Mr. Fouerti from committing the alleged misconduct, which cannot ground an aiding-and-abetting claim. *Supra* at 14.

**E.      Count V: Ms. Johnson Did Not Aid or Abet Fraud.**

The Trustee's aiding and abetting fraud claim also fails. As an initial matter, it is not entirely clear what alleged fraud Ms. Johnson is alleged to have aided and abetted. The sole cause of action for fraud (Count I) is asserted against Mr. Fouerti and Elie Fouerti for allegedly: (1) "caus[ing] Appliances Connection to engage in fraudulent business and accounting practices, which resulted in falsified financial statements, [that] showed Appliances Connection to be profitable and valuable when it was not, and caused Polished to materially overpay to purchase Appliances Connection"; and (2) "leverage[ing] those illegal practices and false financials to obtain a $180 million cash payout for Albert Fouerti." Compl. ¶97.

However, as explained above, that alleged misconduct in connection with the Merger, and the $180 million allegedly received by Mr. Fouerti, all occurred before Ms. Johnson joined the

28

Company. *Supra* at 1, 4. This is yet another example of the Complaint's failure to plead any particularized allegations against any of the defendants, and particularly Ms. Johnson.

To the extent the Trustee is alleging that Ms. Johnson aided and abetted Mr. Fouerti's (or someone else's) alleged fraud in connection with the Company's financial statements or tax law compliance (Compl. ¶98), those allegations fail for the same reasons that Count IV fails, namely that there are no facts establishing that Ms. Johnson knew of or substantially assisted any alleged fraud. *Supra* at 15.

## V.    CONCLUSION

For the foregoing reasons, the Court thus should dismiss the claims against Ms. Johnson with prejudice.

Dated:  June 8, 2026
        Wilmington, Delaware

BAKER & HOSTETLER LLP

*/s/ Jeffrey J. Lyons*
Jeremy D. Anderson (#4515)
Jeffrey J. Lyons (#6437)
1201 North Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jdanderson@bakerlaw.com
jjlyons@bakerlaw.com

Douglas W. Greene (*pro hac vice*)
Zachary R. Taylor (*pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

*Attorneys for Defendant Maria Johnson*