## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>POLISHED.COM INC., *et al.*,[1]<br><br>      Debtors. | Chapter 7<br><br>Case No. 24-10353 (TMH)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Polished.com Inc., *et al.*,<br><br>      Plaintiff,<br><br>      v.<br><br>ALBERT FOUERTI, *et al.*,<br><br>      Defendants. | Adv. Proc. No. 26-50213 (TMH) |

## INDEPENDENT DIRECTORS AND OFFICERS' OPENING
## <u>BRIEF IN SUPPORT OF MOTION TO DISMISS CHAPTER 7 TRUSTEE'S CLAIMS</u>

Dated: June 8, 2026

Robert J. Stark, Esq.
Andrew M. Carty, Esq.
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Email: rstark@brownrudnick.com
     acarty@brownrudnick.com

Christopher M. Samis (No. 4909)
R. Stephen McNeill (No. 5210)
Maria Kotsiras (No. 6840)
**ICE MILLER LLP**
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
Telephone: (302) 313-0600
Email: christopher.samis@icemiller.com
     stephen.mcneill@icemiller.com
     maria.kotsiras@icemiller.com

Daniel J. Healy, Esq.
**BROWN RUDNICK LLP**
1900 N Street NW, 4th Floor
Washington, D.C. 20036
Telephone: (202) 536-1700
Email: dhealy@brownrudnick.com

*Counsel to Douglas T. Moore, Ellery W. Roberts, Robert Barry, Ellette A. Anderson, Clark R. Crosnoe, Glyn C. Milburn, Alan P. Shor, Edward J. Tobin, G. Allan Shaw and James Schneider*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629); Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); Superior Deals Inc. (0096); and YF Logistics LLC (8373).

**TABLE OF CONTENTS**

Page

Preliminary Statement..................................................................................................1

Statement of Facts.......................................................................................................4

I.  Polish Founded;  Subsequently Merges with Albert Fouerti's Appliances
    Connection. ........................................................................................................4

    A.  Founding – April 2019: Goedeker Television Founded; Acquired by Polished.    4

    B.  August 2020 – June 2021: Polished  Merges with Albert Fouerti's Appliances
        Connection.    4

II. Albert Fouerti, Elie Fouerti, and Maria Johnson  Take Over as Polished's CEO,
    COO, and CFO, Respectively, after Merger;  Polished Board Orders Audit
    Committee Investigation into Business Practices. ..............................................5

    A.  Albert Fouerti, Elie Fouerti, and Maria Johnson  Take Over Executive
        Management of Polished after Merger.    5

    B.  March 2022: Polished Files  2021 Annual Report Disclosing Material
        Weakness.    6

    C.  August 2022: Board Directs  Independent Audit Committee Investigation into
        Business  Practices, Including Employment and Inventory Management
        Practices.    6

III. Albert Fouerti, Elie Fouerti, and  Maria Johnson Resign Effective Immediately;
     Securities Lawsuit Filed...................................................................................7

    A.  October 2022: Polished Announces Resignations of Albert Fouerti, Elie
        Fouerti, and Maria Johnson Effective Immediately.    7

    B.  Securities Lawsuit Filed; Subsequently Dismissed with Prejudice.    7

IV. Audit Committee Releases Initial Findings; Albert Fouerti Agrees to Pay $3.7
    Million.............................................................................................................10

    A.  November 2, 2022: Audit Committee Provides Update on Investigation.    10

    B.  December 27, 2022: Audit Committee Releases Initial Investigation Findings.    10

    C.  Polished Board Secures Agreement from  Albert Fouerti to Pay Company $3.7
        Million.    11

    D.  January 25, 2023: Derivative Shareholder Action Filed; Dismissed.    11

V.  Audit Committee Releases Further  Findings; Polished Determines to Restate
    Financials. ......................................................................................................12

    A.  July 31, 2023: Audit Committee Discloses Further Investigation Findings.    12

    B.  Polished Files Comprehensive Restated Financial Statements.    13

VI. February 21, 2024: Polished Commences Action  Against Albert Fouerti Related to
    Sales and Use Tax Issues. ...............................................................................13

VII. March 7, 2024 – March 5, 2026:  Polished Files Chapter 7 Petitions; Trustee Files
     Complaint against  Albert Fouerti, Elie Fouerti, Maria Johnson, and Independent
     D&Os. ............................................................................................................14

Arguments.......................................................................................................................15

I.      Legal Standard. ....................................................................................................15

II.     The Trustee Has Failed to State a  Breach of Fiduciary Duty Claim against the
        Independent D&Os. ..............................................................................................16

        A.   Any Duty of Care Claim Against the Independent Directors Is  Barred by
             Exculpatory Clauses in the Debtors' Certificates of Incorporation.        16

        B.   The Complaint Fails to Satisfy the *Caremark* Test.                        18
                i.    The Court Should Apply Delaware Law. .................................. 18
                ii.   The Complaint Fails under *Caremark* and Its Progeny. ........................... 20

        C.   The Complaint Lacks Self-Dealing or Bad Faith Allegations.             24

        D.   The Complaint Lacks Gross Negligence Allegations.                      26

        E.   The Trustee Fails to Rebut the Business Judgment Rule Presumption.     28

        F.   The Complaint Fails to Plead Proximate Cause.                          30

III.    The Trustee Has Failed to State an Aiding and Abetting Breach of Fiduciary Duty
        Claim against the Independent D&Os. ..................................................................31

        A.   The Aiding and Abetting Claim Fails as a Matter of Law.               31

        B.   The Complaint Lacks Knowing Participation Allegations.               32

        C.   The Trustee Fails to Plead Proximate Cause.                          35

IV.     The Trustee Has Failed to State an Aiding and Abetting Fraud Claim against the
        Independent D&Os. ..............................................................................................36

        A.   The Claim Is Barred by the Intra-Corporate Conspiracy Doctrine.      36

        B.   The Trustee Fails to Plead the Independent D&O's  Knowledge of any Alleged
             Fraud or Substantial Assistance.                                     37

Conclusion .....................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&J Capital, Inc. v. Law Office of Krug*,
  No. CV 2018-0240-JRS, 2019 WL 367176 (Del. Ch. Jan. 29, 2019) ......................................27

*In re Access Cardiosystems, Inc.*,
  404 B.R. 593 (Bankr. D. Mass. 2009) ...................................................................................24

*Allied CapitalCorp. v. GC Sun Holdings, L.P.*,
  910 A.2d 1020 (Del. Ch. 2006).............................................................................................31

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*,
  No. Civ. A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ......................................36

*Anschutz Corp. v. Brown Robin Capital, LLC*,
  C.A. No. 2019-0710-JRS, 2020 WL 3096744 (Del. Ch. June 11, 2020) .........................36, 37

Aronson v. Lewis, 473 A.2d 805 (Del. 1984)..................................................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................15, 16

*Bell Atlantic Corp. v Twombly*,
  550 U.S. 554 (2007).................................................................................................15, 16, 20

*Binks v. DSL.Net, Inc.*,
  No. 2823-VCN, 2010 WL 1713629 (Del. Ch. Apr. 29, 2010) ..............................................32

*In re BJ's Wholesale Club, Inc. S'holders Litig.*,
  No. 6623, 2013 WL 396202 (Del. Ch. Jan. 31, 2013).........................................................22

*Borsody v. Gibson*,
  No. 2023-1205-BWD, 2025 WL 1650395 (Del. Ch. June 11, 2025) ...............................30, 34

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) .....................................................................................................29

*Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*,
  906 A.2d 27 (Del. 2006) .......................................................................................................28

*Bridgeport Holdings, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings,*
  *Inc.)*,
  388 B.R. 548 (Bankr. D. Del. 2008) .................................................................................20, 26

iii

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011)................................................................15

*Buttonwood Tree Value Partners, L.P. v. R. L. Polk & Co., Inc.*,
No. 9250-VCG, 2017 WL 3172722 (Del. Ch. July 24, 2017)..........................34, 35

*Cain v. Merck & Co.*,
415 N.J. Super. 319 (App. Div. 2010) ........................................................20

*In re Caremark International Inc. Derivative Litigation*,
698 A.2d 959 (Del. Ch. 1996)........................................................ *passim*

*Central Laborers' Pension Fund v. Dimon*,
638 F. App'x 34 (2d Cir. 2016) ...........................................................23

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009)...............................................................29

*City of Birmingham Ret. & Relief Sys. v. Good*,
177 A.3d 47 (Del. 2017) ..................................................................21

*In re Columbia Pipeline Grp., Inc. Merger Litig.*,
342 A.3d 324 (Del. 2025) ............................................................ *passim*

*Cornell Glasgow, LLC v. La Grange Props., LLC*,
No. N11C-05-016 JRS CCLD, 2012 WL 2106945 (Del. Super. Ct. June 6,
2012) ...................................................................................30

*Corporate Risk Holdings LLC v. Rowlands*,
No. 17-cv-5225(RJS), 2018 WL 9517195 (S.D.N.Y. Sept. 28, 2018) ...................23

*In re Direct Response Media, Inc.*,
466 B.R. 626 (Bankr D. Del. 2012) ......................................................21, 25

*DiRienzo v. Lichtenstein*,
No. 7094-VCP, 2013 WL 5503034 (Del. Ch. Sept. 30, 2013) ............................25

*In re Dole Food Co. Stockholder Litig.*,
No. 8703-VCL, No. 9079-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015)...........33, 34

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)...................................................................18

*EngageSmart, Inc. Stockholder Litigation*,
C.A. No. 2023-1093-JTL, 2026 WL 554442 (Del. Ch. Feb. 27, 2026)...................38

*In re Essar Steel Minn. LLC*,
No. 16-11626 (BLS), 2019 WL 2246712 (Bankr. D. Del. May 23, 2019).............23, 25

iv

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)................................................................................15, 16

*Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.)*,
  476 B.R. 746 (S.D.N.Y. 2012)..................................................................................19

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) ..........................................................................................26

*Gilbert v. El Paso Co.*,
  490 A.2d 1050 (Del. Ch. 1984)..................................................................................30

*Jaroslawicz v. M&T Bank Corp.*,
  No. CV-15-987-RGA, 2017 WL 1197716 (D. Del. Mar. 30, 2017) .......................25

*Gottlieb ex rel. Johnson & Johnson v. Beckerle*,
  2024 WL 678007 (N.J. Super. App. Div. Feb. 20, 2024) ........................................19

*Joseph v. Frank (In re Troll Commc'ns, LLC)*,
  385 B.R. 110 (Bankr. D. Del. 2008) ........................................................................28

*Kittay v. Flutie New York Corp. (In re Flutie New York Corp.)*,
  310 B.R. 31 (Bankr. S.D.N.Y. 2004) .......................................................................19

*Kravitz v. Tavlarios*,
  No. 19 Civ. 8438 (NRB), 2020 WL 3871340 (S.D.N.Y. July 8, 2020)..............23, 26

*Kuhns v. Bruce A. Hiler Del. QPRT*,
  No. 7586-VCG, 2014 WL 1292860 (Del. Ch. Mar. 31, 2014)................................34

*Lawson Mardon Wheaton, Inc. v. Smith*,
  160 N.J. 383 (1999) ...................................................................................................20

*In re Lear Corp. Shareholder Litig.*,
  967 A.2d 640 (Del. Ch. 2008)...................................................................................26

*Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings,
  Inc.)*,
  625 B.R. 268 (D. Del. 2020)................................................................................18, 25

*Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings,
  Inc.)*,
  No. 13-12098 (CSS), Adv. Case. No. 15-51069(CSS), 2017 WL 1508606
  (Bankr. D. Del. Apr. 27, 2017) ...........................................................................18, 19

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) ............................................................................17, 31, 32

v

*Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*,
   319 A.3d 909 (Del. Super. Ct. 2024) ..............................................................37

*In re McDonald's Corp. Stockholder Derivative Litig.*,
   289 A.3d 343 (Del. Ch. 2023)..........................................................................21

*McMillan v. Intercargo Corp.*,
   768 A.2d 492 (Del. Ch. 2000)..........................................................................29

*In re Midway Games Inc.*,
   428 B.R. 303 (Bankr. D. Del. 2010) ................................................................21

*Miller v. American Capital Ltd. (In re NewStarcom Holdings, Inc.)*,
   547 B.R. 106 (Bankr. D. Del. 2016)................................................................24

*In re Mindbody, Inc., Stockholder Litig.*,
   332 A.3d 349 (Del. 2024) ......................................................................... *passim*

*Morbieu v. Keayes*,
   2023 N.Y. Slip Op. 50200(U), 2023 WL 2544901 (N.Y. Sup. Ct. Mar. 15,
   2023) ................................................................................................................31

*New England Carpenters Guaranteed Annuity and Pension Funds v. Decarlo*,
   122 F.4th 28 (2d Cir. 2024) .............................................................................33

*In re Nine West LBO Securities Litig.*,
   505 F. Supp. 3d 292 (S.D.N.Y. 2020) .............................................................35

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc., v. Goldman
   Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*,
   405 B.R. 527 (Bankr. D. Del. 2009) ..........................................................24, 26

*Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp.
   Holdings, LLC (In re HH Liquidation, LLC)*,
   590 B.R. 211 (Bankr. D. Del. 2018) ................................................................29

*Ogus v. SportTechine, Inc.*,
   C.A. No. 2018-0869-AGB, 2020 WL 502996 (Del Ch. Jan. 31, 2020) ...........37, 38

*In re Old BPSUSH, Inc.*,
   Case No. 16-12373 (BLS), Adv. Pro. No. 19-50726 (BLS), 2020 WL 6818435
   (Bankr. D. Del. June 30, 2020) ...................................................................23, 27

*In re Opus E., LLC*,
   528 B.R. 30 (Bankr. D. Del. 2015) ..................................................................25

*In re Oracle Corp. Derivative Litig.*,
   C.A. No. 2017-0337-SG, 2020 WL 3410745 (Del. Ch. June 22, 2020)..........33, 34

*In re Our Alchemy, LLC*,
    No. 16-11596 (KG), 2019 WL 4447541 (Bankr. D. Del. Sept. 16, 2019) .............................24

*In re Premier Int'l Holdings, Inc.*,
    443 B.R. 320 (Bankr. D. Del. 2010) ...............................................................................15

*Preston v. Preston*,
    No. 6049, 1981 WL 15086 (Del. Ch. Apr. 16, 1981) ................................................30

*RBC Capital Mkts., LLC v. Jervis*,
    129 A.3d 816 (Del. 2015) ...............................................................................................30

*RCS Creditor Tr. v. Schorsch*,
    No. 2017-0178-SG, 2018 WL 1640169 (Del. Ch. Apr. 5, 2018) .............................24

*RGIS Int'l Transition Holdco v. Retail Services Wis Corp.*,
    C.A. No. N21C-12-077 PRW CCLD, 2024 WL 568515 (Del. Super. Ct. Feb.
    13, 2024) ...........................................................................................................................37

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)............................................................................................15

*In re Sharp Int'l. Corp.*,
    281 B.R. 506 (Bankr. E.D.N.Y. 2002)...........................................................................32

*In re Solutions Liquidation LLC*,
    608 B.R. 384 (Bankr. D. Del. 2019) .................................................................. *passim*

*South Dakota v. Wayfair, Inc.*,
    585 U.S. 162 (2018).........................................................................................................6

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .......................................................................................21, 26

*Swipe Acquisition Corp. v. Krauss*,
    No. 2019-0509-PAF, 2020 WL 5015863 (Del. Ch. Aug. 25, 2020) .......................31

*In re The Walt Disney Company Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005)........................................................................................26

*In re Ultimate Escapes Holdings, LLC*,
    No. 10-12915 (BLS), Adv. No. 12-50849 (BLS), 2015 WL 1590132 (Bankr.
    D. Del. Feb. 5, 2015)...............................................................................21, 27, 28, 29

*Urvan v. Ammo, Inc.*,
    C.A. No. 2023-0470 PRW, 2024 WL 863688 (Del. Ch. Feb. 27, 2024)................37

*Williams v. Geier*,
　671 A.2d 1368 (Del. 1996) ..................................................................................28

*Witmer v. Armistice Capital, LLC*,
　344 A.3d 632 (Del. Ch. 2025)..............................................................................38

*In re Xura, Inc. Stockholder Litig.*,
　C.A. No. 12698-VCS, 2018 WL 6498677 (Del. Ch. Dec. 10, 2018) ....................34

*Zucker v. Hassell*,
　No. 11625-VCG, 2016 WL 7011351 (Del. Ch. Nov. 30, 2016)............................24

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)...........................................................................................16

**PRELIMINARY STATEMENT**

1.      As detailed herein, the primary focus of the Trustee's Complaint is alleged misconduct by Polished.com Inc.'s ("**Polished**") former CEO, Albert Fouerti. The Trustee alleges that Mr. Fouerti defrauded Polished of $180 million in connection with Polished's 2021 merger with Mr. Fouerti's Appliances Connection, Inc. ("**Appliances Connection**") and, following the merger, mismanaged Polished as its CEO in violation of his fiduciary duties. The Trustee's claims against Polished's independent directors and officers (the "**Independent D&Os**")[1]—i.e., that, following the merger, the Independent D&Os allegedly aided and abetted Mr. Fouerti's wrongdoing and breached their own fiduciary obligations to Polished—are entirely unsupported, both in law and in fact, and should be dismissed with prejudice and without leave to amend. Indeed, the Complaint is devoid of a single factual allegation supporting any cognizable claim against the Independent D&Os. Instead, the Complaint conclusively establishes that the Independent D&Os fully discharged their fiduciary obligations and acted at all times in the best interests of Polished.

2.      The Trustee's first claim against the Independent D&Os (breach of fiduciary duty) fails as a matter of law. First, Polished's organizational documents bar any duty of care claim against the Independent Directors.[2]

3.      Second, the Trustee's allegations come nowhere close to satisfying the heightened *Caremark* standard. Far from establishing that the Independent D&Os "consciously disregarded" their duties, the Complaint, instead, plainly demonstrates the opposite, to wit, that the Independent D&Os' fully satisfied their fiduciary obligations to the company. As detailed herein, in response

---

[1]      The term "Independent D&Os" refers exclusively to Defendants Douglas T. Moore, Ellery W. Roberts, Robert Barry, Ellette A. Anderson, Clark R. Crosnoe, Glyn C. Milburn, Alan P. Shor, Edward J. Tobin, G. Allan Shaw, and James Schneider. The term excludes Defendants Albert Fouerti, Elie Fouerti, and Maria Johnson.

[2]      The term "Independent Directors" refers to the Independent D&Os in their respective capacities as Directors other than Mr. Barry, who was never a Director of Polished.

1

to allegations of improper business practices led by Albert Fouerti, the Independent D&Os, among other things: (i) promptly ordered a comprehensive, independent investigation into such allegations, supported by outside counsel and auditors; (ii) promptly separated from Albert Fouerti (and others) as the investigation matured, and immediately retained a replacement senior executive team to manage the company; (iii) caused Albert Fouerti to pay $3.7 million to the company related to certain of his wrongdoing, and subsequently commenced litigation against Mr. Fouerti related to other misconduct; (iv) publicly disclosed the results of the investigation (including weaknesses in Polished's internal controls), and announced enhanced measures to address its findings; and (v) promptly took remedial action to correct financial information and securities filings that the Polished Board of Directors (the "**Board**") determined were inaccurate.

4.    The Complaint, moreover, contains not one allegation supporting the inference that any of the Independent D&Os: (i) engaged in self-dealing; (ii) lacked independence; (iii) were recklessly uninformed; or (iv) acted outside the bounds of reason. Again, the Complaint establishes precisely the opposite. The Independent D&Os acted exclusively in the best interests of Polished, and took prompt and appropriate action in response to allegations of wrongdoing by Albert Fouerti.[3]

5.    The Trustee's second claim against the Independent D&Os (aiding and abetting breach of fiduciary duty) fares no better. The Trustee alleges that the Independent D&Os aided and abetted Albert Fouerti in breaching his fiduciary duties; however, co-fiduciaries cannot, as a matter of law, aid and abet each other's fiduciary duty breaches. Moreover, the aiding and abetting

---

[3]    Additionally, although the Complaint alleges a *Caremark* (i.e., failure of oversight) claim against the Independent D&Os, and does not allege wrongdoing by the Independent D&Os with respect to any decision they made or action they affirmatively took, the Independent D&Os observe that any such decisions or actions would be subject to business judgment deference, which the Trustee cannot rebut. The Trustee also fails to allege facts supporting an inference of causation as it relates to the breach of fiduciary duty claim against the Independent D&Os.

claim is entirely duplicative of the Trustee's direct breach of fiduciary duty claim. The latter claim fails and, thus, the former does too. Just as importantly, the Trustee fails to plead that the Independent D&Os "knowingly participated" in Albert Fouerti's alleged breaches, as the Complaint contains no allegations supporting the inference that the Independent D&Os: (i) had actual knowledge of Mr. Fouerti's alleged breaches at the time they occurred; (ii) had actual knowledge that any of their own conduct was legally improper; or (iii) provided *any* assistance— let alone *active* and *substantial* assistance—to Mr. Fouerti in connection with his alleged breaches.[4] The Trustee must establish each of the foregoing. He establishes none.

6.      The Trustee's third claim against the Independent D&Os (aiding and abetting fraud) must likewise be dismissed. The claim is barred, as a matter of law, under the intra-corporate conspiracy doctrine. Further, the claim—which must be pleaded with particularity—suffers from the same fatal defects as the Trustee's aiding and abetting breach of fiduciary duty claim. That is, the Trustee fails to allege facts supporting the reasonable inference that the Independent D&Os: (i) had actual knowledge of Mr. Fouerti's alleged fraud at the time it was occurring; (ii) had actual knowledge that any of their own conduct was wrongful; or (iii) provided any assistance to Mr. Fouerti in the commission of any alleged fraud.

7.      In sum, the Trustee fails to allege facts supporting any cognizable claim against the Independent D&Os. Accordingly, the Complaint must be dismissed as to the Independent D&Os in its entirety.

---

[4]      As with the Trustee's direct breach of fiduciary duty claim against the Independent D&Os, the Trustee also fails to allege causation, i.e., that the Independent D&Os' conduct caused any of Mr. Fouerti's alleged breaches of fiduciary duty.

**STATEMENT OF FACTS[5]**

I.     **Polish Founded;
Subsequently Merges with Albert Fouerti's Appliances Connection.**

     A.     **Founding – April 2019: Goedeker Television Founded; Acquired by Polished.**

8.     Polished's history begins with the founding of Goedeker Television Co. ("**Goedeker Television**"), an appliance and furniture retailer, in 1951 in St. Louis, MO. (Complaint ¶ 24). Through its first five (5) plus decades, the company sold inventory principally through brick-and-mortar showrooms. (Complaint ¶ 24). Beginning in or around 2008, Goedeker Television began selling inventory through its e-commerce website, "Number1Direct.com," and, by 2012, the company was selling most of its inventory through its e-commerce channel. (Complaint ¶ 24).

9.     On or about April 5, 2019, Goedeker Television was acquired by Polished.com Inc., then known as 1847 Goedeker, Inc. (Complaint ¶ 26).

     B.     **August 2020 – June 2021: Polished
Merges with Albert Fouerti's Appliances Connection.**

10.     In or around August 2020, Polished commenced negotiations with Albert Fouerti regarding a potential merger between Polished and Appliances Connection, Inc., an online appliance retailer based in Brooklyn, NY. (Complaint ¶ 27).

11.     Albert Fouerti co-founded Appliances Connection with Elie Fouerti in 2015, and served as its Chief Executive Officer, with Elie Fouerti serving as its Vice President. (Complaint ¶¶ 11, 23, 27).

---

[5]     This Statement of Facts is drawn from the allegations in the Complaint and the public record. Allegations of fact are assumed true solely for purposes of this Motion to Dismiss (the "**Motion**"). The Independent D&Os reserve the right to dispute any allegations of fact should this Motion not be granted.

12.     The Polished Board of Directors approved the proposed merger (the "**Merger**") of Polished (f/k/a 1847 Goedeker, Inc.), on one hand, and Appliances Connection and its subsidiaries, on the other hand, on or about October 20, 2020,[6] and the Merger closed on or about June 2, 2021. (Complaint ¶¶ 29-30).

13.     The principal focus of the Complaint is Albert Fouerti and, specifically, the alleged $180 million that the Trustee asserts Mr. Fouerti fraudulently procured from Polished through the Merger. (*See* Complaint ¶¶ 32, 34-37, 95-99 (First Claim), ¶¶ 126-128 (Sixth Claim), ¶¶ 129-134 (Seventh Claim), ¶¶ 135-138 (Eighth Claim)). It bears observing that the Trustee does not assert any claims against the Independent D&Os related to the Merger (nor could he, as no plausible claim exists).

## II.    Albert Fouerti, Elie Fouerti, and Maria Johnson Take Over as Polished's CEO, COO, and CFO, Respectively, after Merger; Polished Board Orders Audit Committee Investigation into Business Practices.

### A.    Albert Fouerti, Elie Fouerti, and Maria Johnson Take Over Executive Management of Polished after Merger.

14.     As part of the Merger, the executive team of Appliances Connection took over and managed the post-Merger Polished's business and operations until that executive team was replaced by the Independent Directors in October 2022 in the midst of the Audit Committee Investigation (defined below).

15.     Specifically, following the Merger, Albert Fouerti became Polished's Chief Executive Officer and served in that role from September 1, 2021 through his resignation in October 2022 (Complaint ¶¶ 11, 74); Elie Fouerti became Polished's Chief Operating Officer until

---

[6]     The Board approved amendments to the Merger purchase agreement on or about December 20, 2020 and April 6, 2021. (Complaint ¶¶ 29-30).

his resignation in October 2022 (Complaint ¶¶ 23, 74); and Maria Johnson became Polished's

Chief Financial Officer until her resignation in October 2022. (Complaint ¶¶ 13, 74).

**B.      March 2022: Polished Files
     <u>2021 Annual Report Disclosing Material Weakness.</u>**

16.    Approximately nine (9) months after closing the Merger, on March 31, 2022,

Polished filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2021 (the

"**2021 10-K**"). (Complaint ¶ 54).

17.    In it, Polished disclosed that it had identified a material weakness in its internal

controls over financial reporting and disclosure procedures that, if not corrected, could affect the

reliability of its consolidated financial statements and impact the company's ability to meet

reporting obligations. (*See* Complaint ¶ 54).[7]

**C.      August 2022: Board Directs
     Independent Audit Committee Investigation into Business
     <u>Practices, Including Employment and Inventory Management Practices.</u>**

18.    A few months after the 2021 10-K disclosure, on August 15, 2022, Polished

announced that the audit committee (the "**Audit Committee**") established by the Board had

determined to undertake a comprehensive, independent investigation (the "**Audit Committee**

**Investigation**") into the Debtors' business practices and that, as a result, Polished would be unable

to timely file its quarterly report. (Complaint ¶ 72).

---

[7]    The Independent D&Os note that in Polished's prior 2020 annual report, filed before the Merger on March 29, 2021, the company disclosed that it had determined to restate certain prior financial statements as a result of the Supreme Court's 2018 decision in *South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018) which provided that states may require remote sellers to collect sales tax under certain circumstances. (*See* Complaint ¶ 45). Specifically, the company determined, among other things, to: (i) accrue an additional liability of $2,910,200, representing a potential liability for uncollected sales taxes, and related penalties and interest, and (ii) adjust the fair value of certain assets and liabilities relating to Polished's 2019 acquisition of Goedeker Television, resulting in, among other things, a $372,063 reduction in goodwill related to the acquisition. (*See* Complaint ¶ 45). As a result of the foregoing, Polished determined to restate its financial statements for the year fiscal ended December 31, 2019. (Complaint ¶ 45).

19.     Polished subsequently disclosed that the Audit Committee Investigation was "focused on employment and inventory management practices" during "the time period of 2021 through the present." (Complaint ¶ 75).

20.     Polished would further disclose that the Audit Committee Investigation was "supported by independent legal counsel and consultants[.]" (Complaint ¶ 75).

**III.     Albert Fouerti, Elie Fouerti, and
Maria Johnson Resign Effective Immediately; Securities Lawsuit Filed.**

    **A.     October 2022: Polished Announces Resignations of
Albert Fouerti, Elie Fouerti, and Maria Johnson Effective Immediately.**

21.     On October 14, 2022, approximately two (2) months after the company publicly disclosed the Audit Committee Investigation, Polished announced that, effective immediately, Albert Fouerti (CEO), Elie Fouerti (COO), and Maria Johnson (CFO) had resigned from their roles as officers of the company.[8] (Complaint ¶ 74).

22.     To ensure the effective management of the company following these resignations, the Board announced that Robert Barry (one of the Independent D&O Defendants), who had previously served as Polished's CFO prior to the Merger and, thereafter, had served as Chief Accounting Officer until January 2022 (Complaint ¶ 15), agreed to return to Polished to serve as Interim CFO, and that J.E. Bunka had been appointed Interim CEO. (Complaint ¶ 74).

    **B.     Securities Lawsuit Filed; Subsequently Dismissed with Prejudice.**

23.     In the wake of Albert Fouerti's resignation, on October 31, 2022, a putative class action lawsuit was filed in the District Court for the Eastern District of New York (the "**EDNY Court**"), *Maschhoff v. Polished.com Inc. et al.*, Case No. 22-cv-06606 (the "**Putative Securities**

---

[8]     Albert Fouerti was also a director of Polished and would resign from that role a short time later following the Audit Committee's disclosure of its initial investigation findings in December 2023, as discussed below.

**Class Action**"), alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. (Complaint ¶ 51).

24.     With respect to the alleged "inventory issues" and "fraudulent business practices" described in the Complaint, the Trustee (by his own admission) relies heavily, if not exclusively, on allegations contained in the Putative Securities Class Action.

25.     On March 10, 2026, the EDNY Court entered its Memorandum and Order dismissing with prejudice the second amended complaint filed in the Putative Securities Class Action. (Case No. 22-cv-06606, ECF No. 53) (the "**Dismissal Opinion**").[9]

26.     It bears observing that, although the Complaint (relying on allegations contained in the Putative Securities Class Action) alleges that Mr. Moore (Polished's former CEO who resigned in August 2021) and Mr. Barry (Polished's Chief Accounting Officer at the pertinent time) were allegedly made aware of purported "inventory issues" in or around the "summer and fall of 2021," there are no allegation that any of Polished's Independent Directors were informed of, or otherwise aware of, any alleged "inventory issues" during that period.

///

///

///

---

[9]     A true and correct copy of the EDNY Court's Dismissal Opinion is attached as **Exhibit 7** to the *Declaration of Andrew M. Carty in Support of Independent Directors and Officers' Motion to Dismiss Chapter 7 Trustee's Claims* (the "**Carty Decl.**"), filed contemporaneously herewith. Prior to this dismissal with prejudice, on January 24, 2025, the EDNY Court entered its Memorandum and Order dismissing the first amended complaint filed in the Putative Securities Class Action and granting leave to file a second amended complaint, (Case No. 22-cv-06606, ECF No. 51), which second amended complaint was filed on February 24, 2025. (Case No. 22-cv-06606, ECF No. 53). Pursuant to the amended complaint, Robert D. Barry and Ellery W. Roberts were removed as Defendants, with Polished, Albert Fouerti, Maria Johnson, and Douglas T. Moore remaining as Defendants.

On April 7, 2026, lead plaintiff filed a motion seeking relief from the Dismissal Order and to alter the District Court's judgment. (Case No. 22-cv-06606, ECF No. 58). Defendants filed oppositions to such motion (Case No. 22-cv-06606, ECF Nos. 60, 61, 62), which motion is pending as of the date of this filing.

27.     Further, in dismissing with prejudice the Putative Securities Class Action, the EDNY Court observed numerous flaws in these very same allegations that rendered them insufficient to establish that Mr. Moore (or Mr. Barry or any of the other defendants) had actual knowledge of any alleged "inventory issues" at the alleged time, or made any knowingly false statements. (Dismissal Opinion (Carty Decl. Ex. 7), at 17-19). Specifically, the EDNY Court noted that the witness in question "was not in a position to know, nor had the expertise to value, the allegedly missing inventory." (Dismissal Opinion (Carty Decl. Ex. 7), at 17). Further, the allegations respecting "inventory issues" rested entirely on only two purported hand-counts of inventory (without information as to how, when, and where such alleged hand-counts took place) and lacked sufficient detail about, among other things, the scope and magnitude of the alleged "inventory issues" (e.g., the total amount of inventory in Polished's system, the percentage of Polished's inventory that the allegedly overstated inventory represented, and the value of the allegedly missing inventory). (Dismissal Opinion (Carty Decl. Ex. 7), at 17-19) (noting lack of any allegations "that lay out in detail how many units were in the warehouse at the time, what percentage of total units this number represented, if the warehouse was closed to prevent units from coming in and out and keep the numbers stable, and importantly, whether this count was ever repeated at a later point in time.").

28.     "Without more," the EDNY Court concluded, "Plaintiff rests most of its case on numbers from a single day, which could have changed the next day or week without [the witness's] knowledge." (Dismissal Opinion (Carty Decl. Ex. 7), at 18).

9

IV.    **Audit Committee Releases Initial**
       **Findings; Albert Fouerti Agrees to Pay $3.7 Million.**

   A.    **November 2, 2022: Audit Committee Provides Update on Investigation.**

29.    On November 2, 2022, Polished issued a press release providing an update on the Audit Committee Investigation. (Complaint ¶ 75). Among other things, Polished advised that the Audit Committee "intend[ed] to complete its accelerated, yet extensive, investigation by the end of [the] calendar year [i.e., 2022]." (Complaint ¶ 75).

   B.    **December 27, 2022: Audit Committee Releases Initial Investigation Findings.**

30.    On December 27, 2022, the Board and Audit Committee disclosed initial key findings of the Audit Committee Investigation. (Complaint ¶ 77). These initial key findings included the following:

- Albert Fouerti and Elie Fouerti "routinely charged substantial personal expenses to the Company, including tuition payments, religious donations, retail and personal expenses, and salaries for individuals performing services for the Fouertis personally or for the Fouertis' other businesses."

- Albert Fouerti improperly charged Polished for "approximately $800,000 for expenses unrelated to the Company and its operations."

- Albert Fouerti "knowingly and repeatedly hired undocumented workers, often at wages that fell below the statutory minimum for New York State, and this practice appears to have been known by numerous Company employees."

- Albert Fouerti "tried to conceal payments [to undocumented workers] by routing them through third-party employment agencies and through the use of 1099 forms."

- There was "some circumstantial evidence suggesting that Albert and Elie [Fouerti] deposited the proceeds of [] scrap sales in non-Company bank accounts, which they control personally."

(Complaint ¶¶ 77-78).

31.    Polished further disclosed:

10

- "The Company appears to not have had in place all the necessary documentation for all of its employees and, in turn, may have failed to comply with certain legal requirements. As elaborated on below, the Company has subsequently put in place enhanced controls to remedy any labor issues and believes it is now in full compliance with legal requirements."

- "The Company's controls, software and procedures for managing and tracking inventory, including damaged inventory, were insufficient. As elaborated on below, the Company has subsequently put in place enhanced controls to remedy such issues."

(Complaint ¶ 77).

32.    Additionally, Polished announced that its independent auditor, Friedman LLP, had resigned and that Polished had promptly engaged a new auditor, Sadler, Gibb & Associates, LLC. (Complaint ¶¶ 80, 82).

**C.    Polished Board Secures Agreement from Albert Fouerti to Pay Company $3.7 Million.**

33.    Concurrently with disclosing the initial results of the Audit Committee Investigation, Polished announced that Albert Fouerti had agreed to pay Polished *$3.7 million* under a negotiated agreement. (Complaint ¶ 81).

34.    This payment from Albert Fouerti was intended to compensate Polished for expenses improperly charged by Mr. Fouerti, and to reimburse the company for the costs incurred in connection with the Audit Committee Investigation. (Complaint ¶ 81).

**D.    January 25, 2023: Derivative Shareholder Action Filed; Dismissed.**

35.    Following the release of the Audit Committee's initial findings, on January 25, 2023, a putative class action derivative lawsuit was filed in the EDNY Court, *Wong v. Moore, et al.*, Case No. 23-cv-00559 (the "**Putative Derivative Class Action**"), alleging, among other things, a claim for breach of fiduciary duty. (Complaint ¶ 39).

11

36.     The Trustee acknowledges that the Complaint relies heavily on allegations asserted by the plaintiff in the Putative Derivative Class Action, specifically relating to allegedly misleading financial statements issued by the company in and prior to 2021.

37.     On April 7, 2026, the plaintiff and defendants in the Putative Derivative Class Action filed a joint stipulation to voluntarily dismiss the action in light of the EDNY Court's dismissal with prejudice of the Derivative Securities Class Action. (Case No. 23-cv-00559, ECF No. 23).[10]

## V.     Audit Committee Releases Further Findings; Polished Determines to Restate Financials.

### A.     July 31, 2023: Audit Committee Discloses Further Investigation Findings.

38.     On July 31, 2023, Polished announced additional findings from the Audit Committee Investigation. (Complaint ¶ 84).

39.     Polished disclosed that, while re-auditing its financial statements for the year ended December 31, 2021, Polished had determined that it needed to restate its previously issued financial statements for the year ended December 31, 2021 and the quarter ended March 31, 2022. (Complaint ¶ 84).

40.     Polished disclosed that this determination was informed by the Audit Committee Investigation and the Audit Committee's determination that the foregoing financial statements should no longer be relied upon due to errors identified by the Audit Committee and other findings of the Audit Committee Investigation. (Complaint ¶ 84).

---

[10]     A true and correct copy of the joint stipulation to voluntarily dismiss the Putative Derivative Class Action is attached to the Carty Decl. as **Exhibit 8**.

B. **Polished Files Comprehensive Restated Financial Statements.**

41. That same day (July 31, 2023), Polished filed comprehensive restated financial statements for the above-referenced periods, including Annual Reports on Form 10-K for the fiscal years ended Decembers 31, 2022 and 2021, and restated consolidated financial statements for 2021 and the first quarter of 2022. (Complaint ¶ 85).

VI. **February 21, 2024: Polished Commences Action Against Albert Fouerti Related to Sales and Use Tax Issues.**

42. On February 21, 2024, Polished commenced an action against Albert Fouerti in the Supreme Court of the State of New York, County of Kings, *Polished.com Inc. f/k/a 1847 Goedeker Inc. v. Albert Fouerti*, Case No. 505260/2024, alleging that Mr. Fouerti breached his fiduciary duties by directing employees to stop paying sales and use taxes for the period from August 2022 through November 2022, accepting insufficient exemption certificates from purchasers, exempting purchasers from paying sales and use taxes without requiring exemption certificates, and understating the payroll amounts that were submitted to the Company's insurance company to compute workman's compensation insurance premiums. (Complaint ¶¶ 63-64).

43. Following the Debtors' bankruptcy filings, this action was removed to federal court, and then transferred to the District of Delaware, where it is currently pending as Case No. 24-cv-00739 (the "**Fouerti Tax Action**").[11]

44. As the Trustee acknowledges, the Complaint relies heavily on allegations asserted by Polished in the Fouerti Tax Action, specifically relating to Albert Fouerti's alleged violations of tax laws. (*Compare* Complaint ¶¶ 60-68 *with* Fouerti Tax Action Complaint (Carty Decl. Ex. 9) ¶¶ 12-27).

---

[11]    A true and correct copy of the verified complaint filed in the Fouerti Tax Action is attached to the Carty Decl. as **Exhibit 9**.

**VII.    March 7, 2024 – March 5, 2026:**
       **Polished Files Chapter 7 Petitions; Trustee Files Complaint against**
       **Albert Fouerti, Elie Fouerti, Maria Johnson, and Independent D&Os.**

45.    On March 6, 2024, the Board of Polished and the Boards of Polished's direct and indirect subsidiaries (or, where applicable, the sole members) authorized and directed that Polished and each of its direct and indirect subsidiaries file voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (Case No. 24-10353, ECF No. 1).

46.    On March 7, 2024, Polished and each of its direct and indirect subsidiaries filed petitions for relief under Chapter 7 of the Bankruptcy Code. (*See* Case Nos. 24-10353, 24-10354, 24-10355, 24-10356, 24-10357, 24-10359, 24-10360, and 24-10361).

47.    On March 12, 2024, the Office of the United States Trustee for the District of Delaware filed a notice that George L. Miller had been appointed Chapter 7 trustee for Polished and its Debtor subsidiaries. (Case No. 24-10353, ECF No. 8).

48.    On March 5, 2026, the Trustee filed the Complaint in this action. (ECF No. 1). The Defendants named in the Complaint are Albert Fouerti, Elie Fouerti, Maria Johnson, and the Independent D&Os.

49.    The Trustee asserts a total of eight (8) claims in the Complaint. Of those, the Trustee asserts five (5) claims against only Albert Fouerti and/or Elie Fouerti, to wit, the:

      (i)    First Claim (Common Law Fraud) (Complaint ¶¶ 95-99);

      (ii)    Second Claim (Breach of Fiduciary Duty) (Complaint ¶¶ 100-10);

      (iii)    Sixth Claim (Unjust Enrichment) (Complaint ¶¶ 126-28);

      (iv)    Seventh Claim (Avoidance of Transfers) (Complaint ¶¶ 129-34); and

      (v)    Eighth Claim (Recovery of Transfer) (Complaint ¶¶ 135-38).

50.     Four (4) of the eight (8) claims (i.e., the First, Sixth, Seventh, and Eighth Claims) center primarily on the $180 million that Albert Fouerti allegedly wrongfully procured from Polished through the Merger.

51.     Respecting the Independent D&Os, the Trustee alleges three (3) claims, to wit, the:

  (i)     Third Claim (Breach of Fiduciary Duty) (Complaint ¶¶ 111-15);

  (ii)    Fourth Claim (Aiding and Abetting Breach of Fiduciary Duty) (Complaint ¶¶ 116-20); and

  (iii)   Fifth Claim (Aiding and Abetting Fraud) (Complaint ¶¶ 121-25).

52.     For the reasons set forth herein, all such claims against the Independent D&Os fail as a matter of law and must be dismissed.

## ARGUMENTS

### I.     Legal Standard.

53.     To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *In re Solutions Liquidation LLC*, 608 B.R. 384, 396 (Bankr. D. Del. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

54.     Courts in the Third Circuit follow a three-part analysis. First, the Court must consider the elements of the claim that the plaintiff must sufficiently plead. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

55.     Second, the Court must consider only the well-pleaded facts in the Complaint, while ignoring legal conclusions, threadbare recitals of the elements of a cause of action, and conclusory statements. *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v Twombly*, 550 U.S. 554, 556 (2007)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

15

56.     Third, the Court must analyze the well-pleaded facts to determine whether they are sufficient to show that the plaintiff has established a facially plausible claim for relief. To establish a facially plausible claim, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Premier Int'l Holdings, Inc.*, 443 B.R. 320, 329 (Bankr. D. Del. 2010) (quoting *Iqbal*, 556 U.S. at 678).

57.     The "plausibility" standard requires more than the mere possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Rather, the well-pleaded allegations in the complaint must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211; *see Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

58.     Finally, the "plausibility" analysis "requires the reviewing court to draw on its judicial experience and common sense." *Solutions Liquidation*, 608 B.R. at 396 (quoting *Iqbal*, 556 U.S. at 679).

## II.     The Trustee Has Failed to State a Breach of Fiduciary Duty Claim against the Independent D&Os.

### A.     Any Duty of Care Claim Against the Independent Directors Is Barred by Exculpatory Clauses in the Debtors' Certificates of Incorporation.

59.     As a preliminary matter, Polished's certificate of incorporation contains an exculpation clause shielding the Independent Directors from liability for any alleged breach of the

16

duty of care. *See* Cert. of Inc. of Polished.com Inc. (f/k/a 1847 Goedeker Inc.),[12] Art. VIII ("To the fullest extent permitted by the DGCL, as it exists or may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.").

60.    Although the Complaint does not articulate particularized claims respecting any of Polished's subsidiaries, the Independent D&Os observe that the certificates of incorporation for each corporate subsidiary contains a similar exculpation clause. *See* Cert. of Inc. of Appliances Connection Inc., Art. VIII (same)[13]; Cert. of Inc. of AC Gallery Inc., Art. VIII (same); Cert. of Inc. of Gold Coast Appliances, Inc., § 6 (same) ("No Director of this corporation shall be personally liable to the corporation, or its shareholders for damages for any breach of duty in such capacity, provided that this provision shall not limit the liability of any director if a judgment or other final adjudication, adverse to him, establishes that his act or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or other advantage, to which he was not legally entitled or that his acts violated Section 719 of the New York Business Corporation Law."); Cert. of Inc. of 1 Stop Electronics Center, Inc., § 6 (same); and Cert. of Inc. of Superior Deals Inc., § 6 (same).[14]

---

[12]    A true and correct copy of the Certificate of Incorporation for Polished.com Inc. is attached to the Carty Decl. as **Exhibit 1**.

[13]    The Complaint states that, "[u]pon information and belief," Appliances Connection Inc. and AC Gallery Inc. are New York corporations. (Complaint ¶ 10). This is incorrect. Both entities are Delaware corporations, as established by their respective Certificates of Incorporation, and as stated in the Board authorizations annexed to their respective Chapter 7 petitions. *See In re Appliances Connection Inc.*, Case No. 24-10356, ECF No. 1; *In re AC Gallery Inc.*, Case No. 24-20355, ECF No. 1.

[14]    True and correct copies of the Certificates of Incorporation for Polished.com Inc.'s corporate subsidiaries are attached to the Carty Decl. as **Exhibits 2 – 6**.

61.     Accordingly, to the extent that the Third Claim asserts an alleged breach of the duty of care against the Independent Directors, such claim must be dismissed. *Malpiede v. Townson*, 780 A.2d 1075, 1095-96 (Del. 2001) ("Our jurisprudence since the adoption of the statute has consistently stood for the proposition that a Section 102(b)(7) charter provision bars a claim that is found to state only a due care violation. Because we have assumed that the amended complaint here does state a due care claim, the exculpation afforded by the statute must affirmatively be raised by the defendant directors. The directors have done so in this case, and the Court of Chancery properly applied the Frederick's charter provision to dismiss the plaintiffs' due care claim."); *Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*, 625 B.R. 268, 277 (D. Del. 2020) ("Judge Sontchi applied New York law, which dictates that fiduciary duty claims premised on the breach of the 'duty of care' are unavailable when certificate of incorporation language like the Exculpatory Clause has been adopted by the corporation for the protection of its directors.").

**B.     The Complaint Fails to Satisfy the *Caremark* Test.**

**i.     The Court Should Apply Delaware Law.**

62.     As an initial matter, the Court should apply Delaware law to the fiduciary duty claims asserted against the Independent D&Os.

63.     First, the only fiduciary duty law referenced in the Complaint is Delaware law. (*See* Complaint ¶¶ 101-106).

64.     Second, Polished, where all the Independent D&Os served at various points as directors or officers, was at all relevant times a Delaware corporation. (Complaint ¶ 10). Pursuant to the "internal affairs" doctrine, Delaware law applies to fiduciary duty claims respecting Delaware corporations such as Polished. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (the "internal affairs doctrine" "is a conflict of laws principle which recognizes that only one State

18

should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands."); *Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*, No. 13-12098 (CSS), Adv. Case. No. 15-51069(CSS), 2017 WL 1508606, at *5 (Bankr. D. Del. Apr. 27, 2017) ("As previously discussed, Delaware courts apply the internal affairs doctrine to claims alleging breach of fiduciary duties. Under the internal affairs doctrine, one state alone has the authority to regulate a corporation's internal affairs, otherwise a corporation could be faced with conflicting demands.").

65.     Third, respecting claims against Defendants Tobin, Anderson, Crosnoe, Milburn, Shor, and Moore, such Defendants were directors/officers only of Polished. (Complaint ¶¶ 12, 16-20). Defendants Roberts, Barry, Shaw, and Schneider were also directors/officers of Polished. (Complaint ¶¶ 14, 15, 21, 22). And, although the latter individuals also served at certain times as directors/officers of certain of Polished's subsidiaries, there are no individualized allegations against such Defendants in their capacities as such or pertaining to any specific Polished subsidiary.

66.     Fourth, the Court is not required to conduct a conflict of law analysis unless there is an "actual conflict" between laws and, here, no such conflict exists. Indeed, given the uniquely robust nature of Delaware fiduciary duty jurisprudence, many other jurisdictions often rely on Delaware law when analyzing fiduciary duty claims. *See, e.g.*, *Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*, 2017 WL 1508606, at *7 (Bankr. D. Del. Apr. 27, 2017) ("Where New York law is not as robust as Delaware law regarding matters of fiduciary duties, New York courts have looked to Delaware law for guidance."); *Fox v. Koplik (In*

*re Perry H. Koplik & Sons, Inc.)*, 476 B.R. 746, 795 (S.D.N.Y. 2012) (relying on Delaware jurisprudence in New York law fiduciary duty case) (Gerber, J.); *Kittay v. Flutie New York Corp. (In re Flutie New York Corp.),* 310 B.R. 31 (Bankr. S.D.N.Y. 2004) (Lifland, C.J.) (same); *see also Gottlieb ex rel. Johnson & Johnson v. Beckerle*, 2024 WL 678007, \*7 (N.J. Super. App. Div. Feb. 20, 2024) ("Our courts look to Delaware law for guidance in assessing director liability in shareholder derivative suits alleging wrongdoing on the part of the board of directors.") (citing *Cain v. Merck & Co.*, 415 N.J. Super. 319, 332 (App. Div. 2010) (citing *Lawson Mardon Wheaton, Inc. v. Smith*, 160 N.J. 383, 398 (1999))).

### ii.    The Complaint Fails under *Caremark* and Its Progeny.

67.    The Complaint alleges in conclusory fashion that the Independent D&Os "knowingly facilitated and/or failed to prevent Polished" from engaging in allegedly wrongful business practices. The Complaint, however, is bereft of a single allegation supporting an inference that any of the Independent D&Os "knowingly facilitated" any wrongdoing of any kind.

68.    Rather, the Trustee alleges, in substance, that the Independent D&Os failed to prevent Albert Fouerti's wrongdoing. Specifically, the Trustee alleges (in conclusory fashion), that the Independent D&Os: (i) "failed to take action to stop" Albert Fouerti's allegedly "fraudulent business practices" (Complaint ¶ 37); (ii) "failed to implement appropriate inventory management practices, and failed to prevent materially false statements from being made in public filings" (Complaint ¶ 56); (iii) "failed to have sufficient controls or procedures in place to prevent" allegedly improper practices (Complaint ¶ 59); (iv) "failed to have sufficient controls or procedures in place to prevent Albert Fouerti from causing the Company to flout tax laws" (Complaint ¶¶ 60, 62); and (v) "failed to prevent Polished from issuing false financial statements, defrauding customers and vendors, and violating labor, immigration, and tax laws" (Complaint ¶ 114).

20

69.     The Trustee offers no substantive facts to support these allegations against the Independent D&Os, only empty "labels" and "conclusions." *See Bridgeport Holdings, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 560, 573-76 (Bankr. D. Del. 2008) (dismissing breach of fiduciary duty of care claims under *Twombly*).

70.     But even taking such allegations at face value, the Trustee alleges, at most, an unsupported theory of a failure of oversight/neglect by the Independent D&Os—a quintessential *Caremark* claim. *See In re Caremark International Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996); *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (adopting reasoning of *Caremark* as it relates to director liability); *In re McDonald's Corp. Stockholder Derivative Litig.*, 289 A.3d 343 (Del. Ch. 2023) (extending *Caremark* test to breach of fiduciary duty claims against officers).

71.     A *Caremark* claim is "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017) (quoting *Caremark*, 698 A.2d at 967).

72.     To survive a motion to dismiss such a claim, a plaintiff must plausibly allege one of two "necessary conditions":

> (i)     "the directors [or officers] utterly failed to implement any reporting or information system or controls"; or
>
> (ii)    "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."

*Stone*, 911 A.2d at 370; *In re Midway Games Inc.*, 428 B.R. 303, 317 (Bankr. D. Del. 2010) (same); *In re Direct Response Media, Inc.*, 466 B.R. 626, 651 (Bankr D. Del. 2012) (same).

73.     Both standards require the Trustee to plead sufficient facts establishing that the Independent D&Os "consciously disregarded" their duties. *Stone*, 911 A.2d at 370 (breach of

fiduciary duty claim requires "fail[ure] to act in the face of a known duty to act, thereby demonstrating a conscious disregard for [one's] responsibilities....").

74. The Trustee has not—and cannot—meet this exceptionally high burden as it relates to the Independent D&Os. The Complaint, instead, makes clear that, faced with significant challenges, the Independent D&Os responded entirely in accordance with their fiduciary obligations, including:

(i) ordering a comprehensive, independent investigation, *In re Ultimate Escapes Holdings, LLC*, No. 10-12915 (BLS), Adv. No. 12-50849 (BLS), 2015 WL 1590132, at *14 (Bankr. D. Del. Feb. 5, 2015) (internal quotation marks omitted), *adopted*, 551 B.R. 749 (D. Del. 2016), *aff'd*, 682 F. App'x 125 (3d Cir. 2017) ("So long as a director or officer performed a reasonable investigation and acted in good faith, honest mistakes will not be penalized."); and

(ii) taking appropriate remedial action (including to correct prior inaccurate financial statements). *In re BJ's Wholesale Club, Inc. S'holders Litig.*, No. 6623, 2013 WL 396202, *13 (Del. Ch. Jan. 31, 2013) (initial inaccuracies in proxy statement did not support "bad faith" finding where subsequent corrections made).

75. Specifically, Polished, at the direction of the Independent D&Os:

(i) adequately and promptly investigated allegations of improper business practices perpetrated by Albert Fouerti (and others), including, notably, through the independent and comprehensive Audit Committee Investigation (Complaint ¶¶ 72-78, 82-88);

(ii) retained independent counsel and advisors to assist the Audit Committee in conducting the Audit Committee Investigation (Complaint ¶ 72);

(iii) immediately separated from Albert Fouerti, Elie Fouerti, and Maria Johnson as the Audit Committee Investigation matured (indeed, two months before initial findings were even released) (Complaint ¶ 74);

(iv) immediately retained a new executive team to replace Albert Fouerti, Elie Fouerti, and Maria Johnson, and to serve as Polished's new CEO and CFO going forward (Complaint ¶ 74);

(v) caused Albert Fouerti to agree to repay the company $3.7 million for improper business expenses and investigation costs (Complaint ¶¶ 79-81);

22

(vi)    publicly provided updates on the status of the Audit Committee Investigation (Complaint ¶ 75);

(vii)   publicly disclosed the results of the Audit Committee Investigation and announced enhanced controls that Polished enacted to address the Audit Committee's findings (Complaint ¶¶ 77-78);

(viii)  promptly retained a replacement external audit firm and thereafter filed remedial and comprehensive financial information, including securities filings, in full transparency with shareholders and the public (Complaint ¶¶ 45, 82-88);

(ix)    publicly disclosed weaknesses in Polished's internal controls (after discussing the same with the external audit firm retained by Polished) and took actions to address the same (Complaint ¶¶ 45, 54, 72-88); and

(x)     commenced litigation against Albert Fouerti related to his alleged improper actions respecting the collection of sales and use taxes (and related issues). (Complaint ¶¶ 63-68).

76.    Such actions are the precise opposite of the "cavalier attitude to facts" that could potentially support a breach of duty claim. *See In re Essar Steel Minn. LLC*, No. 16-11626 (BLS), Adv. Proc. No. 17-50001, 2019 WL 2246712, at *9 (Bankr. D. Del. May 23, 2019).

77.    Moreover, they conclusively rebut the essential predicates for a *Caremark* claim. Polished plainly had functioning internal reporting and control systems in place that were monitored and overseen, hence the disclosures in the company's SEC submissions, the impetus for the Audit Committee Investigation, and the actions that Polished took in response. *See Corporate Risk Holdings LLC v. Rowlands*, No. 17-cv-5225(RJS), 2018 WL 9517195, at *5 (S.D.N.Y. Sept. 28, 2018) ("*Caremark* requires only that a reporting system exist, not even that it be 'reasonable.'") (*quoting Central Laborers' Pension Fund v. Dimon*, 638 F. App'x 34, 37-38 (2d Cir. 2016)).

78.    The Trustee's *post hoc* critique distilled to its core offers an opaque suggestion that the Independent D&Os perhaps could have done more or acted sooner. Yet, the law does not demand or require perfection in the exercise of fiduciary duties—it requires a "good faith effort."

23

Here, the Independent D&Os' multi-faceted response to Mr. Fouerti's alleged misconduct, as detailed above, conclusively defeats the Trustee's fiduciary duty claim against the Independent D&Os. *See Kravitz v. Tavlarios*, No. 19 Civ. 8438 (NRB), 2020 WL 3871340, at *9 (S.D.N.Y. July 8, 2020) (dismissing Caremark claims and stating that such claims typically fail because plaintiffs "must concede the existence of board-level systems of monitoring and oversight such as a relevant committee, a regular protocol requiring board-level reports about the relevant risks, or the board's use of third-party monitors, auditors, or consultants."); *In re Old BPSUSH, Inc.*, Case No. 16-12373 (BLS), Adv. Pro. No. 19-50726 (BLS), 2020 WL 6818435, at *9-11(Bankr. D. Del. June 30, 2020) (Shannon, J.) (dismissing fiduciary duty claims against directors and officers where audit committee investigation was conducted and no allegations that directors or officers were recklessly uninformed or acted outside bounds of reason); *RCS Creditor Tr. v. Schorsch*, No. 2017-0178-SG, 2018 WL 1640169, at *4 (Del. Ch. Apr. 5, 2018) (finding allegations that defendants "should have been firing people" insufficient to state claim); *Zucker v. Hassell*, No. 11625-VCG, 2016 WL 7011351, at *8 (Del. Ch. Nov. 30, 2016) (crediting directors' decision to rely on an ultimately unsuccessful investigation).[15]

### C.     The Complaint Lacks Self-Dealing or Bad Faith Allegations.

79.     The duty of loyalty requires that "the best interest of the corporation and its shareholders take precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Miller v. American Capital Ltd. (In re*

---

[15]     The Independent D&Os observe further that, respecting the Independent Officers (*i.e.*, Mr. Moore, as former CEO, and Mr. Barry, as former Chief Accounting Officer), there are no allegations that either purposefully withheld any material information from the Board. *See In re Access Cardiosystems, Inc.*, 404 B.R. 593, 690 (Bankr. D. Mass. 2009) ("Plaintiffs have presented no evidence that Fincke withheld any material information in that regard."). Further, respecting Mr. Moore, most of the alleged wrongdoing by Mr. Fouerti occurred after Mr. Moore resigned as CEO.

24

*NewStarcom Holdings, Inc.)*, 547 B.R. 106, 118 (Bankr. D. Del. 2016) (citation omitted), *aff'd*, 608 B.R. 614 (D. Del. 2019), *aff'd*, 816 F. App'x 675 (3d Cir. 2020).

80.     To adequately state a duty of loyalty claim, a plaintiff "must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the [plaintiff]." *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc., v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 540 (Bankr. D. Del. 2009).

81.     Here, the Complaint does not contain a single allegation supporting the inference that the Independent D&Os were self-interested or lacked independence. *See In re Our Alchemy, LLC*, No. 16-11596 (KG), 2019 WL 4447541, at *15 (Bankr. D. Del. Sept. 16, 2019) (dismissing loyalty and good faith claims where "the Trustee does not allege that any of the [board] was self-interested, was on both sides of any transaction, or received any benefit out of the transaction"); *see also In re Essar Steel Minn. LLC*, No. 16-11626 (BLS), 2019 WL 2246712, at *7 (Bankr. D. Del. May 23, 2019) (Shannon, J.) (dismissing duty of loyalty claims where there was no "direct[] link" between the transaction at issue and defendants' compensation). Nor are there allegations that any of the Independent D&Os "obtained a financial profit or other advantage as a result of their alleged acts or omissions." *In re LMI Legacy Holdings, Inc.*, 625 B.R. at 282.[16]

82.     Absent self-dealing (which plainly does not exist), a plaintiff must allege an "intentional[] fail[ure] to act in the fac[e] of a known duty to act, demonstrating a conscious disregard for [one's] duties." *Solutions Liquidation LLC*, 608 B.R. at 401; *In re Direct Response*

---

[16]     The Complaint alleges that Albert Fouerti personally profited at the Debtors' expense, and suggests that "possibly other Defendants" did as well. (Complaint ¶ 30). However, there is not a single allegation (well-pleaded or otherwise) supporting the inference that any of the Independent D&Os profited in any way at the Debtors' expense or derived any personal benefit from their alleged conduct. This glaring omission clarifies that the Trustee knows how to plead self-dealing and affirmatively did not plead it against the Independent Directors.

*Media, Inc.*, 466 B.R. at 652 (same); *In re Opus E., LLC*, 528 B.R. 30, 67 (Bankr. D. Del. 2015) (same).

83.    This requires "[a]n extreme set of facts … premised on the notion that disinterested directors were intentionally disregarding their duties." *Jaroslawicz v. M&T Bank Corp.*, No. CV-15-987-RGA, 2017 WL 1197716, at *7-8 (D. Del. Mar. 30, 2017). A plaintiff must allege facts that show "the fiduciary's actions were so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *DiRienzo v. Lichtenstein*, No. 7094-VCP, 2013 WL 5503034 (Del. Ch. Sept. 30, 2013) at *30.

84.    As set forth above, the Complaint establishes precisely the opposite and, consequently, fails to support a plausible duty of loyalty claim.[17]

**D.    The Complaint Lacks Gross Negligence Allegations.**

85.    Although the Complaint asserts, at its core, *Caremark* (i.e., duty of loyalty) claims against the Independent D&Os, the Independent D&Os address the duty of care standard for the sake of completeness. *See Kravitz*, 2020 WL 3871340, at *7 ("Critically, a violation of Caremark's duty to monitor breaches only the duty of loyalty, not the duty of care.") (*citing Stone*, 911 A.2d at 370).

86.    The duty of care "requires that directors of a Delaware corporation both: (1) 'use that amount of care which ordinarily careful and prudent [persons] would use in similar circumstances;' and (2) 'consider all material information reasonably available.'" *In re Bridgeport Holdings, Inc.*, 388 B.R. at 568 (quoting *In re The Walt Disney Company Derivative Litig.*, 907

---

[17]    Moreover, where, as here, a complaint fails to allege "gross negligence" (discussed in the following section), it cannot satisfy the far more difficult task of stating a non-exculpable duty of loyalty claim. *In re Lear Corp. Shareholder Litig.*, 967 A.2d 640, 641 (Del. Ch. 2008); *In re Fedders*, *N. Am., Inc.,* 405 B.R. 527, 540 (Bankr. D. Del. 2009) ("The behavior that must be shown to prove a violation of the duty to act in good faith 'requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (*i.e.*, gross negligence).'") (quoting *Stone*, 911 A.2d at 369).

A.2d 693, 749 (Del. Ch. 2005). The fiduciary duties of officers of a Delaware corporation are the same as directors. *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009).

87.    Directors and officers of a company are not expected to be infallible. Applicable jurisprudence recognizes that everyone can make mistakes. Thus, duty of care violations arise only if the director/officer is "grossly negligent." *Walt Disney Company Derivative Litig.*, 907 A.2d at 749 ("[D]eficiencies ... are actionable only if the directors' actions are grossly negligent.").

88.    "Gross negligence" requires a "higher level of negligence representing an extreme departure from the ordinary standard of care." *Solutions Liquidation*, 608 B.R. at 398 (quoting *A&J Capital, Inc. v. Law Office of Krug,* No. CV 2018-0240-JRS, 2019 WL 367176 at *12 (Del. Ch. Jan. 29, 2019), *judgment entered sub nom Capital, Inc. Law Office of Krug*, 2019 WL 499352 (Del. Ch. Feb. 8, 2019) *aff'd* 222 A.3d 143 (Del. Nov. 1, 2019)).

89.    "To establish gross negligence, 'a plaintiff must plead ... that the defendant was 'recklessly uniformed' or acted 'outside the bounds of reason.'" *Solutions Liquidation*, 608 B.R. at 398

90.    This exceedingly high standard reflects Delaware courts' policy against second-guessing a fiduciary's decisions, "unless [those decisions] cannot be attributed to any rational purpose." *Ultimate Escapes Holdings*, 2015 WL 1590132, at *8 (internal quotation marks omitted).

91.    There is nothing in the Complaint that comes remotely close to alleging "gross negligence" on the part of the Independent D&Os. Again, the Complaint establishes the exact opposite. Under the Independent D&O's good faith leadership, Polished was aware of and transparent about deficiencies in its internal controls and publicly disclosed the same (Complaint ¶¶ 45, 54, 72-88); conducted a comprehensive independent investigation into concerns raised

27

respecting the company's business practices, supported by independent counsel and independent auditors (Complaint ¶¶ 72-78, 82-88); completed that investigation as quickly as practicable and publicly disclosed the results (Complaint ¶¶ 75, 77-78); and took appropriate actions in response to the findings of that investigation, including promptly separating from Albert Fouerti (and others), and concurrently hiring replacement senior executives (Complaint ¶¶ 45, 74, 79-81, 83-88). *See In re Old BPSUSH, Inc*. 2020 WL 6818435, at *9 (dismissing fiduciary duty claims against directors because, among other things, no allegations supporting reasonable inference that directors "abdicated their responsibilities, acted in an uninformed manner, or acted against the Company's interests"; dismissing fiduciary duty claims against officers because, among other things, no allegations supporting reasonable inference that officers were "recklessly uninformed" or acted "outside the bounds of reason."); *Ultimate Escapes Holdings*, 2015 WL 1590132, at *14 ("So long as a director or officer performed a reasonable investigation and acted in good faith, honest mistakes will not be penalized.").

### E.    The Trustee Fails to Rebut the Business Judgment Rule Presumption.

92.    As discussed above, the Complaint asserts, in substance, a *Caremark* claim against the Independent D&Os. The Trustee does not allege wrongdoing by the Independent D&Os with respect to any decision they made or action they affirmatively took. Nevertheless, for the sake of completeness, all such decisions and actions of the Independent D&Os would be subject to business judgment deference.

93.    Delaware law presumes that, "in making a business decision the directors of a corporation [have] acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27, 52 (Del. 2006) (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)); *Ultimate Escapes Holdings*, 2015 WL 1590132, at *8 ("It is not only a rule, but a presumption that

28

the directors of a corporation acted 'independently, with due care, in good faith, and in the honest belief that their actions were in the stockholders' best interests.'") (quoting *Williams v. Geier*, 671 A.2d 1368, 1376 (Del. 1996)), *adopted*, 551 B.R. 749 (D. Del. 2016), *aff'd*, 682 F. App'x 125 (3d Cir. 2017); *Solutions Liquidation*, 608 B.R. at 402 ("'[I]n making a business decision[,] the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'").

94. To survive a motion to dismiss, the plaintiff has the burden of "plead[ing] around the business judgment rule." *Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 118 (Bankr. D. Del. 2008); *see Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 272 (Bankr. D. Del. 2018) ("[T]he burden is on the plaintiff to show that the Business Judgment Rule is not applicable.").

95. To plead around the business judgment rule, the plaintiff "must point to 'sufficient facts to support a reasonable inference' ... [of] a breach of [defendants'] duty of loyalty or duty of care." *Ultimate Escapes Holdings*, 2015 WL 1590132, at *9.

96. Notably, mere hindsight criticisms and second-guessing do not suffice. *Brehm v. Eisner*, 746 A.2d 244, 261 (Del. 2000) (unpublished opinion) ("What [an expert] now believes in hindsight that he and the Board should have done in 1995 does not provide [the] rebuttal" to the business judgment rule.); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 131 (Del. Ch. 2009) ("[P]laintiffs are inviting the Court to engage in the exact kind of judicial second guessing that is proscribed by the business judgment rule.").

97. As set forth above, the Complaint not only fails to rebut the business judgment presumption, it, instead, "paints a picture that is incongruent with a ... breach" of any fiduciary

duty. *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 495 (Del. Ch. 2000). When faced with allegations of wrongdoing by Albert Fouerti and others, the Board responded appropriately, acted decisively and in good faith, including by ordering a comprehensive investigation into the allegations and promptly replacing Albert Fouerti and other members of the management team. The Board then disclosed the results of the investigation and took appropriate remedial action that included publicly and comprehensively correcting inaccurate financial statements.

**F.      The Complaint Fails to Plead Proximate Cause.**

98.      Independent of the foregoing, the Third Claim must be dismissed for failure to adequately plead proximate cause for Polished's alleged harms. "To establish a *prima facie* case with respect to [breach of fiduciary duty], plaintiffs must demonstrate the existence of ... a causal connection between the defendant's conduct and the plaintiffs' injury." *Preston v. Preston*, No. 6049, 1981 WL 15086, at *2 (Del. Ch. Apr. 16, 1981). "Under Delaware law, a proximate cause is one 'which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.'" *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 864 (Del. 2015), *abrogated on other grounds by Columbia Pipeline*, 342 A.3d 324 (Del. 2025).

99.      The Complaint fails to allege that any conduct on the part of the Independent D&Os resulted in any harm to Polished. Rather, the Complaint squarely lays the blame on Albert Fouerti. But the Trustee cannot have it both ways. The Trustee cannot allege that the harm that befell Polished was caused by Albert Fouerti's misconduct, while credibly maintaining that precisely the same harm was the "natural" result of "continuous" and "unbroken" conduct by the Independent D&Os—that the Trustee alleges was separate from Fouerti's conduct. The Independent D&Os responded to the harm, they did not cause the harm.

**III.   The Trustee Has Failed to State an Aiding and
Abetting Breach of Fiduciary Duty Claim against the Independent D&Os.**

**A.   The Aiding and Abetting Claim Fails as a Matter of Law.**

100.   As an initial matter, "aiding and abetting a breach of fiduciary duty" is a claim that may be asserted only against third parties; co-fiduciaries cannot, as a matter of law, "aid and abet" each other's alleged breaches of fiduciary duty. *Borsody v. Gibson*, No. 2023-1205-BWD, 2025 WL 1650395, at *9 (Del. Ch. June 11, 2025) ("Even if Savoir and Gibson allegedly participated in the underlying conduct once they joined the Board, they could not aid and abet breaches committed by their co-fiduciaries."); *Cornell Glasgow, LLC v. La Grange Props., LLC*, No. N11C-05-016 JRS CCLD, 2012 WL 2106945, at *11 (Del. Super. Ct. June 6, 2012) (citing *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984) ("[O]fficers and agents cannot aid and abet … each other in the commission of a tort."); *Allied CapitalCorp. v. GC Sun Holdings, L.P.*, 910 A.2d 1020, 1038 n.41 (Del. Ch. 2006). This alone requires dismissal of the Fourth Claim.

101.   Any alleged claim against a co-fiduciary would be (and should be asserted as) a direct breach of fiduciary duty claim, which in this instance, as set forth above, fails as a matter of law. Indeed, the alleged factual predicates for the Third and Fourth Claims are substantively identical. (*Compare* Complaint ¶ 114 *with* Complaint ¶ 118). The Trustee's Third Claim fails and, consequently, the Fourth Claim must likewise be dismissed.

102.   Put differently, the Trustee's direct breach of fiduciary duty claim against the Independent D&Os fails as a matter of law and cannot be resurrected as an impermissible, duplicative, indirect "aiding and abetting" claim. *See generally Swipe Acquisition Corp. v. Krauss*, No. 2019-0509-PAF, 2020 WL 5015863, at *8 (Del. Ch. Aug. 25, 2020) ("Whether to dismiss a claim as duplicative is within the discretion of the Court); *see also Morbieu v. Keayes*, 2023 N.Y. Slip Op. 50200(U), 2023 WL 2544901, at *5 (N.Y. Sup. Ct. Mar. 15, 2023) (applying New York

law, "[t]his court … concludes that [defendants] are duly elected board members who owe shareholders and the co-op a fiduciary duty. Given the court's conclusions on these points, plaintiff's fourth cause of action [i.e., aiding and abetting breach of fiduciary duty] duplicates his third claim [i.e., breach of fiduciary duty]. The fourth cause of action is dismissed on that basis.").

**B.    The Complaint Lacks Knowing Participation Allegations.**

103.    Under Delaware law, an aiding and abetting breach of fiduciary duty claim requires: "'(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, ... (3) knowing participation in that breach by the defendants', and (4) damages proximately caused by the breach." *Malpiede*, 780 A.2d at 1096; *In re Mindbody, Inc., Stockholder Litig.*, 332 A.3d 349, 389 (Del. 2024) ("The basic four-part test for proving an aiding and abetting claim is well-settled under Delaware law and was articulated by this Court in *Malpiede*.").

104.    The Complaint fails to plead "knowing participation" for three independent reasons. First, "knowing participation" requires that the aider and abettor possess actual knowledge (i.e., "clear and direct knowledge") of the primary defendant's breach of fiduciary duty. *In re Columbia Pipeline Grp., Inc. Merger Litig.*, 342 A.3d 324, 368 (Del. 2025) (aider and abettor must have "clear and direct knowledge"); *Malpiede*, 780 A.2d at 1097 ("Knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach"); *Mindbody*, 332 A.3d at 390-91 ("Since *Malpiede*, this rule requiring that an aider and abettor know that the *primary party's* conduct constitutes a breach has been restated in many cases.").

105.    This is a "stringent" standard that requires scienter on the part of the alleged aider and abettor. *See Columbia Pipeline*, 342 A.3d at 354; *Binks v. DSL.Net, Inc.*, No. 2823-VCN, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010). Constructive knowledge, as a matter of law, does

32

not suffice. *In re Sharp Int'l. Corp.*, 281 B.R. 506, 514 (Bankr. E.D.N.Y. 2002) (citations omitted) ("Constructive knowledge is legally insufficient to impose aiding and abetting liability.").

106.    Here, the Complaint entirely lacks any allegations that the Independent D&Os had actual knowledge of Albert Fouerti's alleged breaches of fiduciary duty at the time that they occurred. Rather, the Trustee either makes conclusory statements (e.g., that the Independent D&Os "were aware" of allegedly "fraudulent business and accounting practices," Complaint ¶ 37), or alleges precisely the type of constructive knowledge that, as a matter of law, cannot establish aiding and abetting liability (e.g., "[b]y virtue of their positions as officers and directors of Polished," Complaint ¶ 56; "common knowledge … given their role as officers and directors," Complaint ¶ 69).

107.    Second, "knowing participation" requires that the "aider and abettor had actual or constructive knowledge that their conduct was legally improper." *In re Columbia Pipeline Grp., Inc. Merger Litig.*, 342 A.3d at 356. Here, there are no allegations that the Independent D&Os engaged in *any* conduct in furtherance of Albert Fouerti's alleged breaches, let alone that they engaged in *wrongful* conduct *and knew* that their own conduct was wrongful. *Mindbody*, 332 A.3d at 391 ("This requirement that the aider and abettor must know that *its own* conduct regarding the breach was legally improper is distinct from knowledge that the primary party's conduct was a breach. In other words, it is the aider and abettor that must act with *scienter*.") (emphasis in original) (internal citations and quotations omitted).[18]

---

[18]    The Trustee alleges that Polished's quarterly report for Q2 was certified by Defendant Moore (and Mr. Johnson) and that such certification was "knowingly false." The allegation that Mr. Moore's certification was "knowingly false" is conclusory and unsupported by any well-pleaded facts. Further, as the EDNY Court observed in dismissing the Putative Securities Class Action, a SOX certification is a statement of opinion, not fact. (Dismissal Opinion, at 22 (citing *New England Carpenters Guaranteed Annuity and Pension Funds v. Decarlo,* 122 F.4th 28, 47 (2d Cir. 2024)). There, as here, no facts have been alleged that, if proven, would establish that Mr. Moore disbelieved this statement when made, provided false facts, or knowingly omitted information making the statement misleading. (Dismissal Opinion, at 22).

108. Third, "knowing participation" requires that the aider and abettor provide "substantial assistance" to the primary breacher. *Mindbody*, 332 A.3d at 392; *In re Oracle Corp. Derivative Litig.*, C.A. No. 2017-0337-SG, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020) ("[T]he element of 'knowing participation' requires that the secondary actor have provided 'substantial assistance' to the primary violator."); *In re Dole Food Co. Stockholder Litig.*, No. 8703-VCL, No. 9079-VCL, 2015 WL 5052214, at *41 (Del. Ch. Aug. 27, 2015) ("Because the involvement of secondary actors in tortious conduct can take a variety of forms that can differ vastly in their magnitude, effect, and consequential culpability, the element of 'knowing participation' requires that the secondary actor have provided 'substantial assistance' to the primary violator.") (quoting *Kuhns v. Bruce A. Hiler Del. QPRT*, No. 7586-VCG, 2014 WL 1292860, at *21 (Del. Ch. Mar. 31, 2014)).

109. A "substantial assistance" analysis focuses on "the amount, kind, and duration of assistance given, including how directly involved the secondary actor was in the primary actor's conduct." *Borsody*, 2025 WL 1650395, at *9 (citing *In re Dole Food Co. Stockholder Litig.*, 2015 WL 5052214, at *42). It can be "understood as requiring active participation rather than 'passive awareness.'" *Mindbody*, 332 A.3d at 393 (quoting *Buttonwood Tree Value Partners, L.P. v. R. L. Polk & Co., Inc.*, No. 9250-VCG, 2017 WL 3172722, at *10 (Del. Ch. July 24, 2017)). "The secondary actor's state of mind" is also a key factor. *In re Columbia Pipeline Grp., Inc. Merger Litig.*, 342 A.3d at 358 (citing *Mindbody*, 332 A.3d at 395–96).

110. The Complaint contains no allegations supporting an inference of "substantial assistance" by the Independent D&Os. The Complaint contains conclusory allegations that the Independent D&Os "provid[ed] financial cover and credibility in connection with Polished's business even though it was issuing false financial statements," but contains no allegation that the

34

Independent D&Os "knowingly *facilitated* alleged disclosure deficiencies or otherwise 'knowingly participated' in that aspect of the alleged breach of fiduciary [duty]." *In re Xura, Inc. Stockholder Litig.*, C.A. No. 12698-VCS, 2018 WL 6498677, at *15 (Del. Ch. Dec. 10, 2018).

111.   To the contrary, the Complaint establishes clearly that the affirmative steps the Independent D&Os did take were reasonably prudent responses to prior disclosure deficiencies, as such deficiencies were discovered. *See, e.g.*, *In re Oracle Corp. Derivative Litig.*, 2020 WL 3410745, at *15 (finding that defendants could not have provided "substantial assistance" by failing to disclose certain information in public securities filings because subsequent public securities filings contained the relevant information).

112.   Moreover, the Complaint does not allege any level of actual participation—let alone *active* participation—by any of the Independent D&Os in any of Albert Fouerti's alleged improper business practices. *See Mindbody*, 332 A.3d at 393 (quoting *Buttonwood Tree Value Partners, L.P.*, 2017 WL 3172722, at *10 ("substantial assistance" requirement "can also be understood as requiring active participation rather than 'passive awareness'")). As alleged, once the Independent D&Os became aware of such practices (e.g., related to improper expenses, inventory management, and employment issues), they took swift action, ordering a comprehensive, independent investigation; replacing Mr. Fouerti as CEO; causing Mr. Fouerti to agree to repay $3.7 million to Polished as compensation; issuing corrected financial statements; and ultimately initiating litigation against Mr. Fouerti.

### C.   The Trustee Fails to Plead Proximate Cause.

113.   As with the direct breach of fiduciary duty claim, the Trustee fails to plead "proximate causation." In the context of an "aiding and abetting" claim, the "proximate cause" element requires a plaintiff to sufficiently plead that the aider and abettor's conduct "proximately caused" the underlying breach. *See In re Nine West LBO Securities Litig.*, 505 F. Supp. 3d 292,

35

317 (S.D.N.Y. 2020) (applying Delaware law and stating: "For similar reasons, the Court finds that the complaints fail to allege that the officer defendants 'proximately caused' Kaluzny's and Morrow's fiduciary breaches. Simply put, there are no allegations, and no plausible inferences, that the officer defendants could have done anything to prevent the 2014 Transaction from occurring or that their actions were a 'substantial factor' in causing the breach.").

114.    Here, again, there are no well-pleaded facts supporting the inference that the Independent D&Os participated in—let alone caused—any alleged fiduciary breaches by Albert Fouerti, or could have taken actions to prevent such alleged breaches.

## IV.    The Trustee Has Failed to State an Aiding and Abetting Fraud Claim against the Independent D&Os.

### A.    The Claim Is Barred by the Intra-Corporate Conspiracy Doctrine.

115.    The Trustee's Fifth Claim is barred as against the Independent D&Os by the intra-corporate conspiracy doctrine. Pursuant to this doctrine:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. Accordingly, it is entirely sensible that, as a general rule, agents of a corporation cannot conspire with one another or aid and abet each other's torts.

*Anschutz Corp. v. Brown Robin Capital, LLC*, C.A. No. 2019-0710-JRS, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020) (internal quotation marks and citations omitted).

116.    There is a narrow exception to the intra-corporate conspiracy doctrine, to wit, when corporate officers step out of their corporate role and act pursuant to a personal motive. *Id*. ("The only instance where this general rule will not apply is when a corporate officer steps out of her corporate role and acts pursuant to personal motives.").

117.    To allege that the Independent D&O's "stepped out of their roles," the Trustee would have to allege that they sought to gain a personal benefit independent from their roles with Polished. *Anschutz Corp.*, 2020 WL 3096744, at *18 ("A corporate officer does not step out of his corporate role unless he 'seeks to gain a benefit independent of their financial interest resulting from their employment by or investment in [their employer].'") (quoting *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, No. Civ. A. 19890-NC, 2005 WL 578972, at *8 (Del. Ch. Mar. 3, 2005); *RGIS Int'l Transition Holdco v. Retail Services Wis Corp.*, C.A. No. N21C-12-077 PRW CCLD, 2024 WL 568515, at *5–6 (Del. Super. Ct. Feb. 13, 2024) (exception to intra-corporate conspiracy doctrine requires personal motivation).

118.    The Complaint is devoid of a single allegation that any of the Independent D&Os acted outside their corporate roles or sought personal gain. Consequently, the Fifth Claim must be dismissed as against the Independent D&Os. *Urvan v. Ammo, Inc.*, C.A. No. 2023-0470 PRW, 2024 WL 863688, at *17 (Del. Ch. Feb. 27, 2024) (dismissing aiding and abetting fraud claims against individual directors and officers); *RGIS*, 2024 WL 568515, at *6 (dismissing aiding and abetting claims against officers because plaintiff failed to allege facts demonstrating defendants acted outside corporate roles or sought personal benefit); *Anschutz Corp.*, 2020 WL 3096744, at *18 (same).

**B.    The Trustee Fails to Plead the Independent D&O's**
**Knowledge of any Alleged Fraud or Substantial Assistance.**

119.    Similar to a claim for aiding and abetting breach of fiduciary duty, to state a claim for aiding and abetting fraud, a plaintiff must allege: (i) underlying tortious conduct, (ii) knowledge of the tortious conduct, and (iii) substantial assistance by the aider and abettor. *RGIS*, 2024 WL 568515, at *5; *Ogus v. SportTechine, Inc.*, C.A. No. 2018-0869-AGB, 2020 WL 502996, at *7 (Del Ch. Jan. 31, 2020). Notably, where the underlying alleged tort is fraud, the plaintiff must

plead such claims "with a certain degree of particularity." *RGIS*, 2024 WL 568515, at *5; *Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 938 (Del. Super. Ct. 2024) ("When fraud is the underlying unlawful act, both torts fall under Rule 9(b).").

120.    Respecting the "knowledge" requirement, a plaintiff must allege facts demonstrating that the aider and abettor had *actual* knowledge both of (i) the primary offender's fraudulent conduct, and (ii) that the alleged aider and abettor's own conduct was improper. *See EngageSmart, Inc. Stockholder Litig.*, C.A. No. 2023-1093-JTL, 2026 WL 554442, at *35-36 (Del. Ch. Feb. 27, 2026). Constructive knowledge is insufficient. *Id*. Here, the Trustee fails to allege facts demonstrating that the Independent D&Os had actual knowledge of any allegedly fraudulent business practices prior to ordering the Audit Committee Investigation; rather, he offers conclusory statements (*see* Complaint ¶¶ 37, 56, 59, 62, 71, 114, 117-119, 122-124), which fall well short of satisfying the applicable pleading requirements. *Ogus,* 2020 WL 502996, at *7 ("The text of paragraph 133, however, is conclusory. It does not allege any *facts* demonstrating that Bodie or Oak View were aware of any false representations that Bloom and/or Kaufman made to Ogus or of any material omissions arising from their discussions.") (emphasis in original).

121.    The "substantial assistance" factor requires factual allegations demonstrating conduct that "must be of an active nature," not "mere passive awareness." *Witmer v. Armistice Capital, LLC*, 344 A.3d 632, 660 (Del. Ch. 2025) (internal quotations omitted) (quoting *In re Columbia Pipeline Grp., Inc. Merger Litig.*, 342 A.3d at 361; *Mindbody*, 332 A.3d at 389). Here, the Complaint is bereft of any facts showing that the Independent D&Os were even "passively aware" of any wrongdoing at the time it was happening, let alone "actively" assisted such wrongdoing. Instead, the Complaint plainly shows that, upon learning of alleged wrongdoing

within the company, the Independent D&Os took prompt and appropriate action as described herein.

## CONCLUSION

122. For the foregoing reasons, the Independent D&Os respectfully request that the Court grant their Motion to Dismiss in its entirety and dismiss the Complaint as against the Independent D&Os with prejudice and without leave to amend.

[*Remainder of page intentionally left blank.*]

Dated: June 8, 2026
     Wilmington, Delaware

Respectfully submitted,

*/s/ Christopher M. Samis*
**ICE MILLER LLP**
Christopher M. Samis (No. 4909)
R. Stephen McNeill (No. 5210)
Maria Kotsiras (No. 6840)
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
Telephone: (302) 313-0600
Email: christopher.samis@icemiller.com
     stephen.mcneill@icemiller.com
     maria.kotsiras@icemiller.com

– and –

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Andrew M. Carty, Esq.
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile:  (212) 209-4801
Email: rstark@brownrudnick.com
     acarty@brownrudnick.com

– and –

Daniel J. Healy, Esq.
1900 N Street NW, 4th Floor
Washington, D.C. 20036
Telephone: (202) 536-1700
Facsimile:  (202) 536-1701
Email: dhealy@brownrudnick.com

*Counsel to Douglas T. Moore, Ellery W. Roberts, Robert Barry, Ellette A. Anderson, Clark R. Crosnoe, Glyn C. Milburn, Alan P. Shor, Edward J. Tobin, G. Allan Shaw and James Schneider*

40