**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>POLISHED.COM INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-10353 (TMH)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Polished.com Inc., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT FOUERTI, *et al.*,<br><br>Defendants. | Adv. No. 26-50213 (TMH)<br><br>**Re: Adv. Docket Nos. 17, 20, 27, 28** |

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**COREN & RESS, P.C.**
Steven M. Coren, Esq. *(pro hac vice)*
Benjamin M. Mather, Esq. *(pro hac vice)*
Janice D. Felix, Esq. *(pro hac vice)*
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler, Esq. (DE Bar No. 4142)
Peter J. Keane, Esq. (DE Bar No. 5503)
919 N. Market St., 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Tel: (302) 652-4100

Dated: July 31, 2026

*Attorneys for Plaintiff*

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629); Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); Superior Deals Inc. (0096); and YF Logistics LLC (8373).

# TABLE OF CONTENTS


Table of Authorities ..... iii

I. NATURE AND STAGE OF THE PROCEEDING ..... 1

II. INTRODUCTION ..... 2

III. FACTUAL BACKGROUND ..... 4

A. Albert Fouerti Orchestrated the Merger for His Personal Enrichment ..... 5

B. Polished Issued False Financial Statements Both Before and After the Merger ..... 6

C. Appliances Connection's Fraudulent and Illegal Business Practices Continue at Polished Post-Merger ..... 9

D. The Belated Audit Committee Investigation ..... 11

E. Polished's Collapse ..... 12

IV. MOTION TO DISMISS STANDARD ..... 13

V. ARGUMENT ..... 14

A. The Complaint States Claims For Breach of Fiduciary Duty (Counts 2 and 3) Against All Defendants ..... 14

1. The Trustee's Claims Are Not Subject to PSLRA Pleading Standards ..... 15

2. The Complaint Alleges Breaches of Fiduciary Duty By Albert Fouerti ..... 18

3. The Complaint Alleges Breaches of Fiduciary Duty By the D&O Defendants ..... 20

a. Claims Against the Director Defendants ..... 20

b. Claims Against the Officer Defendants ..... 25

4. Exculpatory Clauses In the Debtors' Certificates of Incorporation Do Not Bar the Trustee's Claims Against Directors ..... 28

B. The Complaint States a Claim for Fraud Against the Fouerti Defendants ..... 30

1. The Trustee Has Standing ..... 30

2. The Complaint Pleads the Fouertis' Fraud With Sufficient Particularity ..... 31

C. The Trustee's Aiding And Abetting Claims (Counts 4 and 5) Against the D&O Defendants Are Sufficiently Pled .....33

1. The Complaint Sufficiently Pleads Knowing Participation and Substantial Assistance .....34

2. The Aiding and Abetting Breach of Fiduciary Duty Claim Is Not "Duplicative" or Impermissible at the Pleading Stage .....35

3. The Intra-Corporate Conspiracy Doctrine Is Not a Basis for Dismissal of the Aiding and Abetting Fraud Claim .....36

D. The Complaint States Claims to Recover the $180 Million Transfer From Albert Fouerti .....37

1. The $180 Million Transfer Can Be Avoided and Recovered As A Constructive Fraudulent Transfer (Counts 7 and 8) .....37

a. The Complaint Sufficiently Pleads Insolvency .....38

b. The Complaint Sufficiently Pleads Lack of Reasonably Equivalent Value .....39

c. The Complaint Sufficiently Alleges a Triggering Creditor Under Section 544 .....40

d. Plaintiff's Claim for Recovery of the Avoided Transfers Under § 550 Also States a Claim for Relief .....43

2. The Complaint States a Claim for Unjust Enrichment (Count 6) .....43

E. In the Alternative, If the Court Determines That Dismissal of Any Claims Is Warranted, Leave to Amend Should be Granted .....44

VI. CONCLUSION .....47

# TABLE OF AUTHORITIES

**Cases**

*Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006)........................ 32

*Arneault v. Diamondhead Casino Corp.*, 277 F. Supp. 3d 671 (D. Del. 2017)............................ 44

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 13

*Buckley v. O'Hanlon*, 2007 WL 956947 (D. Del. Mar. 28, 2007)........................................*passim*

*Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911 (Del. Ch. May 11, 2001) .......................... 25

*Clark v. Davenport*, 2019 WL 3230928 (Del. Ch. July 18, 2019)............................................ 33

*Comba Telecom, Inc. v. Andrew, L.L.C.*, 2013 WL 12409853 (D. Del. Mar. 8, 2013)................ 46

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001) .................................... 45

*Del. Display Group LLC v. Lenovo Group Ltd.*, 2016 WL 720977 (D. Del. Feb. 23, 2016)....... 45

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ................................................................ 15

*Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) ........................................................ 44, 46

*Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270 (E.D.N.Y. 2025) ....................... 16

*Eden Alpha CI LLP v. Polished.com Inc.*, No. 22-CV-6606 (NGG) (VMS), 2026 WL 673462 (E.D.N.Y. Mar. 10, 2026)............................................................................ 8, 16

*Emerald Partners v. Berlin*, 726 A.2d 1215 (Del. 1999)............................................................ 29

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980 (Del. Ch. Nov. 26, 2014)............................................................................................. 33

*In re AgFeed USA, LLC*, 2015 WL 9133627 (Bankr. D. Del. Dec. 15, 2015) ............................ 20

*In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747 (Bankr. D. Del. 2007).......................................... 39

*In re Am. Bus. Fin. Servs., Inc.*, 362 B.R. 135 (Bankr. D. Del. 2007).......................................... 13

*In re APF Co.*, 274 B.R. 634 (Bankr. D. Del. 2001) ................................................................ 41

*In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289 (D. Del. 2012)....................... 41, 42

*In re Autobacs Strauss, Inc.*, 473 B.R. 525 (Bankr. D. Del. 2012)............................................... 30

*In re BMT-NW Acquisition, LLC*, 582 B.R. 846 (Bankr. D. Del. 2018)...................................... 38

*In re Bridgeport Holdings, Inc.*, 388 B.R. 548 (Bankr. D. Del. 2008) ........................................ 23

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .................................... 13

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ................................ 21, 23

*In re Charys Holding Co., Inc.*, 443 B.R. 628 (Bankr. D. Del. 2010) .......................................... 39

*In re Clarus Therapeutics Holdings, Inc.*, 2026 WL 97759 (Bankr. D. Del. Jan. 13, 2026)........ 34

*In re Cred Inc.*, 650 B.R. 803 (Bankr. D. Del. 2023) ........ 37

*In re Cred Inc.*, 658 B.R. 783 (D. Del. 2024) ........ 34

*In re DBSI, Inc.*, 477 B.R. 504 (Bankr. D. Del. 2012) ........ 41

*In re Direct Response Media, Inc.*, 466 B.R. 626 (Bankr. D. Del. 2012) ........ 29, 30

*In re DSI Renal Holdings, LLC*, 574 B.R. 446 (Bankr. D. Del. 2017) ........ *passim*

*In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) ........ 30

*In re Endo Int'l PLC*, 2026 WL 1534328 (Bankr. S.D.N.Y. May 29, 2026) ........ 40

*In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017) ........ 38, 44

*In re Firestar Diamond, Inc.*, 634 B.R. 265 (Bankr. S.D.N.Y. 2021) ........ 14

*In re Fruehauf Trailer Corp.*, 250 B.R. 168 (D. Del. 2000) ........ 33

*In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006) ........ 39

*In re Genesis Health Ventures, Inc.*, 355 B.R. 438 (Bankr. D. Del. Dec. 13, 2006) ........ *passim*

*In re Glencoe Acquisition, Inc.*, 2015 WL 3777972 (Bankr. D. Del. June 16, 2015) ........ 38

*In re Green Field Energy Servs., Inc.*, 2015 WL 5146161 (Bankr. D. Del. Aug. 31, 2015) ........ 44

*In re Liquid Holdings Group, Inc.*, Case No. 17-50662-KG, D.I. No. 157 (Bankr. D. Del. Sept. 4, 2018.) ........ 42

*In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301 (Bankr. D. Del. June 6, 2018) ........ 15, 42

*In re Massey Energy Co.*, 2011 WL 2176479 (Del. Ch. May 26, 2011) ........ *passim*

*In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343 (Del. Ch. 2023) ........ 27

*In re Nat'l Realty Inv. Advisors, LLC*, 2025 WL 3779086 (Bankr. D.N.J. Dec. 31, 2025) ........ 13

*In re Near Intel., Inc.*, 2026 WL 1761066 (Bankr. D. Del. June 17, 2026) ........ 32

*In re Nortel Networks, Inc.*, 2011 WL 1102829 (Bankr. D. Del. Mar. 22, 2011) ........ 32

*In re Opus East, LLC*, 480 B.R. 561 (Bankr. D. Del. 2012) ........ 28

*In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1 (Del. Ch. 2014) ........ 14, 23

*In re Our Alchemy, LLC*, 2019 WL 4447541 (Bankr. D. Del. Sept. 16, 2019) ........ 36

*In re Our Alchemy, LLC*, 2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019) ........ 40, 44

*In re PennySaver USA Publ'g, LLC*, 587 B.R. 445 (Bankr. D. Del. 2018) ........ 38

*In re Pitt Penn Holding Co., Inc.*, 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) ........ 41

*In re PMTS Liquidating Corp.*, 490 B.R. 174 (D. Del. 2013) ........ 46

*In re PMTS Liquidating Corp.*, 526 B.R. 536 (D. Del. 2014) ........ 25, 35

*In re Primedia Inc. Derivative Litig.*, 910 A.2d 248 (Del. Ch. 2006) ........ 25

*In re R.M.L., Inc.*, 92 F.3d 139 (3d Cir. 1996) ........ 39

*In re Ritz Camera & Image, LLC*, 2014 WL 432192 (Bankr. D. Del. Feb. 4, 2014) ........ 43

*In re Simplexity, LLC*, 2017 WL 65069 (Bankr. D. Del. Jan. 5, 2017) .......................................... 23

*In re Scott Acquisition Corp.*, 344 B.R. 283 (Bankr. D. Del. 2006) ...................................... 25, 31

*In re Student Fin. Corp.*, 335 B.R. 539 (D. Del. 2005) ................................................................ 14

*In re The Brown Schools*, 368 B.R. 394 (Bankr. D. Del. 2007) ........................................... *passim*

*In re Total Containment, Inc.*, 335 B.R. 589 (Bankr. E.D. Pa. 2005) ................................... 23, 45

*In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir.2005) ...................................................................... 28

*In re Tropicana Ent., LLC*, 520 B.R. 455 (Bankr. D. Del. 2014) ................................................ 14

*In re Tweeter Opco*, 452 B.R. 150 (Bankr. D. Del. 2011) ............................................................ 45

*In re UD Dissolution Corp.*, 629 B.R. 11 (Bankr. D. Del. 2021) .................................................. 17

*In re Vivaro Corp.*, 524 B.R. 536 (Bankr. S.D.N.Y. 2015) ........................................................... 40

*In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150 (Bankr. D. Del. 2019) ................................ 36

*In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275 (Del. Ch. 2003) .............................................. 15

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) ........................................................................................................................ 14

*In re Wash. Mut., Inc.*, 2013 WL 3757330 (Bankr. D. Del. July 16, 2013) ................................ 43

*Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707 (D.N.J. 2013) .............................................. 14

*Kandell on behalf of FXCM, Inc. v. Niv*, 2017 WL 4334149 (Del. Ch. Sept. 29, 2017) ............. 15

*Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000) ................................................................................ 45

*Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*, 342 A.3d 1166 (Del. Ch. 2025), *aff'd*, 2026 WL 1993637 (Del. July 10, 2026) ........................................... 18, 23

*Marchand v. Barnhill*, 212 A.3d 805 (Del. 2019) ................................................................... 21, 22

*Metro Storage Int'l LLC v. Harron*, 275 A.3d 810 (Del. Ch.) ............................................. *passim*

*Namerow v. PediatriCare Assocs., LLC*, 218 A.3d 839 (N.J. Super. 2018) ................................ 19

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) ............................................................................. 43

*New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112 (Del. Ch. 2023) ........................................... 34

*Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013) ............................................. 36

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...................................................... 13

*Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128 (3d Cir. 2010) .................................................... 17

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ....................................................................... 13

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ........................................................................... 14

*Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000) .............................................................................. 46

*Stinner v. Epstein*, 162 A.D.3d 819 (N.Y. App. Div. 2018) ......................................................... 19

*Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362 (Del. 2006) .......................................... 15

*Swipe Acquisition Corp. v. Krauss*, 2020 WL 5015863 (Del. Ch. Aug. 25, 2020) ...................... 33

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190 (2d Cir. 2008)........................................................................................................ 16

*Teamsters Local 456 Pension Fund v. Universal Health Servs.*, 2020 WL 2063474 (E.D. Pa. Apr. 29, 2020) ........................................................................................ 45

*Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436 (Del. 1996) ........................................... 25

*U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016)........................................................................................................ 45

*WIA Holdings LLC v. Scot. Am. Cap. LLC*, 2026 WL 1204494 (Del. Ch. Jan. 20, 2026) ........... 36

*Wong v. Moore et al.*, U.S.D.C. E.D.N.Y., Case No. 23-cv-00559 ................................................ 6

**Statutes & Rules**

11 U.S.C. § 541 ......................................................................................................... 30

11 U.S.C. § 544 ......................................................................................................... 37, 41

11 U.S.C. § 550 ......................................................................................................... 43

15 U.S.C. § 78u-4 ...................................................................................................... 16

6 Del. C. § 1304 ........................................................................................................ 37, 41

6 Del. C. § 1305 ........................................................................................................ 37, 41

8 Del. C. § 102 .......................................................................................................... 29

FED. R. BANKR. P. 7015 ............................................................................................ 44

FED. R. CIV. P. 8 ....................................................................................................... 15, 16

FED. R. CIV. P. 9 ....................................................................................................... *passim*

FED. R. CIV. P. 15 ..................................................................................................... 44

**Other Authorities**

6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.).................................................................. 46

Plaintiff George L. Miller, in his capacity as the Chapter 7 Trustee (the "Trustee") for the jointly administered bankruptcy estates of Polished.com Inc. ("Polished" or the "Company"), 1 Stop Electronics Center, Inc. ("1 Stop"), AC Gallery Inc. ("AC Gallery"), Appliances Connection Inc. ("Appliances Connection"), Gold Coast Appliances, Inc. ("Gold Coast"), Joe's Appliances LLC ("Joe's Appliances"), Superior Deals Inc. ("Superior Deals"), and YF Logistics LLC ("YF Logistics") (collectively, "Debtors"), by and through his counsel, submits this Omnibus Memorandum of Law in opposition to the motions to dismiss (*see* D.I. Nos. 20, 27, 28, collectively, the "Motions") filed by Defendants Albert Fouerti, Elie Fouerti, Maria Johnson, Douglas T. Moore, Ellery W. Roberts, Robert Barry, Ellette A. Anderson, Clark R. Crosnoe, Glyn C. Milburn, Alan P. Shor, Edward J. Tobin, G. Allan Shaw, and James Schneider (collectively, "Defendants").

## I. NATURE AND STAGE OF THE PROCEEDING

Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on March 7, 2024 (the "Petition Date"). On March 5, 2026, the Trustee commenced the instant adversary proceeding by filing the Complaint. *See* D.I. 1 ("Compl."). The Trustee's Complaint asserts claims (i) against Albert Fouerti for breach of fiduciary duty, unjust enrichment, and fraudulent transfer (Counts II, VI-VIII); (ii) against Albert and Elie Fouerti for fraud (Count I); and (iii) against the D&O Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud (Counts III-V).[2] Defendants responded to the Complaint by filing the Motions pursuant to Federal Rule of Civil Procedure 12(b)(6), applicable

---

[2] As used herein, the term "D&O Defendants" refers to all Defendants other than Albert Fouerti. *See also* Compl. at ¶ 112 and n.2.


4923-4444-6147.1 57099.00001

here pursuant to Federal Rule of Bankruptcy Procedure 7012(b).[3] The Trustee objects and responds to the Motions herein.

## II. INTRODUCTION

The Debtors were wholesale and retail sellers of home appliances and other home products, with most sales made via Polished's website. In June 2021, Polished acquired via merger Appliances Connection, another appliances retailer which had been founded by Defendants Albert and Elie Fouerti. Under the Fouertis' leadership, however, Appliances Connection's operations had been riddled with fraudulent and illegal business practices, as well as inventory management issues that led to false numbers recorded on its balance sheet. The Fouertis did not reveal or correct these issues, and instead leveraged them to induce Polished to overpay for Appliances Connection in the Merger, with the bulk of the purchase price going to Albert Fouerti personally. Following the Merger, the Fouertis continued their unlawful business practices at Polished. This resulted in, among other issues, Polished's issuance of false financial statements (which had already been a problem at Polished, pre-Merger). The other D&O Defendants failed to prevent these problems (either via proper internal controls or other actions) despite knowing they were occurring, and unreasonably dragged their feet in investigating or rectifying the problems.

The Trustee's claims are sufficiently stated. Against the Fouertis, the Complaint states claims for fraud and breach of fiduciary, as well as avoidance and recovery of the $180 million payment Albert Fouerti received in connection with the Merger. With respect to the Merger, the Trustee sufficiently pleads that the Fouertis defrauded Polished by proffering false financials and concealing the fraud and illegality rampant in Appliances Connection's business operations. The

[3] *See* D.I. 20 (motion to dismiss filed by Defendant Johnson), D.I. 17, 27 (motion to dismiss filed by Fouertis), D.I. 28 (motion to dismiss filed by other D&O Defendants).

circumstances of the fraud are alleged with requisite specificity, and the other aspects of the claim challenged by the Fouertis—their intent to enrich Albert Fouerti to the tune of $180 million, and Polished's damages in overpaying—may be pled generally.

The Complaint also states claims to avoid and recover the $180 million payment made to Albert Fouerti as part of the Merger as a constructive fraudulent transfer. The burdens to plead insolvency, lack of reasonably equivalent value, and a triggering creditor for purposes of Section 544 and DUFTA are not onerous—and the Trustee has alleged sufficient facts for each of these elements.

The Complaint further pleads that, once the Merger closed, the Fouertis breached their fiduciary duties to Polished by causing it to operate illegally. The proliferation of illegal labor practices, alteration of Company records for fraudulent purposes, and other legal and regulatory failures at their direction plainly allege violations of fiduciary duties—it is well established that Delaware law does not charter law breakers.

As to the other D&O Defendants, permitting a company to seek profit by flouting legal or regulatory requirements—including having insufficient internal controls to stop such conduct—violates the duty of loyalty. Arguments concerning the scope of Defendant Johnson's authority or whether the Board's eventual investigation satisfied their duties are merely factual disputes. And, given the substantial bad faith (and thus disloyal) conduct alleged, exculpatory clauses in the Debtors' certificates of incorporation do not provide a basis for dismissal.

The Trustee also sufficiently pleads aiding and abetting claims against the D&O Defendants. The Complaint alleges more than passive awareness; it alleges that they provided cover for Albert Fouerti's wrongdoing by, for example, signing off on public filings which

contained false financials and concealed illegal conduct—thereby allowing the conduct to continue harming the Debtors, shareholders, and creditors.

The Motions should be denied.

## III. FACTUAL BACKGROUND

Debtor Polished, then known as 1847 Goedeker Inc., was formed on January 10, 2019 for the purpose of acquiring Goedeker Television Co., which sold appliances, furniture, home good, and other home furnishings primarily through its website "goedekers.com." Compl. at ¶¶ 24-26. The acquisition closed in April 2019, at which time the company began trading on the NYSE American under the ticker symbol "GOED." *Id.* at ¶¶ 8, 26. The company changed its name to "Polished.com Inc." in July 2022 and thereafter traded under ticker symbol "POL." *Id.* at ¶¶ 8, 33.

In October 2020, Polished's Board of Directors approved Polished's acquisition by merger (the "Merger") of Debtor Appliances Connection (which owned Debtors 1 Stop, AC Gallery, Gold Coast, Joe's Appliances, Superior Deals, and YF Logistics). *Id.* at ¶¶ 28-29. Appliances Connection had been founded in 2015 by Albert and Elie Fouerti as an online seller of appliances. *Id.* at ¶ 27. The Merger closed on June 2, 2021. *Id.* at ¶ 20.

Post-Merger, the Debtors operated as wholesale and retail sellers of home appliances, furniture, fitness equipment, televisions, plumbing fixtures, and many other products. *Id.* at ¶ 7. The Debtors primarily sold products via its website, but also operated several showrooms and various warehouse fulfillment centers, including the main warehouse operated by Debtor YF Logistics in Hamilton, New Jersey. *Id.* Debtor Polished is the ultimate parent and owns 100% of Debtor Appliances Connection, which in turn owns 100% of the other Debtors. *Id.* at ¶ 9.

Defendant Moore served as Polished's CEO from August 2019 to August 2021 (during which time the Merger took place), and on Polished's Board from April 2020 to September 2021.

*Id.* at ¶ 12. Defendant Albert Fouerti became Polished's CEO after the Merger, from September 2021 to October 2022, and was also a Board member from September 2021 to December 2022. *Id.* at ¶ 11. Defendant Johnson was Polished's CFO from July 2021 to October 2022. *Id.* at ¶ 13. The other D&O Defendants served as directors and/or officers of Polished during the relevant time period, as detailed in the Complaint. *See id.* at ¶¶ 12-23. Defendants Roberts, Barry, Shaw, and Schneider also held positions as directors or officers of the other Debtor entities. *Id.* at ¶¶ 14-15, 21-22, 113.[4]

Both before and after the Merger, Polished issued financial statements which contained false and misleading statements as to the company's financial condition and internal controls over financial reporting. *See id.* at ¶ 38; *infra* Section III.B. Additionally, Appliances Connection had engaged in rampant fraudulent and illegal business practices before the Merger—which then continued unabated at Polished following the Merger. *See* Compl. at ¶¶ 35-36; *infra* Section III.C.

### A. Albert Fouerti Orchestrated the Merger for His Personal Enrichment

Polished paid $222 million for Appliances Connection in connection with the Merger, the funds for which were sourced via sale of stock to the public. Compl. at ¶¶ 31-32. The vast majority of the purchase price—*$180 million*—was paid to Albert Fouerti personally, in cash. *Id.* at ¶¶ 32, 34. Albert Fouerti orchestrated the Merger as the vehicle to sell the Fouertis' companies for substantially more than they were worth. *Id.* at ¶¶ 30, 35. He caused Appliances Connection to engage in fraudulent business and accounting practices (described *infra* Section III.C), which resulted in materially false and misleading financial statements that showed Appliances

[4] Unless otherwise indicated, capitalized terms used herein shall have the same meaning as set forth in the Complaint.

Connection to be profitable and valuable when it was not. *Id.* He leveraged those practices and financials into negotiating the $180 million cash payout for himself. *Id.*

### B. Polished Issued False Financial Statements Both Before and After the Merger

The Complaint identifies the following false and misleading statements made in Polished's public filings during the period July 27, 2020 through August 25, 2022:

a. IPO Registration Statement filed with the SEC April 22, 2020: Misrepresented a liability of $2,910,200, misrepresented the fair value of certain ownership interests, and misrepresented the effectiveness and adequacy of the Company's internal controls over financial reporting;

b. All Form 10-Q quarterly reports for the second and third quarters of 2020 and all quarters of 2021: Falsely represented several line items (which later had to be restated) and failed to disclose inadequate internal controls;

c. Secondary Public Offering Registration Statement filed with the SEC May 3, 2021 and Form 10-Q quarterly report for 2Q 2021: Continued to fail to disclose issues with internal controls; and

d. 2021 Proxy Statement filed November 18, 2021: Contained material misstatements and omissions about executives' compliance with the Company's Code of Conduct and executive compensation, the need for certain financial statements to be restated, and inadequate internal controls.

Compl. at ¶ 40.

These misstatements were the subject of a shareholder derivative action filed in January 2023, *Wong v. Moore et al.*, U.S.D.C. E.D.N.Y., Case No. 23-cv-00559 (the "Derivative Case"), asserting claims for breach of fiduciary duty, unjust enrichment, abuse of control, gross

mismanagement, waste of corporate assets, and violations of certain securities laws. *See id.* at ¶¶ 39-40. The Derivative Case was voluntarily dismissed without prejudice on April 7, 2026. *See* D.I. 22-10, Ex. 10 to Lyons Decl. ISO Johnson Motion to Dismiss.

As a public company, Polished was required to include financial statements prepared in accordance with GAAP and certain SOX certifications in its public filings. *See* Compl. at ¶¶ 41-42. During 2021, Defendants Moore, Johnson, and Albert Fouerti made SOX certifications in public filings which were knowingly false, insofar as they falsely certified that the filings did not contain any untrue statement of material fact, the financial statements were materially correct, and the company had adequate internal controls over financial reporting, despite knowing information to the contrary. *See id.* at ¶¶ 42-44; *see also, e.g.*, *id.* at ¶¶ 49, 56.

Post-Merger, Polished also reported false inventory numbers in its public filings. *Id.* at ¶ 46. Polished's publicly reported inventory numbers for the fiscal year of 2021 and the first quarter of 2022 were materially false. *Id.* at ¶ 53. Following the Merger, Polished's Vice President of Logistics had begun examining Appliance Connection's inventory management systems, including doing two hand counts of inventory in the warehouse to compare to the inventory numbers recorded on the ledger. *Id.* at ¶ 48. Both counts confirmed that the ledger (and, as a result Appliance Connection's balance sheet) were materially false and overstated inventory by approximately 1,200 pieces. *Id.* He directly told Defendants Moore, Barry, Johnson, and Albert Fouerti about the issues during the summer and fall of 2021, but no corrective action was taken. *Id.* at ¶ 49. Then, Albert Fouerti fired him in September 2021. *Id.* at ¶ 50.

In October 2022, a Polished shareholder commenced a securities fraud class action in the Eastern District of New York (the "EDNY") against Polished, Defendants Moore, Johnson, and Albert Fouerti, and others, *Maschhoff v. Polished.com Inc. et al.*, U.S.D.C. E.D.N.Y., Case No.

22-cv-06606 (the "Securities Fraud Case"), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 relating to the false inventory numbers and other business practices. *See* Compl. at ¶¶ 51-52. The Securities Fraud Case was dismissed with prejudice on March 10, 2026. *See Eden Alpha CI LLP v. Polished.com Inc.*, No. 22-CV-6606 (NGG) (VMS), 2026 WL 673462 (E.D.N.Y. Mar. 10, 2026) (granting motion to dismiss second amended complaint).

The complaint in the Securities Fraud Case contained information provided by eleven former employees (including, *inter alia*, the Vice President of Logistics) of Polished, Appliances Connection, and YF Logistics, which outlined in detail fraudulent business practices that were routine at the company both pre- and post-Merger. *Id.* at ¶¶ 51-52. These allegations included, among other things, that: (a) Moore, Johnson, and Barry were told about the inventory issues on multiple occasions; (b) Albert Fouerti was repeatedly and regularly told about the inventory issues and materially overstated inventory numbers on the balance sheet, but took no action; (c) Albert Fouerti screamed at and fired Polished's VP of Logistics after a lengthy phone call, which Johnson and Barry were also on, explaining the inventory problems; (d) Polished's reported inventory numbers were not even close to the actual inventory in the YF Logistics warehouse; (e) employees regularly searched the warehouse for inventory that had been sold online but did not actually exist; (f) an inventory control manager made recommendations to Elie Fouerti about how to improve inventory practices, but they were not implemented; and (g) refurbished, used, and damaged items were fraudulently advertised as new. *Id.* at ¶ 52. Defendants were aware of these practices, the insufficiency of the inventory management system, and that false inventory numbers were being reported to the public, but failed to adequately correct or address them. *Id.* at ¶ 56.

Eventually, in late 2022, the Audit Committee conducted an investigation which confirmed that the Company's controls, software and procedures for managing and tracking inventory, including damaged inventory, were insufficient. *Id.* at ¶ 55; *see also infra* Section III.D.

### C. Appliances Connection's Fraudulent and Illegal Business Practices Continue at Polished Post-Merger

In addition to fraudulent inventory practices, Polished, under the leadership of Albert Fouerti and the other Defendants, routinely implemented fraudulent and illegal business practices which had the effect of defrauding customers, vendors, and others and exposing Debtors to liability. Compl. at ¶ 57. These practices had been commonplace at Appliances Connection before the Merger, and then continued at Polished after the Merger. *Id.* at ¶ 36.

<u>Forging and Falsification of Company Records</u>

The Fouertis routinely directed alteration of Company records for fraudulent purposes, including: (a) altering dates on documents to facilitate returns to manufacturers outside permitted return windows, circumvent damage claims, win credit card chargeback disputes, and avoid customer delivery complaints; (b) filing all damage claims as "concealed damages" (*i.e.*, not the Company's fault), when they were actually caused by Company workers; and (c) forging customer signatures, delivery signatures, and submissions to credit card companies to circumvent damage claims and avoid credit card chargebacks. *Id.* at ¶ 58. The Fouertis directed these practices, while the other Defendants failed to have sufficient controls and procedures in place to prevent them. *Id.* at ¶ 59.

<u>Violation of Tax Laws</u>

Defendants created and permitted an environment at Polished that fostered noncompliance with tax obligations, with Albert Fouerti directing these practices and the other Defendants failing to have sufficient controls and procedures in place to prevent them. *Id.* at ¶¶ 60-62. In February

2024, Polished brought an action against Albert Fouerti, *Polished.com Inc. f/k/a 1847 Goedeker Inc. v. Albert Fouerti*, which was commenced in state court in New York, and then removed to federal court post-petition. The case is currently pending in the District of Delaware, Case No. 24-cv-00739 (the "Tax Case").

With respect to sales and use taxes, in August 2022, Albert Fouerti directed a Polished employee to stop uploading sales information into TaxJar (the program the company used to calculate sales and use taxes), without any alternative directions. *Id.* at ¶ 64. The employee informed Brad Adelsky, Polished's Director of Financial Planning & Analysis, of the directive, who in turn told Defendant Johnson (CFO) that Polished was not in compliance with its sales and use tax obligations and would begin accruing interest on any taxes owed. *Id.* Johnson took no action and said the Company would "do whatever Albert decides." *Id.* The company did not resume paying sales and use taxes until December 2022, which caused the Company to incur penalties and interest for the non-compliant period. *Id.*

Additionally, under Albert Fouerti's leadership, Polished (i) became liable, following state tax audits, for additional sales and use taxes related to wrongly granted tax exemptions, and (ii) became liable for an increased workers' compensation insurance premium which it had not accounted for, after Albert Fouerti submitted a grossly underestimated payroll estimate. *Id.* at ¶¶ 65-68.

<u>Violation of Labor and Immigration Laws</u>

It was common knowledge among the Debtors' employees and, given their role as officers and directors, among the Defendants that the Debtors employed large numbers of undocumented workers. *Id.* at ¶ 69. The witnesses in the Securities Fraud Case alleged: (a) the VP of Logistics informed Barry, Johnson, and Albert Fouerti about undocumented workers at Appliances

Connection; (b) Albert Fouerti paid undocumented workers via Forms 1099, but kept the list of 1099 workers secret; (c) it was well known among employees that many workers, particularly at the YF Logistics warehouse, were hired with insufficient paperwork or no paperwork at all; (d) the Head of Human Resources from January 2021 to July 2021 found that 60% of YF Logistics workers had no social security number ("SSN") and were not authorized to work in the United States, but Albert Fouerti fired her when she presented her findings to him; (e) some undocumented workers were paid via an illegal arrangement with a company called DNL Power; and (f) as of September 9, 2021, there were 82 Appliances Connection employees for whom the company had no SSN on file. *Id.* at ¶ 70.

**D. The Belated Audit Committee Investigation**

On August 15, 2022, Polished announced that it was unable to file its quarterly report for 2022 Q2 because it needed additional time to complete "an independent investigation regarding certain allegations made by certain former employees related to the Company's business operations." *Id.* at ¶ 72. The news caused the stock price to fall 35.7%. *Id.* at ¶ 73. On October 14, 2022, Polished announced the resignations of Albert Fouerti (CEO), Elie Fouerti (COO), and Johnson (CFO), though Albert Fouerti would remain on the Board. *Id.* at ¶ 74. On November 2, 2022, Polished issued a press release saying that the investigation was "focused on employment and inventory management practices" and "the time period of 2021 through the present." *Id.* at ¶ 75. Polished was also unable to file its quarterly report for 2022 Q3. *Id.* at ¶ 76.

On December 22, 2022, Polished issued a press release disclosing the results of the Audit Committee Investigation. *Id.* at ¶ 77. The key findings of the investigation were that: (i) Albert Fouerti charged approximately $800,000 in personal expenses to the Company; (ii) the Company did not have proper documentation for all of its employees and, in turn, did not comply with certain

labor laws; (iii) the Company's "controls, software and procedures for managing and tracking inventory, including damaged inventory, were insufficient." *See id.* at ¶¶ 77-78 (summarizing key findings). The Company entered into a settlement agreement (the "Settlement") with Albert Fouerti, requiring him to reimburse $3.7 million to Polished, pay back the $800,000 he stole, and pay for the cost of the investigation. *Id.* at ¶¶ 79-81. Following the investigation, Polished's auditor (Friedman LLP) resigned, withdrew its previously issued audit opinion for 2021, and declined to be associated with the quarterly financial statements for 2021 Q2, 2021 Q3, and 2022 Q1. *Id.* at ¶ 82.

**E. Polished's Collapse**

On July 31, 2023, Polished announced that it "needed to restate" the Company's previously issued financial statements for 2021 and 2022 Q1. *Id.* at ¶ 84. The restatements for those periods (the "Restated Financials") were filed the same day. *Id.* at ¶ 85.

The Restated Financials revealed that the original financial statements for 2021 and the first quarter of 2022 had been materially false. Indeed, they contained material and egregious errors in, *inter alia*, the Cost of Goods Sold ("COGS"), inventory, sales, accounts payable, accounts receivable, accrued expenses, and revenue numbers that had been publicly reported in the income statement and balance sheet. *See id.* at ¶¶ 86-88 (summarizing the required adjustments for fiscal year 2021 and 2022 Q1).

Polished never recovered from the results of the Audit Committee Investigation and the Restated Financials. Polished's stock price fell 68% in response to the Restated Financials. *Id.* at ¶ 89. In February 2024, Polished announced an SEC investigation into the investigation findings and the restatement. *Id.* at ¶ 90. The Debtors filed for Chapter 7 bankruptcy on March 7, 2024. *Id.* at ¶ 91.

## IV. MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

For purposes of Rule 12(b)(6), the court relies on "the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may also consider an extrinsic document if it is "integral to or explicitly relied upon" in the complaint).

Federal Rule of Civil Procedure 9(b), applicable here by Federal Rule of Bankruptcy Procedure 7009, applies to claims for fraud and aiding and abetting fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "A bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud." *In re Am. Bus. Fin. Servs., Inc.*, 362 B.R. 135, 142 (Bankr. D. Del. 2007); *see also In re Nat'l Realty Inv. Advisors, LLC*, 2025 WL 3779086, at *7 n.2 (Bankr. D.N.J. Dec. 31, 2025) (applying "relaxed Rule 9(b) standard" where liquidation trustee "ha[d] the difficult chore of pleading fraud based on knowledge obtained from documents and other second-hand sources").

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *In re Student Fin. Corp.*, 335 B.R. 539, 546 (D. Del. 2005). The plaintiff is not required to anticipate, overcome, or "plead around" affirmative defenses in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).

## V. ARGUMENT

### A. The Complaint States Claims For Breach of Fiduciary Duty (Counts 2 and 3) Against All Defendants

"The elements of a breach of fiduciary duty claim are (1) that the fiduciary duty exists and (2) that the fiduciary breached that duty." *In re Tropicana Ent., LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014). It is well-settled that directors owe fiduciary duties to the corporation, and corporate officers owe the same duties to the corporation as directors. *Id.* Under Delaware law, fiduciary duties encompass duties of care, loyalty, and good faith. *In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1, 32-33 (Del. Ch. 2014).[5]

The duty of care requires fiduciaries to manage the company with the "care which ordinarily careful and prudent men would use in similar circumstances" and not act with gross negligence. *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). Gross negligence is defined as "reckless indifference to or a deliberate

[5] The Trustee cites to Delaware law herein because Debtor Polished, the ultimate parent of the other Debtors, is a Delaware corporation. *See* Compl. at ¶¶ 9-10. The other Debtors are organized in Delaware, New York, or New Jersey. *See id.* at ¶ 10; D.I. 30 (Carty Decl.) at Exs. 2-6 (certificates of incorporation for corporate debtors). It is unnecessary, however, for the Court to engage in a choice of law analysis at this stage. Defendants cite to Delaware law and do not identify an actual conflict of law relevant to resolution of the Motions. *See, e.g.*, D.I. 29 at ¶¶ 62-66; D.I. 21 at 13 n.6; *see also Tropicana*, 520 B.R. at 468. Fiduciary duties owed under New York and New Jersey law do not materially differ from those owed under Delaware law. *See, e.g.*, *In re Firestar Diamond, Inc.*, 634 B.R. 265, 302 (Bankr. S.D.N.Y. 2021); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 760-62 (D.N.J. 2013).

disregard of the whole body of stockholders or actions which are without the bounds of reason." *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 470 (Bankr. D. Del. 2017).

The duty of loyalty (within which the duty of good faith is subsumed) requires fiduciaries to act in the corporation's best interest and to avoid financial or other cognizable fiduciary conflicts of interest. *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006). The duty of loyalty is breached when fiduciaries fail to act in the face of a known duty to act, or act in bad faith. *Id.* at 369-70. Knowingly causing or permitting a corporation to violate positive law constitutes acting in bad faith, and thus a breach of the duty of loyalty. *Kandell on behalf of FXCM, Inc. v. Niv*, 2017 WL 4334149, at *16-17 (Del. Ch. Sept. 29, 2017); *Desimone v. Barrows*, 924 A.2d 908, 934 (Del. Ch. 2007).

The Complaint alleges that Albert Fouerti breached his fiduciary duties by abusing his position for his own personal benefit and by causing Polished to issue false financial statements, defraud customers and vendors, and violate labor, immigration, and tax laws. The D&O Defendants, in turn, knowingly facilitated and/or failed to prevent that wrongdoing.

### 1. The Trustee's Claims Are Not Subject to PSLRA Pleading Standards

Defendants repeatedly cite to the EDNY's opinions in the Securities Fraud Case to suggest that, because that court found allegations insufficient under PSLRA standards, this case should also be dismissed. These arguments should be rejected.

Breach of fiduciary duty claims are subject to the general pleading requirements of Rule 8(a), applicable here pursuant to Federal Rule of Bankruptcy Procedure 7008. *See DSI Renal Holdings*, 574 B.R. at 471; FED. R. CIV. P. 8(a). Some courts have held that, if the claim includes allegations of fraud, those aspects of the claim may be subject to Rule 9(b). *See In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, at *15 (Bankr. D. Del. June 6, 2018). But breach of

fiduciary claims are *not* subject, in any way, to the PSLRA's uniquely stringent pleading requirements for securities fraud claims.[6]

Under the PSLRA, the plaintiff in a securities fraud case must plead particularized facts concerning each misleading statement or omission and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2); *see also Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 292-93 (E.D.N.Y. 2025) ("*Eden Alpha I*"); *Eden Alpha CI LLP v. Polished.com Inc.*, No. 22-CV-6606 (NGG) (VMS), 2026 WL 673462, at *3 (E.D.N.Y. Mar. 10, 2026) ("*Eden Alpha II*"). In addition to requiring particularized fact pleading, this heightened PSLRA standard changes the manner in which the court draws inferences on a motion to dismiss: "While we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss . . . the PSLRA, which governs scienter pleading in securities fraud actions, establishes a more stringent rule for inferences involving scienter. . ." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 194 (2d Cir. 2008). The analysis includes weighing competing inferences to decide whether or not an inference of scienter is "as compelling as any opposing inference of nonfraudulent intent"—a drastically higher standard than under non-PSLRA pleading rules. *Id.*; *see also, e.g.*, *Eden Alpha II*, 2026 WL 673462, at *11.

The pleading rules applicable to the Trustee's claims do not contain any heightened pleading requirements for the defendant's state of mind. *See* FED. R. CIV. P. 8(a) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). Even for fraud claims under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's

---

[6] Nor are any of the Trustee's other claims. Aiding and abetting breach of fiduciary duty, unjust enrichment, and constructive fraudulent transfer claims are subject to Rule 8(a), while the fraud claim and aiding and abetting fraud claim are, at least in part, subject to Rule 9(b).

mind may be alleged generally." FED. R. CIV. P. 9(b). And, outside the PSLRA context, it is beyond dispute that a court ruling on a motion to dismiss draws all reasonable inferences in favor of the non-movant. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010); *In re UD Dissolution Corp.*, 629 B.R. 11, 30 (Bankr. D. Del. 2021).

Defendants argue that the witnesses in the Securities Fraud Case have been discredited—but the EDNY's opinions were pleading-stage opinions concerning motions to dismiss, not factual findings following a trial or other evidentiary hearing. The EDNY's findings as to the former employee witnesses (and the purported "deficiencies" therein) were specifically based on whether the allegations were sufficient under PSLRA pleading standards (and relied on securities fraud case law applying that standard). Outside that context, courts do not require pleading of evidence, weigh that evidence for "probability" determinations, or require detailed valuations at the pleading stage. For example, the inference that Polished's Vice President of Logistics would have a reasonably complete understanding of the Company's inventory, or that 1,200 missing pieces of inventory (including inventory listed for sale on the Company's website) is material, are completely reasonable inferences to be drawn from the Trustee's allegations. That the PSLRA requires more is not relevant.

The Fouertis have no legitimate basis for invoking Rule 9011 in their brief. The Complaint plainly identifies the Securities Fraud Case as the source of information from the eleven former-employee witnesses. *See* Compl. at ¶¶ 51-52, 70. The Fouertis baselessly criticize the Trustee for summarizing certain witness statements (rather than quoting verbatim, apparently) and for including "hearsay" in his allegations—but these are irrelevant concerns at the pleading stage. The Trustee is not required to plead evidence. Furthermore, the fact that another court found certain allegations insufficient to support different claims under a different and much more stringent

pleading standard does not mean those allegations cannot be asserted in support of different claims. And, where a debtor has been involved in other litigation pre-petition, there is nothing unusual or inappropriate about a Chapter 7 Trustee citing to factual allegations from those proceedings, or having substantial factual overlap between the prior claims and the Trustee's claims.

#### 2. The Complaint Alleges Breaches of Fiduciary Duty By Albert Fouerti

Following the Merger, Albert Fouerti served as Polished's CEO from September 1, 2021 until October 14, 2022, and a member of the Board from September 1, 2021 until December 2022. Compl. at ¶ 11. The Complaint contains extensive allegations of behavior that breached his fiduciary duties during this time period, including, *inter alia*: (i) knowingly allowing the Company to have a faulty inventory management system that was causing operational issues and false reporting to the public (*id.* at ¶¶ 49, 52); (ii) causing rampant alteration of customer records for fraudulent reasons (*id.* at ¶ 58); (iii) directing employees to stop filing sales and use taxes owed by Polished (*id.* at ¶ 64); (iv) causing Polished not to pay its workman's compensation insurance premium (*id.* at ¶ 68); and (v) knowingly allowing Polished to employee large numbers of undocumented workers (*id.* at ¶ 70). It is well established that causing a corporation to operate illegally—as Albert Fouerti did here—constitutes bad faith and a breach of the duty of loyalty. *See In re Massey Energy Co.*, 2011 WL 2176479, at *20 (Del. Ch. May 26, 2011) ("[A] fiduciary of a Delaware corporation cannot be loyal to a Delaware corporation by knowingly causing it to seek profit by violating the law.").

With respect to causation and damages, under Delaware law, stating a claim for breach of fiduciary duty does not actually require allegations as to these elements, because it is an equitable claim. *See Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*, 342 A.3d 1166, 1191 (Del. Ch. 2025), *aff'd*, 2026 WL 1993637 (Del. July 10, 2026). They must be proven in order to

ultimately recover monetary damages, but arguments as to these issues are simply factual disputes not ripe for determination at the pleading stage.[7]

Furthermore, the Trustee pleads multiple types of damages suffered by Polished as a direct result of Albert Fouerti's conduct. Polished's inventory practices resulted in false financial statements contained in numerous public filings, the revelation of which sent Polished into a downward spiral from which it never recovered. *See, e.g.*, Compl. at ¶¶ 72-73, 76, 82, 89-92 (allegations concerning, *inter alia*, plummeting stock price, inability to make timely public filings, resignation of auditor, SEC investigation, and bankruptcy filing); *see also id.* at ¶ 64(h) (Company incurred penalties and interest for the months it did not pay sales and use taxes), ¶ 68 (Company had to pay massively increased insurance premium it did not account for). Albert Fouerti orchestrated and implemented the business practices that caused these harms. *See, e.g.*, *id.* at ¶¶ 35-36, 52(b)-(c), 57, 58(a), 58(c), 59, 61, 64(b), 66-68, 70(b), 70(e)-(f). This more than suffices to allege a causal linkage for purposes of damages. *See Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 859-60 (Del. Ch.) (discussing "plaintiff-friendly principles" which apply in determining remedies for fiduciary breach under Delaware law); *see also infra* Section V.A.3.a.

Albert Fouerti cursorily asserts in his brief, with no argument, that the release contained in the Settlement "bars the Trustee's claims." D.I. 18 at 27; *see also* Compl. at ¶¶ 79-81 (Polished entered into the Settlement with Albert Fouerti following the Audit Committee Investigation). The Settlement contains a release by Polished of all claims "related to the Audit Committee Investigation." *See* D.I. 18-1 (Musgrave Decl.) at Exhibit 3, § 2(b). However, the release contained

---

[7] Damages are an element of breach of fiduciary duty claims under New York and New Jersey law. *See Stinner v. Epstein*, 162 A.D.3d 819, 820 (N.Y. App. Div. 2018); *Namerow v. PediatriCare Assocs., LLC*, 218 A.3d 839, 846 (N.J. Super. 2018). As discussed above, the Trustee has alleged such damages at length in his Complaint.

in the case cited by Albert Fouerti, *In re AgFeed USA, LLC*, 2015 WL 9133627, at *2, *5 (Bankr. D. Del. Dec. 15, 2015), was much broader and specifically intended to be a global resolution of every ongoing dispute between the parties. By contrast, the release in the Settlement is confined to claims related to the Audit Committee Investigation, the contours of which cannot be conclusively determined at the pleading stage and require further discovery. For example, the Audit Committee Investigation did not include (to the Trustee's knowledge) any investigation into tax law violations. *See, e.g.*, Compl. at ¶ 78. While the Court may ultimately determine that some portion of the Trustee's breach of fiduciary duty claims are covered by the release, it would be premature to dismiss his well-pleaded claims on that basis at this stage.[8]

**3. The Complaint Alleges Breaches of Fiduciary Duty By the D&O Defendants**

**a. Claims Against the Director Defendants[9]**

The Complaint alleges that the Director Defendants (*i.e.*, Moore, Roberts, Anderson, Crosnoe, Milburn, Shor, Tobin, Shaw, and Schneider) breached their fiduciary duties to Polished

---

[8] The Settlement has no bearing on the Trustee's claims related to the $180 million payment to himself that Albert Fouerti fraudulently orchestrated via the Merger. Additionally, even if the Court were to determine that some portion of the claims against Albert Fouerti were released as part of the Settlement, other Defendants can still be held liable for aiding and abetting him in his misconduct.

[9] The D&O Defendants (other than Johnson and Elie Fouerti) characterize themselves as "independent" directors and officers in their brief. *See* D.I. 29 at 1 n.1. The Trustee does <u>not</u> concede the independence of these defendants. First, officers of the Company (such as Barry and Moore) are not "independent" of the corporation, as that term is used in this context. Second, certain of the Directors clearly were not "independent" directors. Defendant Roberts, for example, was the controlling principal and sole manager of 1847 Holdings LLC, which was Polished's manager pursuant to a Management Services Agreement dated April 5, 2019, as well as its former parent company. *See, e.g.*, D.I. 18-1 (Musgrave Decl.) at Exhibit 1, pp. 40, 61, 91, 102 (SPO Registration Statement); *id.* at Ex. 9, p. F-27 (Schedule 14-C). The Company's public filings also identified which of its directors could be considered "independent" under NYSE rules; Defendants Roberts and Tobin are not on that list. *See, e.g.*, *id.* at Exhibit 1, p. 94 (SPO Registration Statement); *id.* at Exhibit 4, p. 70 (2022 Form 10-K).

(and to other Debtors, to the extent certain defendants also acted as directors of those entities) by "knowingly facilitate[ing] and/or fail[ing] to prevent Polished from issuing false financial statements, defrauding customers and vendors, and violating labor, immigration, and tax laws." Compl. at ¶¶ 112-14.

Fiduciaries are considered to have abdicated their responsibilities and duties—and thus violated the duty of loyalty—when they permit the corporation to seek profit by flouting regulatory or legal requirements. *See, e.g.*, *Marchand v. Barnhill*, 212 A.3d 805, 822 (Del. 2019); *In re Massey Energy Co.*, 2011 WL 2176479, at *20 (Del. Ch. May 26, 2011). When a breach of fiduciary duty claim is based on a failure to sufficiently oversee the company's affairs, the plaintiff must plead that the directors or officers "knew or should have known that violations of the law were occurring, that they took no good faith steps to ameliorate the situation, and that the company suffered losses as a result." *Buckley v. O'Hanlon*, 2007 WL 956947, at *3 (D. Del. Mar. 28, 2007) (citing *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996)).

Polished issued false financial statements both before and after the Merger. *See supra* Section III.B. Indeed, even after determining that the 2019 financials needed to be restated, the Company *still* kept issuing false financial statements and failed to institute sufficient internal controls in a timely manner to prevent doing so. *See, e.g.*, Compl. at ¶¶ 40(c)-(d), 45, 49, 53. After finally disclosing a "material weakness" in its internal controls over financial reporting in March 2022 (and being unable to meet its public filing deadlines for numerous quarters, and the Company's auditor resigning), the Company had to issue Restated Financials for all of 2021 and the first quarter of 2022. *See id.* at ¶¶ 54, 72, 76, 82-85; *see also id.* at ¶¶ 86-88 (detailing the extensive restatements required, including, *inter alia*, to reported COGS, inventory, sales, accounts payable, accounts receivable, accrued expenses, and revenue numbers). On top of this, Polished

was engaging in numerous fraudulent and illegal business practices that had been commonplace at Appliances Connection and then continued at Polished after the Merger—as detailed above. *See supra* Sections III.C, V.A.2.

Polished's Board, however, failed to have proper controls and procedures in place to prevent the repeated issuance of false financial statements, to ensure proper inventory management, or to prevent the Company from engaging in fraud and violating labor, immigration, and tax laws. *See* Compl. at ¶¶ 37, 56, 59, 60, 62, 69, 114. These are not merely conclusory allegations. Fiduciaries have an obligation to ensure that the company operates legally and in compliance with applicable regulatory standards and requirements, *see, e.g.*, *Massey Energy Co.*, 2011 WL 2176479, at *20, and the Board's responsibilities included "mak[ing] a good faith effort to put in place a reasonable system of monitoring and reporting about the corporation's central compliance risks," which at Polished included inventory management, customer service, and legal and regulatory compliance. *Marchand*, 212 A.3d at 824. Furthermore, Defendant Moore (among others) was directly told about the faulty inventory management practices (which caused reporting of false inventory numbers to the public), and Polished's illegal labor practices were common knowledge at the Company. *See id.* at ¶¶ 49, 52(a), 69.

The D&O Defendants point to the eventual Audit Committee Investigation to argue that they fulfilled their fiduciary duties, but that merely raises factual questions as to the sufficiency and timeliness of the investigation, not a basis for dismissing the claims under Rule 12(b)(6). The Trustee alleges that the Board effectively allowed Albert Fouerti to run amok without proper oversight following the Merger, flouting legal and regulatory requirements across key areas of the business and causing substantial damage to the Company; this claim should not be dismissed on the basis that, eventually, the Board investigated.

Nor is the business judgment rule a basis for dismissal. The business judgment rule presumes that a fiduciary's decisions are made on an informed basis, in good faith, and with the honest belief that the action taken was in the best interests of the company. *Orchard Enters.*, 88 A.3d at 33-34. Applicability of the business judgment rule is an affirmative defense to be developed after discovery, and typically is not appropriate for determination at the motion to dismiss stage. *In re Total Containment, Inc.*, 335 B.R. 589, 606-07 (Bankr. E.D. Pa. 2005); *In re Simplexity, LLC*, 2017 WL 65069, at *8 (Bankr. D. Del. Jan. 5, 2017).

Moreover, plausibly alleging violations of "any one of [the] triad of fiduciary duties: due care, loyalty, or good faith" suffices to "plead around" the business judgment rule. *DSI Renal Holdings*, 574 B.R. at 471. Here, the Trustee has alleged such violations. Allegations that directors "fail[ed] to be 'active monitors of corporate performance" sufficiently "raise a reason to doubt" that actions were taken in good faith (for purposes of the duty of loyalty) or on an informed basis (for purposes of the duty of care). *Buckley*, 2007 WL 956947, at *5 (quoting *Caremark*, 698 A.2d at 968); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 569 (Bankr. D. Del. 2008) (where company's loss results from "director inaction," such as by "'sustained or systematic failure' of a director to exercise reasonable oversight," then "the protections of the business judgment rule do not apply").

Finally, the Director Defendants argue that the Trustee fails to plead "proximate cause" between their conduct and harms to Polished. D.I. 29 at 30. This argument should be rejected because damages are not an element of a claim for breach of fiduciary duty under Delaware law. *See Leo Invs. Hong Kong*, 342 A.3d at 1191 ("The equitable tort for breach of fiduciary duty has

only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty.”).[10] In any event, the Trustee does plead harms which are causally connected to the Board’s lack of oversight. Among other harms, the revelations of Polished’s financial misstatements caused Polished’s stock price to plummet, and the illegal business practices caused Polished to incur fines and other penalties. *See id.* at ¶¶ 73, 89. The Board itself determined, in its belated investigation, that Albert Fouerti’s illegal business practices caused the Company millions of dollars in damages—but had the Board been practicing proper oversight from the beginning, these damages to the Company would not have occurred.[11]

The Company was further unable to make its public filings for multiple quarters, was subject to an SEC investigation, and never recovered once the Restated Financials were issued. *See id.* at ¶¶ 85, 90-91. As the Delaware Chancery Court has explained, “[a] proven breach of duty operates as a solvent to loosen the normally stringent requirements of causation and damages.” *Metro Storage*, 275 A.3d at 859 (citation omitted). “[D]amages must be logically and reasonably related to the harm or injury for which compensation is being awarded . . . But as long as that connection exists, the law does not require certainty in the award of damages.” *Id.* (citations omitted). At the pleading stage, the Trustee’s allegations of harm—including that Defendants’ wrongdoing drove the Debtors out of business and into liquidation in bankruptcy (Compl. at ¶ 92)—are more than sufficient to allege damages that are “logically and reasonably related” to the

---

10 As noted above, damages are an element of breach of fiduciary duty claims under New York and New Jersey law. The Trustee has alleged such damages in his Complaint.

11 To the extent the Company recovered some portion of these damages from Albert Fouerti as part of the Settlement with him in December 2022 (Compl. at ¶¶ 79-81), that simply raises factual questions concerning the amount of eventual damages which the Trustee would be able to recover following trial, not a basis to dismiss claims against the D&O Defendants.

harms caused by issuing false financial statements. *Metro Storage*, 275 A.3d at 859. For example, damages based on lost enterprise value caused by fiduciaries' breaches are a permissible form of damages for breach of fiduciary duty. *See, e.g.*, *In re PMTS Liquidating Corp.*, 526 B.R. 536, 547 (D. Del. 2014) (holding that "an unbroken chain of events, starting with [defendant's] breach and leading to [debtor's] loss of enterprise value" would, if proven, "demonstrat[e] damages proximately caused by [defendant's] breach of fiduciary duty"); *In re Scott Acquisition Corp.*, 344 B.R. 283, 290 (Bankr. D. Del. 2006) (holding trustee had standing to recover for injuries in form of debtor's "substantially diminished" enterprise value, as result of breaches of fiduciary duty).

Thus, while not required to do so to state a claim under Delaware law, the Trustee does plead causally-connected damages. Insofar as the D&O Defendants dispute whether the Trustee can recover these damages, or whether they (versus Albert Fouerti) are responsible for them, those are simply factual disputes—particularly since "damages flowing from [a fiduciary's] breach are to be liberally calculated." *Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436, 444 (Del. 1996).[12]

**b. Claims Against the Officer Defendants**

"The fiduciary duties of officers are the same as those of directors. To state a claim against an officer for breach of fiduciary duty, the complaint must allege facts demonstrating that the officer: (1) took part in the challenged conduct; and (2) failed to demonstrate the due care attendant to his particular office in doing so." *DSI Renal Holdings*, 574 B.R. at 470.

---

[12] This is particularly true for a breach of the duty of loyalty. *See In re Primedia Inc. Derivative Litig.*, 910 A.2d 248, 262 (Del. Ch. 2006); *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *3 (Del. Ch. May 11, 2001).

Defendants Johnson, Barry, Moore, and Elie Fouerti acted as officers of Polished.[13] With respect to each of these Defendants, the Complaint alleges that they were aware of fraudulent or illegal business practices being engaged in at Polished, but took no action to correct them (or outright encouraged them, in the case of Elie Fouerti):

- Johnson: Repeatedly informed of problems with inventory management system but took no action; Made knowingly false SOX certifications; Knew Polished was not in compliance with sales and use tax obligations but took no action; Knew Polished was employing undocumented workers but took no action (*id.* at ¶¶ 43-44, 49, 52(a)-(c), 64(e)-(f), 70(a));
- Barry: Repeatedly informed of problems with inventory management system but took no action; Knew Polished was employing undocumented workers but took no action (*id.* at ¶¶ 49, 52(a), 52(c), 70(a));
- Moore: Repeatedly informed of problems with inventory management system but took no action; Made knowingly false SOX certifications (*id.* at ¶¶ 43, 49-50, 52(a)); and
- Elie Fouerti: Knew about problematic inventory management practices but made no effort to correct them; Ordered employees to alter Company records for fraudulent purposes (*id.* at ¶¶ 52(f), 58-59).

---

13 Defendant Johnson served as Polished's CFO from July 2021 until October 14, 2022, when she resigned along with the Fouertis during the course of the Audit Committee's investigation. Compl. at ¶¶ 13, 72, 74-75. Defendant Barry was CFO of Polished from January 2019 to July 2021, Chief Accounting Officer from July 2021 to January 2022, and Interim CFO from October 14, 2022 to the Petition Date, in addition to roles with the other Debtors. *Id.* at ¶ 15. Defendant Moore was Polished's CEO from August 2019 to August 2021, in addition to his role on the Board. *Id.* at ¶ 12. Defendant Elie Fouerti was Polished's COO following the Merger, until his resignation on October 14, 2022. *Id.* at ¶¶ 23, 74.

*See also id.* at ¶ 69 (alleging that employment of undocumented workers was common knowledge at the Company, including among the D&Os).

These allegations concern matters within the respective authority of each Officer. Matters relating to the Company's financial statements and public filings (including, *inter alia*, reported inventory numbers) clearly fall within the purview of the CFO (Johnson, Barry), the Chief Accounting Officer (Barry), and the CEO as leader of the executive team (Moore). And the COO (Elie Fouerti) would clearly have authority over operational matters such as inventory management, order fulfillment, and vendor relations—indeed the Complaint alleges he did, in fact, direct employees in these areas.

Johnson's argument that some matters at issue in the case were not under her authority should be rejected (and presents, at most, a factual dispute). "An officer who receives credible information indicating that the corporation is violating the law cannot turn a blind eye and dismiss the issue as 'not in my area.'" *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 370 (Del. Ch. 2023). The CFO, as one of the Company's top executives, cannot reasonably ignore learning of illegal business practices simply because it implicates somebody else's department—particularly since Johnson had responsibility for certifying the accuracy of financial reporting (which could clearly be impacted by rampant fraud or illegality). Furthermore, learning that the Company was paying undocumented workers under the table, for example, has clear implications for the Company's finances, even if, as Johnson argues, employment issues typically fell under the purview of Human Resources. And with respect to Polished's tax compliance issues, there is no basis for assuming that Johnson could not have done anything about the concerns presented to her—indeed, the allegations that Adelsky specifically brought his concerns to Johnson reasonably suggest the opposite. *See* Compl. at ¶ 64(e).

Johnson also accuses the Trustee of engaging in so-called "group pleading." D.I. 21 at 16. This is wrong. As identified above, the Complaint includes specific allegations regarding each Officer's knowledge of wrongful business practices, in response to which they took no action. To the extent that certain paragraphs are alleged in terms of conduct the Defendants as a group engaged in or allowed to happen, the Complaint is pleaded in that fashion because all of the Defendants collectively engaged in that behavior. In such instances, allegations of conduct by the group sufficiently plead a breach of fiduciary duty claim. *See Buckley*, 2007 WL 956947, at *5 (stating a claim for breach of fiduciary duty does not require a plaintiff to "associate specific parties to particularized conduct" when "much of the alleged conduct involved collective action and decision making"); *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 457 (Bankr. D. Del. Dec. 13, 2006) (collective references to certain groups of defendants did not render the pleadings defective, and made sense because the allegations arose out of group action).

**4. Exculpatory Clauses In the Debtors' Certificates of Incorporation Do Not Bar the Trustee's Claims Against Directors**

The Director Defendants point to exculpatory clauses in the certificates of incorporation of Polished and certain other Debtors, arguing that they are a basis to dismiss the Trustee's claims. These arguments are premature and should be rejected.

The effect of an exculpatory provision cannot be determined at the motion to dismiss stage. *In re The Brown Schools*, 368 B.R. 394, 401 (Bankr. D. Del. 2007) ("The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at this stage.") (citing *In re Tower Air, Inc.*, 416 F.3d 229, 242 (3d Cir.2005)); *see also In re Opus East, LLC*, 480 B.R. 561, 572 (Bankr. D. Del. 2012).

Delaware law does not permit exculpation of all fiduciary duties. Section 102(b)(7) of the Delaware General Corporation Law ("DGCL") permits a corporation to eliminate or limit director

liability only for breaches of the duty of care. 8 Del. C. § 102(b)(7). Liability for breaches of the duty of loyalty, bad faith, intentional misconduct, knowing violations of law, or self-dealing *cannot* be limited or eliminated. *Id.* As such, where a complaint asserts breaches of the duty of loyalty, dismissal based on an exculpation clause is inappropriate. *See In re Direct Response Media, Inc.*, 466 B.R. 626, 650-51 (Bankr. D. Del. 2012) ("The Delaware Supreme Court has held that when a duty of care breach is not the exclusive claim, a court may not dismiss based solely upon an exculpatory provision.") (citing *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223-24 (Del. 1999)).

The exculpatory clause in Polished's certificate of incorporation states "To the fullest extent permitted by the DGCL, as it exists or may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." D.I. 30 (Carty Decl.) at Ex. 1, Art. VIII. The certificates of incorporation for Polished's corporate subsidiaries contain the same or a substantively similar exculpation clause. *See* D.I. 30 (Carty Decl.) at Ex. 2, Art. VIII (same, as to Appliances Connection); *id.* at Ex. 3, Art. VIII (same, as to AC Gallery); *id.* at Ex. 4, § 6 (exculpation clause pursuant to New York law, as to Gold Coast;); *id.* at Ex. 5, § 6 (same, as to 1 Stop); *id.* at Ex. 6, § 6 (same, as to Superior Deals).[14]

Given the limitations set forth in Section 102(b)(7) of the DGCL (and in Section 402(b) of the NY BCL), these clauses only provide a potential affirmative defense to liability for breaches of the duty of care. As set forth above, the Trustee has also alleged bad faith and the Director Defendants' conscious disregard of their duties—including by failing to prevent Polished from operating illegally—which constitute breaches of the duty of loyalty. *See supra* Section V.A.3.a.

---

[14] New York law contains similar limitations on exculpation of director liability as Delaware law. *See* NY BCL § 402(b).

Where, as here, a duty of loyalty claim has been properly alleged, the breach of fiduciary duty claim (including any duty of care claim included as a part thereof) should be permitted to proceed. *See In re Autobacs Strauss, Inc.*, 473 B.R. 525, 561 (Bankr. D. Del. 2012) (denying dismissal of duty of care claim based on exculpatory provision, where plaintiff also alleged breach of the duty of loyalty); *Direct Response Media*, 466 B.R. at 651 ("To the extent the Board Defendants violated their fiduciary duty of care, the exculpation clause in the Debtor's Certificate of Incorporation may shield them as an affirmative defense, however it cannot be raised at the 12(b)(6) motion to dismiss stage, because the Amended Complaint has stated sufficient facts supporting a claim that directors acted in bad faith or conscious disregard of their responsibilities.").

### B. The Complaint States a Claim for Fraud Against the Fouerti Defendants

#### 1. The Trustee Has Standing

The Trustee's fraud claim (Count One) is based on the Fouertis' inflation of Appliances Connection's financials in order to defraud Polished into overpaying in the Merger:

> Albert Fouerti and Elie Fouerti caused Appliances Connection to engage in fraudulent business and accounting practices, which resulted in falsified financial statements, showed Appliances Connection to be profitable and valuable when it was not, and caused Polished to materially overpay to purchase Appliances Connection. They further leveraged those illegal practices and false financials to obtain a $180 million cash payout for Albert Fouerti.

Compl. at ¶ 97. The Fouertis do not challenge the Trustee's standing to bring claims based on this "pre-Merger" conduct. The Trustee has standing to bring any claim which belonged to the Debtor as of the Petition Date, and a claim asserting that parties defrauded the Debtor into overpaying in a transaction clearly constitutes such a claim. *See* 11 U.S.C. § 541(a)(1); *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).

The Fouertis do, however, challenge the Trustee's standing to bring claims based on alleged "post-Merger" conduct (*i.e.*, engaging in fraudulent business and accounting practices at Polished after the Merger). While Count One does not concern such conduct (as noted above), the Trustee's aiding and abetting fraud claim (Count Five) does implicate "post-Merger" conduct. *See* Compl. at ¶ 123. Contrary to the Fouertis' arguments, the Trustee has standing to bring this claim. Plaintiff asserts these claims in his capacity as the Chapter 7 Trustee of Polished; the Complaint's references to harms to creditors or the Fouertis' intent to defraud others (*see, e.g.*, *id.* at ¶¶ 96, 123-24) does not transform the Trustee's claim into one on behalf of creditors or shareholders. *See Brown Schools*, 368 B.R. at 400 (trustee had standing where he sufficiently alleged harm to the debtors, and it was irrelevant that the trustee's claims also "incidentally implicate[d] creditors' rights"). While other parties were undeniably harmed by this conduct, that does not preclude a finding that Polished was harmed too. And while the Trustee cannot pursue claims belonging to individual creditors (which he is not attempting to do), he unquestionably possesses standing to seek recovery for the bankruptcy estate itself, which "may include the interests of creditors in the sense that the trustee has the duty to marshal the assets of the estate so that they can be distributed to creditors on a *pro rata* basis." *Scott Acquisition*, 344 B.R. at 290-91 (citation and quotation marks omitted).

#### 2. The Complaint Pleads the Fouertis' Fraud With Sufficient Particularity

Stating a claim for fraud under Delaware law requires the plaintiff to "plead facts supporting an inference that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on

the representation; and (5) the plaintiff was injured by its reliance." *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). The circumstances of the alleged fraud must be pled with particularity under FED. R. CIV. P. 9(b), though a bankruptcy trustee, as an outsider to the debtor's transactions, is afforded greater liberality in pleading fraud. *In re Near Intel., Inc.*, 2026 WL 1761066, at *12 (Bankr. D. Del. June 17, 2026).

The Trustee's fraud claim is based on the Fouertis defrauding Polished into overpaying for Appliances Connection. In connection with the Merger, the Fouertis proffered financial statements that were knowingly false because they contained inflated inventory numbers. *See* Compl. at ¶ 48 (Appliances Connection's balance sheet was materially false because it overstated inventory by approximately 1,200 pieces). The Fouertis also concealed that Appliances Connection engaged in rampant falsification of customer records and illegal labor practices—practices they clearly knew about, since they were performed at their direction, but did not reveal. These allegations suffice to "place the defendants on notice of the precise misconduct with which they are charged." *In re Nortel Networks, Inc.*, 2011 WL 1102829, at *6 (Bankr. D. Del. Mar. 22, 2011).

The Complaint further alleges that this information was falsified or concealed in order to induce Polished to pay more for Appliances Connection than what it was actually worth, for Albert Fouerti's pecuniary benefit. *See id.* at ¶¶ 30, 35, 96. Allegations of malice, intent, and knowledge do not need to be pled with particularity, but can be alleged generally. FED. R. CIV. P. 9(b). In a fraud action, scienter "may be adequately alleged by setting forth facts establishing a motive and an opportunity to commit fraud." *Genesis Health, Inc.*, 355 B.R. at 459. The Fouertis founded and ran Appliances Connection, with Albert Fouerti serving as its CEO. *See* Compl. at ¶ 26. Falsely representing the finances and operations of Appliances Connection resulted in the concrete and personal benefit of a $180 million cash payment to Albert Fouerti—which is more than sufficient

to allege motive. *See, e.g.*, *Genesis Health, Inc.*, 355 B.R. at 459-60 (allegations that CFO falsified financial statements to obtain a lucrative compensation package sufficiently alleged scienter).

Finally, Polished relied on these misrepresentations and omissions, as demonstrated by its payment for Appliances Connection when the Merger closed, and that reliance caused damages to Polished because it materially overpaid. Damages may be alleged generally, and the allegation that Polished overpaid for Appliances Connection as a result of the Fouertis' fraud is sufficient to plead damages from fraud. *See Swipe Acquisition Corp. v. Krauss*, 2020 WL 5015863, at *9 (Del. Ch. Aug. 25, 2020).

### C. The Trustee's Aiding And Abetting Claims (Counts 4 and 5) Against the D&O Defendants Are Sufficiently Pled

The Complaint asserts claims against the D&O Defendants for aiding and abetting Albert Fouerti's breaches of fiduciary duty (Count 4) and his fraudulent conduct (Count 5). *See* Compl. at ¶¶ 116-125. Under Delaware law, aiding and abetting fraud claims require (i) underlying tortious conduct, (ii) knowledge on the part of the aider and abettor, and (iii) substantial assistance. *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *23 (Del. Ch. Nov. 26, 2014). Aiding and abetting breach of fiduciary duty claims require the same general elements: (1) existence of a fiduciary relationship, (2) breach of that duty by the primary wrongdoer, (3) defendants' knowing participation in that breach, and (4) damages resulting from the breach. *DSI Renal Holdings*, 574 B.R. at 474.[15] "Claims for aiding and abetting are fact intensive and ill-suited for disposition on the pleadings." *Clark v. Davenport*, 2019 WL 3230928, at *15 (Del. Ch. July 18, 2019).

---

[15] Aiding and abetting claims are generally subject to the pleading requirements of Rule 8(a), unless the underlying primary violations sound in fraud, triggering Rule 9(b). *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197-98 (D. Del. 2000).

The underlying breaches of fiduciary duty by Albert Fouerti are sufficiently alleged, as discussed above. With respect to his post-Merger fraudulent conduct, the Complaint alleges that he used the Debtor as a vehicle to defraud shareholders and creditors via fraudulent inventory practices (that resulted in false public filings) and forgery and alteration of customer records. In seeking dismissal of the aiding and abetting claims, the D&O Defendants argue that the Complaint does not plead their knowing participation or substantial assistance in Albert Fouerti's wrongdoing. These arguments are without merit.

**1. The Complaint Sufficiently Pleads Knowing Participation and Substantial Assistance**

"Knowing participation" exists when a party knows the other's conduct constituted a breach of fiduciary duty (or fraud) and gave "substantial assistance or encouragement" to the other in committing that wrongdoing. *In re Cred Inc.*, 658 B.R. 783, 793 (D. Del. 2024). Although the bar for ultimately proving scienter is high, at the pleading stage the Trustee "need only allege enough facts for the Court to be able to draw a reasonable inference that [the D&O Defendants] knowingly participated in [Albert Fouerti's] breach of [his] fiduciary duties." *In re Clarus Therapeutics Holdings, Inc.*, 2026 WL 97759, at *16 (Bankr. D. Del. Jan. 13, 2026). And, even under Rule 9(b), knowledge can be alleged generally. *See* FED. R. CIV. P. 9(b). Questions as to whether the D&O Defendants acted with scienter are factual determinations. *See New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 175 (Del. Ch. 2023).

The Complaint alleges that the D&O Defendants knew of Albert Fouerti's wrongful conduct, and provided substantial assistance by "facilitating Polished's fraudulent business and accounting practices and failing to take action to stop them, and providing financial cover and credibility in connection with Polished's business even though it was issuing false financial statements, defrauding customers and vendors, and violating labor, immigration, and tax laws."

Compl. at ¶¶ 117-18. These allegations are not merely conclusory; the Complaint alleges knowledge on the part of D&O Defendants as to several key issues. *See, e.g.*, *id.* at ¶¶ 49, 52 (Moore, Barry, and Johnson directly told about inventory practices causing financial misstatements); ¶¶ 69, 78(d) (illegal labor practices were common knowledge); *see also id.* at ¶ 58 (Elie Fouerti specifically directed employees to fraudulently alter customer records). The Trustee alleges more than merely passive awareness. In connection with the issuance of financial statements, for example, the D&O Defendants signed off on (and certified in the case of some Defendants) public filings which contained false financials and concealed illegal conduct. This type of behavior alleges, at the least, "reckless indifference" to whether they were facilitating a continued fraud upon shareholders and creditors and continued harm to Polished, which suffices to plead actual knowledge for purposes of aiding and abetting. *See Cred*, 658 B.R. at 793.

Finally, but for the D&O Defendants knowingly letting Albert Fouerti flout legal and regulatory requirements, the losses alleged in the Complaint would not have occurred. "Under Delaware law, but-for causation establishes proximate causation." *PMTS Liquidating*, 526 B.R. at 546.

**2. The Aiding and Abetting Breach of Fiduciary Duty Claim Is Not "Duplicative" or Impermissible at the Pleading Stage**

The D&O Defendants argue that the Trustee cannot assert his aiding and abetting breach of fiduciary duty claims against them because they were fiduciaries themselves. But this does not invalidate the claim at the motion to dismiss stage. While a fiduciary cannot aid and abet his own breach of fiduciary duty, he may still be held liable for aiding and abetting a breach by another fiduciary. *See DSI Renal Holdings*, 574 B.R. at 474. As the court explained in *DSI Renal Holdings*:

> While a corporate director owes the corporation fiduciary duties, in some instances those duties may be limited (by corporate charter

> or statute). Thus, the Court may find that a director had no fiduciary duty but aided and abetted a party that did.

*Id.* (quoting *Brown Schools*, 368 B.R. at 402-03). Here, the Director Defendants argue that they are shielded, at least in part, by exculpation clauses in the Debtors' certificates of incorporation. At this stage, "determination of the precise outer boundaries of each [Defendant's] fiduciary duties is premature" because, for example, the Court may ultimately determine that some defendants are "shielded by their exculpatory clauses, but liable for assisting" the breaches of others. *Id.* at 474-75; *see also In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 174-75 (Bankr. D. Del. 2019) (aiding and abetting claims may be pled in the alternative); *In re Our Alchemy, LLC*, 2019 WL 4447541, at *16 (Bankr. D. Del. Sept. 16, 2019) (same).

#### 3. The Intra-Corporate Conspiracy Doctrine Is Not a Basis for Dismissal of the Aiding and Abetting Fraud Claim

The D&O Defendants also argue that the aiding and abetting fraud claim should be dismissed pursuant to the "intra-corporate conspiracy doctrine." Dismissal on this basis is premature. The doctrine has been applied by courts in Delaware to dismiss conspiracy and aiding and abetting claims against directors and officers on the basis that they cannot conspire with the corporation for which they are agents, unless they are doing so for personal motives. *See, e.g.*, *WIA Holdings LLC v. Scot. Am. Cap. LLC*, 2026 WL 1204494, at *16-17 (Del. Ch. Jan. 20, 2026).[16] The exception applies "when a corporate officer steps out of her corporate role and acts pursuant to personal motives." *Id.* at *17. Defendants argue that "personal motives" has to mean self-dealing, but other courts have found that the doctrine also will not apply "where the agent's acts were not authorized by the corporation." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013). Here, there are factual questions as to whether facilitating fraud and illegal conduct

[16] The Trustee has not found a Delaware Supreme Court decision addressing the doctrine.

was "authorized" by Polished. Additionally, the Complaint does allege that Albert Fouerti—the individual who they were aiding and abetting—acted pursuant to personal motives at times. In sum, because there are factual questions as to whether an exception could apply, it would be premature to dismiss Count Five based on the intra-corporate conspiracy doctrine.

### D. The Complaint States Claims to Recover the $180 Million Transfer From Albert Fouerti

The Trustee asserts claims to avoid and recover the $180 million cash transfer made to Albert Fouerti as part of the Merger as a constructive fraudulent transfer under Sections 544 and 550 of the Bankruptcy Code and Sections 1304 and 1305 of the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), as well as a claim for unjust enrichment. *See* Compl. at ¶¶ 30, 32, 34-35, 126-38. In response, Albert Fouerti largely raises factual disputes which are not ripe for determination at the pleading stage. His motion should be denied.

#### 1. The $180 Million Transfer Can Be Avoided and Recovered As A Constructive Fraudulent Transfer (Counts 7 and 8)

Section 544 of the Bankruptcy Code allows the Trustee to step into a creditor's shoes in order to assert claims under state fraudulent transfer statutes such as DUFTA, for the benefit of all the estate's creditors. *See* 11 U.S.C. § 544(b)(1). A transfer is constructively fraudulent when the debtor received less than reasonably equivalent value in exchange for the transfer, and was insolvent at the time of the transfer or rendered insolvent as a result. *See* 6 Del. C. §§ 1304(a)(2) & 1305(a).[17]

---

[17] Constructive fraudulent transfer claims are subject to the pleading standards of Rule 8(a). *See In re Cred Inc.*, 650 B.R. 803, 835 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024).

**a. The Complaint Sufficiently Pleads Insolvency**

The burden to plead insolvency is not onerous. *In re FAH Liquidating Corp.*, 572 B.R. 117, 128 (Bankr. D. Del. 2017) (as long as a complaint provides enough information "to raise a reasonable expectation that discovery will reveal evidence of" insolvency, that is sufficient at the pleading stage) (quoting *Twombly*, 550 U.S. at 556). The Trustee alleges that Polished was insolvent or rendered insolvent as a result of the $180 million transfer made in connection with the Merger. Compl. at ¶ 131. Polished overpaid substantially in the transaction, and Appliances Connection was not actually a profitable business (despite what its false and inflated financials stated). *See id.* at ¶ 35. Polished continually struggled following the Merger, in large part due to being burdened by the fraudulent and illegal business practices imported from Appliances Connection, and never recovered. These are a sufficient basis from which the Court can reasonably infer that discovery will reveal evidence of insolvency as a result of the Merger. *See In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 858-59 (Bankr. D. Del. 2018); *In re Glencoe Acquisition, Inc.*, 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015). Albert Fouerti argues that Polished's struggles occurred "years" after the Merger, but that merely raises factual questions concerning the cause and timing of insolvency. Nor are facts concerning Polished's capital raise in June 2021 dispositive, given the Trustee's allegations that Polished was making false and misleading statements to the public during that time period. *See* Compl. at ¶¶ 31, 40. It is well established that the fact-intensive insolvency analysis does not lend itself to determination at the motion to dismiss stage. *See FAH Liquidating*, 572 B.R. at 128 ("Insolvency is a factual inquiry that often evades determination at the motion to dismiss stage."); *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 459 (Bankr. D. Del. 2018).

**b. The Complaint Sufficiently Pleads Lack of Reasonably Equivalent Value**

Reasonably equivalent value is determined by looking to the totality of the circumstances, including: "(1) the 'fair market value' of the benefit received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the debtor and the transferee,' and (3) the transferee's good faith." *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 213 (3d Cir. 2006) (quoting *In re R.M.L., Inc.*, 92 F.3d 139, 148-49 (3d Cir. 1996)). Whether a debtor received reasonably equivalent value for an allegedly fraudulent transfer is a factual inquiry ordinarily "not suitable for determination on a motion to dismiss." *In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747, 760 (Bankr. D. Del. 2007); *see also In re Charys Holding Co., Inc.*, 443 B.R. 628, 637-38 (Bankr. D. Del. 2010) (value determinations are "inherently fact driven" and "typically require[] testing through the discovery process").

The Complaint alleges: "Polished did not receive reasonably equivalent value in exchange for the Transfer because the purchase price paid for Appliances Connection substantially exceeded the fair market value of the company and was substantially inflated by false financials and the concealed violations of law which infected its operations." Compl. at ¶ 133; *see also, e.g.*, *id.* at ¶ 35 (Appliances Connection's fraudulent business and accounting practices "resulted in falsified financial statements which showed Appliances Connection to be profitable and valuable when it was not," which in turn caused Polished to materially overpay to purchase Appliances Connection); *id.* at ¶ 48 (". . .[Appliances Connection's] ledger and . . . balance sheet . . . were materially false and overstated inventory by approximately 1,200 pieces, which material falsity and overstatement existed pre-Merger."). This is more than sufficient to allege lack of reasonably equivalent value. *See In re Our Alchemy, LLC*, 2019 WL 4447545, at *7 (Bankr. D. Del. Sept. 16,

2019) (allegations of inflated purchase price, problems with seller's business, and debtor's distress after transaction sufficiently pled lack of reasonably equivalent value).

Albert Fouerti raises only factual disputes in response. He argues it was an arm's-length transaction and that facts relating to the capital raise and the Board's approval prove the existence of reasonably equivalent value, but those are merely factual disputes not ripe for determination at the pleading stage. Nor are any of those issues dispositive of whether or not reasonably equivalent value exists, particularly under the Third Circuit's totality of the circumstances analysis. The cases cited by Albert Fouerti do not establish otherwise—in *In re Endo Int'l PLC*, 2026 WL 1534328, at *9-10 (Bankr. S.D.N.Y. May 29, 2026), the court found that, even though the allegation about lack of an arm's-length relationship was implausible and unsupported, the plaintiff sufficiently pled other facts from which a reasonable factfinder, looking at the totality of circumstances, could conclude that the debtor materially overpaid in the merger transaction. And, in *In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015), the transfers involved payments on antecedent debt and the plaintiff did not allege any facts at all to suggest lack of reasonably equivalent value.[18] Neither of these cases state that an arm's-length relationship is dispositive on the issue of reasonably equivalent value—instead, they both make clear it is just one of many factors to be considered.

**c. The Complaint Sufficiently Alleges a Triggering Creditor Under Section 544**

Section 544 provides "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is

[18] The court's comment about "fail[ing] to rebut the presumption that the Acquisition was negotiated at arm's length" was a comment on the complaint's total lack of allegations about the negotiations that led up to the acquisition, *not* a statement that such allegations are required or dispositive for the issue of reasonably equivalent value. *Vivaro*, 524 B.R. at 556.

allowable under section 502 of [the Bankruptcy Code]." 11 U.S.C. § 544(b)(1). Under this provision, a creditor (often known as the "triggering creditor") holding an allowable unsecured claim as of the petition date must exist for the Trustee to have standing. *See In re DBSI, Inc.*, 477 B.R. 504, 512-13 (Bankr. D. Del. 2012) ("Section 544(b) of the Bankruptcy Code permits the trustee to step into the shoes of an existing unsecured creditor who could have avoided an action under state law.").

Here, the Trustee seeks to avoid the Transfers under Sections 1304(a) and 1305(a) of DUFTA. Section 1305(a) permits avoidance of transfers as to present creditors, *i.e.*, "a creditor whose claim arose before the transfer was made." 6 Del. C. § 1305(a). Section 1304(a) permits avoidance of transfers as to present <u>and</u> future creditors, *i.e.*, "whether the creditor's claim arose before or after the transfer was made." 6 Del. C. § 1304(a).

At this stage, the Trustee is not required to identify a specific unsecured creditor by name, address, or telephone number, even under heightened pleading standards. *See In re Pitt Penn Holding Co., Inc.*, 2011 WL 4352373, at *12 (Bankr. D. Del. Sept. 16, 2011); *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 301 (D. Del. 2012). As long as a complaint sets forth "sufficient information to outline the elements of the claim or to permit inferences to be drawn that these elements exist," this will be sufficient. *In re APF Co.*, 274 B.R. 634, 639 (Bankr. D. Del. 2001).

The Trustee's allegation that Polished had at least one creditor prior to making the transfer, Compl. at ¶ 131, coupled with his numerous other allegations concerning vendors and other creditors that Polished had during the course of its business, is sufficient information from which the Court can plausibly infer that at least one triggering creditor existed at the time of the transfer for purposes of Section 1305(a), and either at the time of or after the transfer for purposes of

Section 1304(a). *See, e.g.*, *id.* at ¶¶ 47, 58, 64 (allegations demonstrating the existence of numerous categories of creditors, including vendors with damage claims, customers owed refunds, and taxing authorities); *see also Appleseed's Intermediate*, 470 B.R. at 301 (allegations that vendors, landlords, suppliers, and lenders existed was sufficient; plaintiff did not need to identify a creditor by name).

Moreover, Polished's public filings make clear that it had numerous unsecured creditors at the time of the Merger. For example, the SPO Registration Statement filed May 3, 2021, which is referenced in the Complaint (¶ 40(c)) and attached to the Fouertis' brief, references, *inter alia*, obligations owed under a management services agreement, lease agreements, vendor relationships, and accounts payable (including $5.9 million in trade debt). *See, e.g.*, D.I. 18-1 (Musgrave Decl.) at Exhibit 1, pp. 52, 61, F-22, F-27-29, F-33.

The case on which Albert Fouerti relies, *In re Liquid Holdings Group, Inc.*, is distinguishable. *See* Case No. 17-50662-KG (Bankr. D. Del.), D.I. No. 157, Memorandum Order dated Sept. 4, 2018.[19] While the court in *Liquid Holdings* did find that more detailed allegations concerning a triggering creditor were needed, the transfers being challenged in that case were the formative transactions for several subsidiaries of the debtor Liquid, a holding company with minimal business operations at the time. *See* 2018 WL 2759301, at *1, *17 (summarizing allegations that Liquid was created as a holding company and went on an acquisition spree to grow the company in hopes of consummating an IPO). That is not comparable to the situation here, where Polished and Appliances Connection both had ongoing customer-facing business operations (and the vendors, landlords, and other creditors that go along with that) at the time of the Merger.

[19] The September 4, 2018 *Liquid Holdings* decision cited by Albert Fouerti is not available on Westlaw. That decision is the court's reconsideration of its earlier decision addressing the defendants' motions to dismiss, *see* 2018 WL 2759301 (Bankr. D. Del. June 6, 2018).

Even if a court could not infer the existence of a creditor when a company is first formed (as in *Liquid*), it certainly can reasonably infer that an established, operating business such as Polished had at least one creditor holding an allowable unsecured claim.

**d. Plaintiff's Claim for Recovery of the Avoided Transfers Under § 550 Also States a Claim for Relief**

Because the Complaint adequately states an avoidance claim under DUFTA and 11 U.S.C. § 544, Plaintiff's claim for recovery of the avoided transfer under 11 U.S.C. § 550 also states a claim. *See* Compl. at ¶ 136 (Count Eight). The only basis for dismissal of Count Eight raised by Albert Fouerti is that, since the avoidance claim fails, the § 550 claim fails too. *See* D.I. 18 at 17. As explained above, however, the avoidance claim is sufficiently stated; accordingly, the claim for recovery under § 550 claim should survive as well. *See In re Ritz Camera & Image, LLC*, 2014 WL 432192, at *3 (Bankr. D. Del. Feb. 4, 2014) ("Where a party's only basis for dismissing the complaint for recovery of payments under 11 U.S.C. § 550 is the dismissal of the underlying claim, it is proper to rule on the Section 550 claim in the same manner as the underlying claim."); *In re Wash. Mut., Inc.*, 2013 WL 3757330, at *6 (Bankr. D. Del. July 16, 2013) (denying motion to dismiss count for recovery where the court declined to dismiss related avoidance count).

**2. The Complaint States a Claim for Unjust Enrichment (Count 6)**

An unjust enrichment claim has five elements: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

The Complaint pleads these elements. The Trustee alleges that Albert Fouerti was enriched in the amount of $180 million, at the expense of Polished and its creditors. The payment was made by Polished to acquire Appliances Connection in the Merger, but was without justification because the purchase price substantially exceeded the fair market value of Appliances Connection, due to

being inflated by false financials and the concealed violations of law which infected its operations. Given Albert Fouerti's receipt of the payment through fraud and deceit, it would be unjust for him to retain it.

It is "entirely acceptable" to pursue alternative theories at the pleading stage. *FAH Liquidating*, 572 B.R. at 131. The Court may ultimately determine that unjust enrichment does not apply to the $180 million transfer made to Albert Fouerti, either because it is covered by fraudulent transfer law or for some other reason. But this is no cause to dismiss the claim at this stage of the proceedings. As this Court has held, a claim for unjust enrichment should survive a motion to dismiss where it is plausible that the plaintiff would otherwise be left without a remedy at law. *See id.* (citing *In re Green Field Energy Servs., Inc.*, 2015 WL 5146161, at *10 (Bankr. D. Del. Aug. 31, 2015)); *see also Our Alchemy*, 2019 WL 4447545, at *11 (denying motion to dismiss unjust enrichment claim because, *inter alia*, it was plausible the trustee would be left without an adequate remedy at law if his fraudulent transfer claims ultimately failed). The unjust enrichment claim should thus survive at this stage.

### E. In the Alternative, If the Court Determines That Dismissal of Any Claims Is Warranted, Leave to Amend Should be Granted

Federal Rule of Civil Procedure 15(a)(2), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015, provides that leave to amend should be granted freely. *See* FED. R. CIV. P. 15(a)(2). The decision whether to grant or deny leave to amend rests within the court's discretion, but "[t]he Third Circuit has adopted a liberal approach to the amendment of pleadings." *Arneault v. Diamondhead Casino Corp.*, 277 F. Supp. 3d 671, 674 (D. Del. 2017); *see also Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). Leave to amend should be denied only when "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment

would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Otherwise, leave to amend should be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).

The Trustee alternatively seeks leave to amend, in the event that the Court determines any of his claims are insufficiently stated. In such event, the Trustee anticipates amending his Complaint to, if necessary, remedy any deficiencies identified by the Court in its ruling on Defendants' Motions. Granting leave to amend for this purpose is appropriate and accords with the Third Circuit's liberal approach to the amendment of pleadings. *See Total Containment*, 335 B.R. at 601 (leave to amend, rather than dismissal, is ordinarily appropriate, unless repleading could not correct the defects in the claim).

None of the grounds for denying leave to amend exist here. There has been no undue delay. Courts typically find undue delay in situations where a party seeks leave to amend at a late stage in the case when interests in judicial economy, finality of judgments, and prejudice are implicated. *See, e.g.*, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (plaintiff waited until after summary judgment had been granted to adverse party); *Del. Display Group LLC v. Lenovo Group Ltd.*, 2016 WL 720977, at *9 (D. Del. Feb. 23, 2016) (plaintiffs "intentional[ly] . . . wait[ed] until the last moment," when discovery was closed, to seek leave to add a new theory of liability). Such is obviously not the case here, where the case is still in the pleading stage. *See Teamsters Local 456 Pension Fund v. Universal Health Servs.*, 2020 WL 2063474, at *10 (E.D. Pa. Apr. 29, 2020) (no undue delay, bad faith, or dilatory motive where party promptly sought leave to amend following Court's ruling on Rule 12(b)(6) motion); *In re Tweeter Opco*, 452 B.R. 150, 155 (Bankr. D. Del. 2011) (alternatively seeking leave to amend in opposition to motion to dismiss was procedurally acceptable).

Nor will the Defendants be prejudiced. The Trustee's amendments would simply correct any pleading deficiencies in his claims while the case is still in an early stage, before any discovery has been conducted. This would not create any unfair disadvantage or deprive Defendants of an opportunity to obtain or present facts or evidence relating to Plaintiff's allegations. *See Dole*, 921 F.2d at 488; *Comba Telecom, Inc. v. Andrew, L.L.C.*, 2013 WL 12409853, at *2 n. 5 (D. Del. Mar. 8, 2013) (finding no prejudice where case was in early procedural posture and discovery had not begun).

Finally, amendment would not be futile because the Trustee would be amending for the purpose of correcting any deficiencies identified by the Court in its eventual ruling on the Motions. The futility analysis looks at whether a proposed amendment would survive a motion to dismiss, so the Trustee's correction of deficiencies which would enable his claims to survive such a motion plainly would not be futile. *See In re PMTS Liquidating Corp.*, 490 B.R. 174, 184 (D. Del. 2013); 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper."). The Court should therefore grant the Trustee leave to amend as to any claim determined to have been insufficiently pled. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (curative amendment should generally be permitted).

## VI. CONCLUSION

In light of the foregoing facts and authorities, the Motions should be denied.

Dated: July 31, 2026
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*___________________
Bradford J. Sandler, Esq. (DE Bar No. 4142)
Peter J. Keane, Esq. (DE Bar No. 5503)
919 N. Market St., 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Tel: (302) 652-4100
Fax: (302) 652-4400
bsandler@pszjlaw.com
pkeane@pszjlaw.com

-and-

**COREN & RESS, P.C.**
Steven M. Coren, Esq. *(pro hac vice)*
Benjamin M. Mather, Esq. *(pro hac vice)*
Janice D. Felix, Esq. *(pro hac vice)*
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
bmather@kcr-law.com
jfelix@kcr-law.com

*Counsel for Plaintiff*
*George L. Miller, Chapter 7 Trustee*