**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>POLISHED.COM INC., *et al.*,<br><br>Debtors. | Chapter 7<br><br>Case No. 24-10353 (TMH)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Polished.com Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALBERT FOUERTI; MARIA JOHNSON; DOUGLAS T. MOORE; ELLERY W. ROBERTS; ROBERT BARRY; ELLETTE A. ANDERSON; CLARK R. CROSNOE; GLYN C. MILBURN; ALAN P. SHOR; EDWARD J. TOBIN; G. ALLAN SHAW; JAMES SCHNEIDER; and ELIE FOUERTI,<br><br>Defendants. | Adv. Pro. No. 26-50213 (TMH)<br><br>**Re: Adv. D.I. 1** |

**REPLY IN SUPPORT OF DEFENDANT MARIA JOHNSON'S MOTION TO DISMISS COUNTS 3, 4, AND 5 OF THE COMPLAINT**

Dated: August 28, 2026

BAKER & HOSTETLER LLP
Jeremy D. Anderson (#4515)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jdanderson@bakerlaw.com
*Attorneys for Defendant Maria Johnson*

Douglas W. Greene (admitted *pro hac vice*)
Zachary R. Taylor (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

# TABLE OF CONTENTS

**Page**


ARGUMENT ..... 2

I. The Trustee Misstates the Applicable Pleading Standards. ..... 2

- A. The Fiduciary Duty Claims Sound in Fraud and Are Subject to Rule 9(b). ..... 2
- B. The Trustee Relies on Improper Group Pleading. ..... 3

II. The Trustee Fails to Plead That Ms. Johnson Breached Any Fiduciary Duty. ..... 4

- A. The Fiduciary Duty Claim Against Ms. Johnson Is Limited in Scope. ..... 4
- B. Ms. Johnson Did Not Breach Any Fiduciary Duty with Respect to the Company's Financial Statements. ..... 5
- C. Ms. Johnson Did Not Breach Any Fiduciary Duty with Respect to Alleged Violations of Tax Law. ..... 10
- D. There Are No Facts Showing That Ms. Johnson Knew About or Was Engaged in the Employment of Undocumented Workers. ..... 11

III. The Aiding and Abetting Breach of Fiduciary Duty Claim Fails as a Matter of Law. ..... 13

- A. The Trustee Fails to Plead Knowledge. ..... 13
- B. The Trustee Fails to Plead Substantial Assistance. ..... 14

IV. The Trustee Does Not Assert Count 5 Against Ms. Johnson. ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abira Med. Lab'ys, LLC v. Freedom Life Ins. Co. of Am.*,
2025 WL 66687 (E.D. Pa. Jan. 10, 2025) ....... 5

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ....... 9

*Buckley v. O'Hanlon*,
2007 WL 956947 (D. Del. Mar. 28, 2007) ....... 3

*Caspian Select Credit Master Fund Ltd. v. Gohl*,
2015 WL 5718592 (Del. Ch. Sept. 28, 2015) ....... 13

*Colotone Liquidating Tr. v. Bankers Tr. New York Corp.*,
243 B.R. 620 (S.D.N.Y. 2000) ....... 10

*In re Cred Inc.*,
658 B.R. 783 (D. Del. 2024) ....... 3

*In re Delaware Valley Lift Truck Inc.*,
640 B.R. 342 (Bankr. E.D. Pa. 2022) ....... 1

*Eden Alpha CI LLP v. Polished.com Inc.*,
2026 WL 673462 (E.D.N.Y. Mar. 10, 2026) ....... 7, 9, 14

*Eden Alpha CI LLP v. Polished.com Inc.*,
763 F. Supp. 3d 270 (E.D.N.Y. 2025) ....... 9

*Ford v. Voxx Int'l Corp.*,
2016 WL 3982466 (E.D.N.Y. July 22, 2016) ....... 7

*In re Genesis Health Ventures, Inc.*,
355 B.R. 438 (Bankr. D. Del. 2006) ....... 4

*Green v. Paz*,
2021 WL 11661345 (D. Del. Mar. 31, 2021) ....... 10

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003) ....... 13

*In re Liquid Holdings Grp., Inc.*,
2018 WL 2759301 (Bankr. D. Del. June 6, 2018) ....... 3

*In re McDonald's Corp. S'holder Derivative Litig.*,
289 A.3d 343 (Del. Ch. 2023)....12

*In re Midway Games Inc.*,
428 B.R. 303 (Bankr. D. Del. 2010)....10

*In re Mindbody, Inc., S'holder Litig.*,
332 A.3d 349 (Del. 2024)....15

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)....8

*In re Our Alchemy, LLC*,
2019 WL 4447541 (Bankr. D. Del. Sept. 16, 2019)....8

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997)....8

*Segway Inc. v. Cai*,
349 A.3d 628 (Del. Ch. 2023)....11, 13

*Shaw v. New Castle Cnty.*,
2021 WL 4125648 (D. Del. Sept. 9, 2021)....5

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P*,
2006 WL 4782378 (Del. Ch. Aug. 10, 2006)....15

*In re UBS AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)....6

*In re Ultimate Escapes Holdings, LLC*,
551 B.R. 749 (D. Del. 2016)....8

*VNB Realty, Inc. v. Bank of Am. Corp.*,
2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)....6

*In re Walmart Inc. Sec. Litig.*,
2024 WL 1513532 (D. Del. Apr. 8, 2024)....7

*Wells Fargo & Co. v. First Interstate Bancorp*,
1996 WL 32169 (Del. Ch. Jan. 18, 1996)....14

**Statutes**

Private Securities Litigation Reform Act of 1995....6

**Rules**

Fed. R. Bankr. P. 9011....1

Fed. R. Civ. P. 8(a) ....................................................................................................1, 2, 3, 7

Fed. R. Civ. P. 9(b) ....................................................................................................1, 2, 3, 7

Fed. R. Civ. P. 11 ...........................................................................................................1, 6

The Trustee's Opposition clearly demonstrates that it has no factual support for its claims against Ms. Johnson. In her Motion to Dismiss ("MTD"; ECF 21), Ms. Johnson raised the fact that the Trustee's allegations against her are entirely derived from copy-paste (and sometimes incorrect summaries of) allegations in two separate complaints in unrelated actions, and that the Trustee has not conducted any independent investigation of the factual bases for those allegations. MTD 1. In its Opposition, the Trustee does not dispute this and thus concedes it. Having failed to put in any legwork of its own to verify the allegations, the Trustee cannot properly certify under Federal Rule 11 and Bankruptcy Rule 9011 that its allegations have, or are likely to have, any evidentiary support. *In re Delaware Valley Lift Truck Inc.*, 640 B.R. 342, 360-61 (Bankr. E.D. Pa. 2022). Dismissal is warranted on these grounds alone. Regardless, the sparse allegations against Ms. Johnson do not support any claim against her for at least the following reasons:

***The Allegations Fail to Satisfy the Applicable Pleading Standards***. The Trustee argues that its claims are subject to the notice pleading standards of Rule 8(a) and that group pleading against all twelve Director and Officer ("D&O") Defendants is appropriate. Not so. The Trustee's claims are framed in terms of fraud and are thus subject to Rule 9(b). And without any facts demonstrating how Ms. Johnson had any role in the alleged misconduct, the improper group pleading allegations must be rejected. Regardless, the Trustee's claims also fail under Rule 8(a).

***The Trustee's Fiduciary Duty Claim Is Limited in Scope and Fails to State a Claim***. The Opposition makes clear that the Trustee's claim against Ms. Johnson for breach of fiduciary duty is limited to the allegations that she: (1) was "[r]epeatedly informed of problems with inventory management system but took no action"; (2) "[m]ade knowingly false SOX certifications"; (3) "[k]new Polished was not in compliance with sales and use tax obligations but took no action"; and (4) "[k]new Polished was employing undocumented workers but took no action." Opp. 26.

However, the Trustee fails to plead that Ms. Johnson was aware of or involved in any alleged inventory management issues, or any alleged violations of tax or immigration laws. Nor does the Trustee plead any facts showing that Ms. Johnson made any false or misleading statement, much less intentionally or with gross negligence. Moreover, the Trustee does not have standing to assert claims for the alleged violations, particularly where, as here, the Trustee has failed to demonstrate any harm to the Company. MTD 2; Fouerti MTD (ECF 18) 23-24.

***The Aiding and Abetting Fiduciary Duty Claim Fails***. Because Ms. Johnson was herself a fiduciary, any aiding and abetting claim cannot be asserted against her as a matter of law. Regardless, the aiding and abetting claim relies on the same allegations as the fiduciary duty claim and fails for the same reasons. Moreover, the Complaint pleads no facts showing that Ms. Johnson knowingly or substantially assisted in any of Mr. Fouerti's alleged breaches of fiduciary duty.

***The Aiding and Abetting Fraud Claim Is Not Asserted Against Ms. Johnson, and Otherwise Fails***. In the Opposition, the Trustee makes clear that its underlying fraud claim relates solely to Mr. Fouerti's actions in connection with the merger between Goedeker and Appliances Connection, which occurred before Ms. Johnson joined the Company. Opp. 31. Ms. Johnson thus did not play any role in that underlying alleged fraud. To the extent the Trustee may be arguing that this claim relates to the allegedly false financial statements (it is not), any such claim fails.

For the reasons explained in the MTD and here, Ms. Johnson respectfully requests that the Court dismiss the claims against her (Counts 3, 4, and 5), with prejudice.

## ARGUMENT

### I. <u>The Trustee Misstates the Applicable Pleading Standards.</u>

#### A. The Fiduciary Duty Claims Sound in Fraud and Are Subject to Rule 9(b).

The Trustee claims that its fiduciary duty claims (Counts 3 and 4) are subject to the notice pleading requirements under Rule 8(a). Opp. 15-16 & n.6. Not so. It is well-established that claims,

including fiduciary duty claims, that "sound in fraud" are subject to Rule 9(b). MTD 12; Opp. 15. Here, the Trustee explicitly frames the fiduciary duty claims against Ms. Johnson in terms of fraud. MTD 12; Opp. 26 (alleging the D&O Defendants "were aware of fraudulent or illegal business practices being engaged in at Polished"); *id.* 35 (the D&O Defendants' allegedly "facilitat[ed] a continued fraud upon shareholders and creditors and continued harm to Polished"). Accordingly, all of the Trustee's claims against Ms. Johnson are subject to the heightened pleading standards of Rule 9(b). MTD 12; *In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, *16 (Bankr. D. Del. June 6, 2018) (applying Rule 9(b) to fiduciary duty claims).

Regardless, the Trustee's claims against Ms. Johnson fail even under Rule 8(a) because they are based entirely on "conclusory statements, statements of law, [and] unwarranted inferences cast as factual allegations." *In re Cred Inc.*, 658 B.R. 783, 792-93 (D. Del. 2024).

**B. The Trustee Relies on Improper Group Pleading.**

The Trustee does not dispute that fiduciary duty allegations that "lump[] all of the Individual Defendants as 'Officers and Directors'" are insufficient to state a claim. MTD 15-16. Instead, the Trustee argues that such group pleading is warranted here because Defendants allegedly "collectively engaged in" the alleged wrongdoing. Opp. 28. But the Trustee does not identify any facts demonstrating any such collective action. There are no facts showing that Ms. Johnson, for instance, "collectively engaged" with the other eleven D&O Defendants (some of whom were no longer at the Company) with respect to, among other things, inventory management or the employment of undocumented workers. *See, e.g.*, Compl. ¶¶56, 57, 59, 69. That the Trustee is unable to identify which defendants engaged in which misconduct does not warrant the Court's acceptance of the Trustee's collective action theory here.

The Trustee's cited authorities are inapposite. In *Buckley v. O'Hanlon*, 2007 WL 956947, *5 (D. Del. Mar. 28, 2007), the court found that the plaintiff's use of categories of "small[] groups"

of directors and officers was warranted because they were members of the specific "committees and boards" who made the decisions at issue in the case. Similarly, in *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 457 (Bankr. D. Del. 2006), the court credited plaintiffs' "several" references to the "defendants" because they were all members of the steering committee which was responsible for the alleged misconduct, and because the plaintiffs had "identified the roles of the different defendants within the alleged scheme and made enough individualized allegations."

Here, by contrast, the Trustee asserts that all twelve D&O Defendants were aware of and participated in various forms of misconduct ranging from false SEC filings, to employing undocumented workers, to overseeing workplace violations, to defrauding customers and vendors. MTD 15-16; Opp. 3, 8-10. It is not remotely credible that all D&O Defendants were aware of or collectively engaged in these sweeping categories of alleged wrongdoing. Nor does the Trustee otherwise "identif[y] the roles of the different defendants within the alleged scheme" or supply any other "individualized allegations" against Ms. Johnson with respect to any purported collective action. *Genesis*, 355 B.R. at 457. Accordingly, the Court should reject the Trustee's improper group pleading allegations and dismiss on this basis. MTD 15-17.

## II. <u>The Trustee Fails to Plead That Ms. Johnson Breached Any Fiduciary Duty.</u>

### A. The Fiduciary Duty Claim Against Ms. Johnson Is Limited in Scope.

In the Complaint, the Trustee alleged that the D&O Defendants breached their fiduciary duties by "knowingly facilitat[ing] and/or fail[ing] to prevent Polished from issuing false financial statements, defrauding customers and vendors, and violating labor, immigration, and tax laws." Compl. ¶114. The Opposition, however, has narrowed this claim as against Ms. Johnson.

Ms. Johnson's MTD argued that the Trustee failed to plead any facts showing that she was in any way involved in, among other things, "defrauding customers and vendors" or violating labor

laws.[1] MTD 18. The Opposition effectively concedes this, arguing only that Ms. Johnson breached her fiduciary duties in connection with (i) inventory management and public statements about Polished's inventory valuation, (ii) SOX certifications, (iii) tax obligations, and (iv) the alleged employment of undocumented workers. Opp. 26. Accordingly, the Trustee has abandoned any claim that Ms. Johnson breached her fiduciary duties by allegedly defrauding customers and vendors or violating labor laws, or by failing to prevent others from doing so. *See Shaw v. New Castle Cnty.*, 2021 WL 4125648, *2 (D. Del. Sept. 9, 2021) ("failure to address … arguments for dismissal of the remaining claims constitutes abandonment of those claims").

Similarly, the MTD argued that Ms. Johnson cannot be liable for any claim premised on financial statements she did not sign or otherwise have any role in preparing. MTD 18-19. The Trustee does not dispute this either, and thus concedes it. *Abira Med. Lab'ys, LLC v. Freedom Life Ins. Co. of Am.*, 2025 WL 66687, *10 (E.D. Pa. Jan. 10, 2025) ("Plaintiffs' failure to respond at all to [Defendant's] arguments for dismissal . . . will be read as a concession of those arguments").

As a result, the only remaining breach of fiduciary duty claims against Ms. Johnson are: (1) that she was allegedly responsible for allegedly false or misleading inventory statements and SOX certifications in the Q2 and Q3 2021 Form 10-Qs, the 2021 Form 10-K, and the 2022 Q2 Form 10-Q; (2) that she allegedly failed to prevent alleged violations of tax laws; and (3) that she allegedly failed to prevent the Company's employment of undocumented workers.

**B. Ms. Johnson Did Not Breach Any Fiduciary Duty with Respect to the Company's Financial Statements.**

The Trustee does not dispute that its claims against Ms. Johnson with respect to the financial statements are entirely derived from unverified allegations in the Second Amended

[1] The alleged violations of "labor laws" in the Securities Class Action and here relate to "safety laws and regulations" as well as "violations of minimum wage, workers compensation and overtime laws." Compl. ¶78.

Complaint in the Securities Class Action ("SAC"), which was dismissed with prejudice.[2] *Supra* 1. Against this backdrop, the Trustee is forced to urge the Court to ignore the Securities Class Action dismissal entirely. The Trustee's sole argument to this effect is that the fiduciary duty claims asserted here are not subject to the pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("Reform Act"), and therefore the Trustee is entitled to reassert them here hoping that they are sufficient to survive under a less rigorous pleading standard. Opp. 15-17.

Based on this reasoning, the Trustee beseeches the Court to, among other things, credit here the discredited anonymous former employee ("FE") allegations in the Securities Class Action, and conclude that the challenged financial statements found not to be false in the Securities Class Action, are nonetheless false here. *Id.* This argument fails, and the Trustee cannot otherwise establish that Ms. Johnson breached any fiduciary duty.

***The Trustee's Unverified Allegations Must Be Rejected***. Because the Trustee copy-pasted the allegations from the SAC without performing any independent investigation of them, the Trustee has not legitimately certified that they are supported by any factual basis. *Supra* 1; *see also VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, *7 (S.D.N.Y. Sept. 16, 2013) ("By drawing its factual allegations from the statements of confidential witnesses in AIG's complaint, [plaintiff] is attempting to rely on the substance of those allegations without being held responsible for certifying that they are supported by some factual basis . . . Such reliance is impermissible, particularly in light of counsel's 'personal, non-delegable responsibility' under Rule 11 to 'validate the truth and legal reasonableness of the papers filed.'"). This alone is sufficient grounds for dismissal. *See, e.g., In re UBS AG Sec. Litig.*, 2012 WL 4471265, *17 (S.D.N.Y. Sept. 28, 2012)

---

[2] The stockholder derivative actions the Trustee relies on, which piggybacked on the Securities Class Action, were also dismissed. MTD 11.

("[T]he Court [] need not consider parroted allegations for which counsel has not conducted independent investigation[.]") (citing Rule 11); *see also* Fouerti MTD 17-19.

***The Trustee Fails to Plead Any False or Misleading Statement Under Rule 9(b) or Rule 8(a)***. Whether or not the Reform Act governed the claims in the Securities Class Action, the District Court also concluded that the SAC failed to plead falsity with respect to the Q2 and Q3 2021 Form 10-Qs and Ms. Johnson's SOX certifications under Rule 9(b). *Eden Alpha CI LLP v. Polished.com Inc.*, 2026 WL 673462, *3 (E.D.N.Y. Mar. 10, 2026) (analyzing falsity under both Rule 9(b) and the Reform Act); *see also In re Walmart Inc. Sec. Litig.*, 2024 WL 1513532, *6 (D. Del. Apr. 8, 2024) (Reform Act's pleading standard for falsity "echoes precisely Rule 9(b)"); *Ford v. Voxx Int'l Corp.*, 2016 WL 3982466, *5–7 (E.D.N.Y. July 22, 2016) (rejecting CW allegations under Rule 9(b)). Accordingly, the District Court's well-reasoned conclusion that the SAC failed to plead falsity with respect to these statements under Rule 9(b) compels the same result here.

Even under Rule 8(a), the FE allegations do not support that the inventory statements or SOX certifications were false or misleading. To support falsity, the Trustee primarily argues that the Court should credit the allegations of FE1—who alleged that 1,200 unspecified appliances were missing from one Polished warehouse at some point in time in June 2021—and infer both that: (1) such quantity was material to Polished's overall inventory; and (2) resulted in an overstatement of the Company's inventory valuation in its financial statements. Opp. 17.

As explained in the MTD, there are no facts demonstrating FE1 was "in a position to know": if his isolated manual hand-count of inventory in one Polished warehouse in June 2021 was accurate; what the value of the 1,200 pieces was; what the value of the Company's overall inventory was; whether these 1,200 allegedly missing pieces would have been material in the context of the Company's overall inventory; or whether the 1,200 pieces were missing at the time

of the Company's financial statements. MTD 21. Nor does FE1, or the Trustee, identify any specific inventory statement that is alleged to have been false or misleading, or explain how the allegedly missing 1,200 pieces rendered Ms. Johnson's SOX certifications false or misleading. *Id.*

In these circumstances, the Court should not accept as true FE1's "bald" and unverified assertion that the allegedly missing 1,200 pieces were missing at all, or that they were missing at the time of the challenged statements. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("a court need not credit a complaint's 'bald assertions' . . . when deciding a motion to dismiss"). Nor should the Court accept FE1's "unsupported conclusions and unwarranted inferences" that the allegedly missing 1,200 pieces were material to Polished's overall inventory, that they resulted in the Company's financial statements being materially false or misleading, or that FE1's allegations demonstrate any deficiency in Polished's internal controls over financial reporting (SOX certifications). *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

***The Trustee Fails to Plead Gross Negligence or Bad Faith***. While it is true that the Reform Act imposes a stricter pleading standard for scienter than applies to claims for breach of the duty of care (gross negligence) or the duty of loyalty (intentional misconduct/bad faith), the Trustee must still point to "'sufficient facts to support a reasonable inference' that" the defendant's actions constituted "a breach of [defendant's] duty of loyalty or duty of care." *In re Ultimate Escapes Holdings, LLC*, 551 B.R. 749, 766 (D. Del. 2016).[3] Here, the Trustee has failed to do so.

The Trustee cannot establish either gross negligence or intentional misconduct/bad faith on the part of Ms. Johnson with respect to the Q2 or Q3 2021 Form 10-Qs because the Trustee has

[3] Contrary to the Trustee's assertion (Opp. 23), the Trustee is required to rebut the business judgment rule at the pleading stage. *In re Our Alchemy, LLC*, 2019 WL 4447541, *15 (Bankr. D. Del. Sept. 16, 2019).

not adequately pleaded that they were false or misleading to begin with. *Supra* 7. The Trustee has not identified any specific false or misleading inventory statement in these documents or explained how they were false or misleading. And the District Court in the Securities Class Action correctly concluded that these documents were not false or misleading, including because FE1's allegations are not credible and because these financial statements were never restated. MTD 20-21.

The Trustee also fails to plead any gross negligence or intentional misconduct/bad faith with respect to Ms. Johnson's SOX certifications. The District Court in the Securities Class Action explained, among other things, that: (1) SOX certifications are statements of opinion; and (2) plaintiff failed to "explain how the alleged [improper business] practices affected Polished's internal controls, let alone how they rendered the [certifications] false or misleading." *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F.Supp.3d 270, 308 (E.D.N.Y. 2025). Here too, there is no allegation that Ms. Johnson did not genuinely believe her SOX certifications, or that they were otherwise false or misleading. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, *3 (Del. Ch. Aug. 26, 2005) (dismissing fiduciary duty claim because "there is no allegation in the complaints that this statement of opinion was not honestly held, i.e., false").

With respect to the 2021 Form 10-K and Q2 2022 Form 10-Q, the Trustee does not identify any specific alleged false or misleading statement. MTD 19. Although the District Court concluded that certain statements in the 2021 Form 10-K and Q2 2022 Form 10-Q were false because they were later restated, the mere fact of a restatement cannot establish a breach of the duty of care or loyalty under Delaware law. MTD 23-25. Moreover, these financial statements were made over nine months after FE1's alleged hand-count of inventory in June 2021, so even accepting his ill-pled allegations as true, they do not provide any contemporaneous support demonstrating that these financial statements were false or misleading at the time. *Id.*; *Polished*, 2026 WL 673462, *8.

Similarly, and for many of the same reasons, the Trustee fails to plead any gross negligence or intentional misconduct/bad faith on the part of Ms. Johnson with respect to inventory management (or that she, as CFO, had any authority over or involvement in inventory management). MTD 17.

***The Trustee Lacks Standing to Assert These Claims and Fails to Identify Harm to the Company***. The Trustee also lacks standing to assert claims for securities fraud because they are "personal claims that belong to affected stockholders, not the Company," and, in any event, did not result in any injury to the debtor. MTD 2; Fouerti MTD 23-24; *see also In re Midway Games Inc.*, 428 B.R. 303, 314 (Bankr. D. Del. 2010) ("The issue . . . is how the Challenged Transactions, . . . harmed Debtor, not how they directly harmed creditors."); *Colotone Liquidating Tr. v. Bankers Tr. New York Corp.*, 243 B.R. 620, 622 (S.D.N.Y. 2000) (no injury to debtor based on false disclosures because "there is every reason to suppose that [debtor] was [also] the beneficiary").

In sum, "[f]or the same reasons the federal securities claims fail, Plaintiffs' breach of fiduciary duty claims fail." *Green v. Paz*, 2021 WL 11661345, *16 (D. Del. Mar. 31, 2021). "The [Complaint] fails to identify false and/or misleading statements" and the Trustee has "not alleged specific facts about" Ms. Johnson showing "that [she] knowingly caused [Polished] to make false disclosures, or in bad faith consciously disregarded red flags that should have alerted [her] to the purported falsity of [Polished's] public disclosures." *Id.*

### C. Ms. Johnson Did Not Breach Any Fiduciary Duty with Respect to Alleged Violations of Tax Law.

Here too, the Trustee does not dispute that it has not performed any investigation of the allegations in the New York Tax Case, and thus cannot certify that they are supported by any factual basis. The Court can reject these allegations on these grounds alone. *Supra* 1, 6.

Regardless, even accepting the tax-related allegations as true, they cannot support any breach of fiduciary duty claim against Ms. Johnson. The Tax Case alleged that Mr. Fouerti, not

Ms. Johnson, directed a lower-level employee to stop using a particular account in a software program to upload sales tax data for a couple months until a new account was created. MTD 26. While the Trustee makes the conclusory assertion that this decision caused Polished's non-compliance with tax laws and resulted in the Company incurring unspecified "penalties and interest for the non-compliant period," the Trustee provides no factual support for that assertion or that Mr. Fouerti's alleged decision to switch accounts was the result of gross negligence or intentional misconduct/bad faith. MTD 26; Fouerti MTD 25.

The Trustee's sole, and even more tenuous, allegation against Ms. Johnson with respect to this alleged tax violation is that in October 2022, days before Ms. Johnson's resignation, one mid-level FP&A employee raised general concerns about the delay in switching accounts, and Ms. Johnson deferred to Mr. Fouerti's decision to do so. MTD 26-27. In the Opposition, the Trustee only argues that "there is no basis for assuming that Johnson could not have done anything about the concerns presented to her" by the mid-level employee. Opp. 27. But the Trustee fails to explain how this one conversation demonstrates that Ms. Johnson knew that the Company was violating tax laws, that she had the authority to direct Polished employees to continue using the account or to switch to the new account sooner, or that she was grossly negligent or intentionally disregarded her fiduciary duties by not doing so. These allegations simply do not establish that Ms. Johnson recklessly or consciously "failed to act after learning about evidence of illegality" sufficient to state a claim for breach of fiduciary duty. MTD 27; *Segway Inc. v. Cai*, 349 A.3d 628, 629 (Del. Ch. 2023) (rejecting similar allegations).

### D. There Are No Facts Showing That Ms. Johnson Knew About or Was Engaged in the Employment of Undocumented Workers.

The Trustee does not dispute that, as a general matter, Ms. Johnson can only be liable for "decisions within her authority" as CFO, and that the alleged employment of undocumented

workers was not within her authority. MTD 17-18. Instead, the Trustee's allegations that Ms. Johnson "[k]new Polished was employing undocumented workers but took no action" (Opp. 26), are based entirely on the following: (1) that in the Securities Class Action, FE1 alleged that he informed Mr. Fouerti and Ms. Johnson about the employment of "at least 15" undocumented workers on a call on September 21, 2021; (2) that an "officer who receives credible information that the corporation is violating the law cannot turn a blind eye and dismiss the issue as 'not in my area'"; and (3) "learning that the Company was paying undocumented workers under the table, for example, has clear implications for the Company's finances." Compl. ¶70(a); Opp. 27.

The Trustee's arguments fail on the facts and the law. As an initial matter, it is not entirely clear if FE1 even alleged in the Securities Class Action that he raised the issue of undocumented workers on the September 21, 2021 phone call. *Compare* SAC ¶67 (FE1's description of the phone call does not include discussion of undocumented workers; stating that FE1 was only "able to raise most of the issues [he] wanted to discuss"); ¶84 (vaguely stating FE1 "raised all of these issues"). Regardless, any allegation of undocumented workers attributed to FE1 is insufficiently particularized. The sole allegation in the SAC, parroted by the Trustee, is that FE1 believed "that there were many undocumented workers, and in FE1's first attempt counted at least 15." *Id.* ¶93; Compl. ¶70(a). The Trustee provides no factual support that FE1—the VP of Logistics—was in a position to know the immigration status of any worker, or that his belief that there were "at least 15" undocumented workers constituted a "red flag . . . sufficiently prominent" at Polished that Ms. Johnson, as CFO, "might have a duty to report upward about it," or that she had any authority over the Company's employment practices. *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 370 (Del. Ch. 2023) ("[O]fficers generally only will be responsible for addressing or reporting red flags within their areas of responsibility"); Opp. 27 (citing *McDonald's*).

In sum, FE1's alleged conversation with Mr. Fouerti and Ms. Johnson does not establish that Ms. Johnson had "clear notice" of illegality or that she "consciously failed to act after learning about evidence of illegality." MTD 24; *Cai*, 349 A.3d at 633–34; *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) (similar). Nor has the Trustee explained how the alleged employment of undocumented workers impacted the Company's financials or harmed the Company. *Supra* 10.

This is not a "factual dispute" inappropriate for resolution on a motion to dismiss. Opp. 3. The Trustee has failed to sufficiently plead that Ms. Johnson was grossly negligent or engaged in intentional misconduct/bad faith in connection with the Company's alleged employment of undocumented workers. This pleading failure requires dismissal.

## III. <u>The Aiding and Abetting Breach of Fiduciary Duty Claim Fails as a Matter of Law.</u>

Ms. Johnson, as an officer of the Company who herself owed fiduciary duties, cannot aid and abet another fiduciary's breach as a matter of law: "[she] owes fiduciary duties to the corporation, and therefore any conduct of h[ers] rising to the level of aiding and abetting would be a breach of h[er] own fiduciary duties." *Caspian Select Credit Master Fund Ltd. v. Gohl*, 2015 WL 5718592, *13 (Del. Ch. Sept. 28, 2015) (dismissing aiding and abetting claim on this basis); D&O Defendants' MTD (ECF 29) 31 *contra* Opp. 35-36 (citing only cases stating that a director who "had no fiduciary duty" may aid and abet "a party that did"). But even if this claim could properly be asserted against Ms. Johnson (it cannot), it fails for multiple reasons. As detailed in the motions to dismiss, the underlying fiduciary duty claim against Mr. Fouerti is insufficiently pleaded. *See* MTD 26; Fouerti MTD 25-28. And the Trustee fails to plead that Ms. Johnson knowingly or substantially assisted Mr. Fouerti with respect to any alleged underlying breach. MTD 28.

### A. The Trustee Fails to Plead Knowledge.

While knowledge "may be averred generally" at the pleading stage (Opp. 34), the Trustee must still "plead facts from which it could be inferred that [Ms. Johnson] knew these actions . . .

were a breach of fiduciary duty, and knowing that, cooperated in the course of action." *Wells Fargo & Co. v. First Interstate Bancorp*, 1996 WL 32169, *11 (Del. Ch. Jan. 18, 1996).

As explained above, the Trustee fails to plead that the Q2 and Q3 2021 Form 10-Qs were false or misleading. And even though the District Court in the Securities Class Action concluded that the 2021 Form 10-K and Q2 2022 Form 10-Q contained certain false statements—merely because they were later restated—the District Court correctly concluded that neither Mr. Fouerti nor Ms. Johnson knowingly or recklessly made any allegedly false or misleading statement. *Polished*, 2026 WL 673462, *12-13. The same is true here: the Complaint provides no facts showing that Ms. Johnson was aware that Mr. Fouerti's statements in the Company's SEC filings were false or misleading. Opp. 35.

Similarly, the ill-pled conversation between Ms. Johnson and one mid-level employee with respect to Mr. Fouerti's decision to use a new account to upload sales tax data cannot demonstrate that Ms. Johnson knew that Mr. Fouerti, or the Company, was violating tax laws. MTD 27-28. And the ill-pled conversation between FE1 and Ms. Johnson does not demonstrate that she knew that Mr. Fouerti, or the Company, was employing undocumented workers. MTD 18.

**B. The Trustee Fails to Plead Substantial Assistance.**

The Trustee also fails to plead substantial assistance. As explained in the MTD, a failure to prevent a breach of fiduciary duty cannot ground an aiding and abetting claim. MTD 14. Yet, that is exactly what the Trustee alleges here. *See, e.g.*, Opp. 2 ("The other D&O defendants failed to prevent these problems . . . and unreasonably dragged their feet[.]"). With respect to the financial statements, the Trustee alleges only that Ms. Johnson somehow "provided cover" for Mr. Fouerti by "signing off on" the publicly filed financial statements. Opp. 3-4. But without any facts showing that Ms. Johnson had an "active role" in Mr. Fouerti's preparation of the allegedly false disclosures, the mere fact that she provided her own separate SOX certifications with respect to

financial reporting, while allegedly having "passively stood by while [Mr. Fouerti allegedly] breached his disclosure duty," cannot establish aiding and abetting liability. *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 401 (Del. 2024); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P*, 2006 WL 4782378, *35 (Del. Ch. Aug. 10, 2006) (rejecting "conclusory" allegations that defendants "signed off" on the transactions). Likewise, with respect to alleged violations of tax and immigration laws, the Trustee only claims that Ms. Johnson "took no action." *Supra* 1. This is insufficient to state an aiding abetting claim as a matter of law. MTD 4, 28; *supra* 14.

## IV. <u>The Trustee Does Not Assert Count 5 Against Ms. Johnson.</u>

The Trustee's Opposition makes clear that Count 5 (aiding and abetting fraud) is not being asserted against Ms. Johnson. The Opposition confirms that "[t]he Trustee's fraud claim is based on the Fouertis defrauding [Goedeker] into overpaying for Appliances Connection" in the Merger, which occurred months before Ms. Johnson joined the Company. Opp. 32; MTD 6, 28-29.

The only reason Ms. Johnson had to address Count 5 is because of the Trustee's improper group pleading against the D&O Defendants generally, without specifying who the Trustee intended to assert its claims against. MTD 16, 28. As explained above, the Trustee's allegations against Ms. Johnson are limited to issues related to financial statements, tax obligations, and the employment of undocumented workers. *Supra* 1. None of these allegations are tied to the underlying fraud claims asserted against Albert Fouerti. Accordingly, the Trustee does not assert Count 5 against Ms. Johnson. And to the extent the Trustee did intend to assert Count 5 against her with respect to Mr. Fouerti's allegedly false statements in SEC filings, it fails for the reasons discussed in the MTD and here. MTD 28-29; *supra* 14-15.

## CONCLUSION

The Court should dismiss the claims against Ms. Johnson with prejudice.

Dated: August 28, 2026
Wilmington, Delaware

**BAKER & HOSTETLER LLP**

*/s/ Jeremy D. Anderson* __________________
Jeremy D. Anderson (#4515)
1201 North Market Street, Suite 1402
Wilmington, DE 19801-1147
(302) 468-7088
jdanderson@bakerlaw.com

Douglas W. Greene (*pro hac vice*)
Zachary R. Taylor (*pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

*Attorneys for Defendant Maria Johnson*