**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>POLISHED.COM INC., *et al.*,<br><br>Debtors. [1] | Chapter 7<br><br>Case No. 24-10353 (TMH)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Polished.com Inc., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT FOUERTI; MARIA JOHNSON; DOUGLAS T. MOORE; ELLERY W. ROBERTS; ROBERT BARRY; ELLETTE A. ANDERSON; CLARK R. CROSNOE; GLYN C. MILBURN; ALAN P. SHOR; EDWARD J. TOBIN; G. ALLAN SHAW; JAMES SCHNEIDER; and ELIE FOUERTI,<br><br>Defendants. | Adv. Proc. No. 26-50213<br><br>**Related to Docket Nos. 1, 17 & 18** |

**REPLY BRIEF OF DEFENDANTS ALBERT FOUERTI AND ELIE FOUERTI IN SUPPORT OF THEIR MOTION TO DISMISS THE CHAPTER 7 TRUSTEE'S COMPLAINT**

Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
**MORRIS JAMES LLP**
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Email: ckunz@morrisjames.com
jwaxman@morrisjames.com

John F. Sylvia (*pro hac vice*)
Emily K. Musgrave (*pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 348-1820
Email: JFSylvia@mintz.com
EKMusgrave@mintz.com

Dated: August 28, 2026

*Counsel to Defendants Albert and Elie Fouerti*

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629); Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); Superior Deals Inc. (0096); and YF Logistics LLC (8373).

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................2

I. The Trustee fails to plead any fraud with particularity. ....................................2

A. The Complaint does not plead a single fraudulent representation Albert or Elie made in connection with the Merger. ....................................4

B. The Trustee lacks standing to plead post-Merger fraud. ....................................7

C. Even if the Trustee had standing, Polished explicitly released Albert from "any and all claims" "related to the Audit Investigation" and in any event fails to adequately plead these post-Merger claims. ....................................8

II. The Trustee failed to adequately plead insolvency. ....................................10

III. The Trustee failed to adequately allege the absence of reasonably equivalent value. ....................................13

IV. All claims that rely on hearsay allegations from the now-dismissed EDNY case which the Trustee has neither investigated nor verified must be dismissed. ....................................13

V. The Complaint should be dismissed with prejudice because amendment is futile. ....................................14

CONCLUSION ....................................................................................................15

RULE 7008-1 STATEMENT ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008) ....................14

*Accelerant Twister, LLC v. Marjo, LLC*,
2023 U.S. Dist. LEXIS 119275 (D. Del. July 11, 2023) ....................2

*Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital, LLC (In re Wilton Armetale, Inc.)*,
968 F.3d 273 (3d Cir. 2020) ....................7

*Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ., LLC)*,
587 B.R. 445 (Bankr. D. Del. 2018) ....................12

*Bond v. Rosen (In re NSC Wholesale Holdings LLC)*,
637 B.R. 71 (Bankr. D. Del. 2022) ....................7, 10

*Eden Alpha CI UP v. Polished.Com Inc.*,
No. 22-CV-6606 (NGG) (VMS), 2026 U.S. Dist. LEXIS 49394 ....................6, 14

*Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft* (*In re FAH Liquidating Corp.)*,
572 B.R. 117 (Bankr. D. Del. 2017) ....................11

*Faulkner v. Lone Star Brokering LLC (In re Reagor-Dykes Motors, LP)*,
2021 Bankr. LEXIS 1643 (Bankr. N.D. Tex. June 21, 2021) ....................13

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010) ....................14, 15

*In re BMT-NW Acquisition, LLC*,
582 B.R. 846 (Bankr. D. Del. 2018) ....................12

*In re Connetics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) ....................14

*In re Glencoe Acquisition, Inc.*,
2015 WL 3777972 (Bankr. D. Del. June 16, 2015) ....................12

*JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*,
558 B.R. 116 (Bank. D. Del. 2016) ....................8

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
No. 2:10-CV-0302 MRP, 2011 U.S. Dist. LEXIS 125203 (C.D. Cal. May 5, 2011) ....6

*McGown v. Silverman & Borenstein, PLLC*,
No. 13-cv-748-RGA/MPT, 2014 U.S. Dist. LEXIS 15489 (D. Del. Feb. 7, 2014) ....13

*Miller v. McCown De Leeux & Co. (In re Brown Sch.)*,
368 B.R. 394 (Bankr. D. Del. 2007) ....8

*Off. Comm. of Unsecured Creditors of Pack Liquidating, LLC v. Vagenas (In re Pack Liquidating, LLC)*,
Nos. 22-10797 (CTG), 23-50590 (CTG), 2025 Bankr. LEXIS 2215 (Bankr. D. Del. Sep. 5, 2025) ....10, 13

*Phillips v. Josmic 2 LLC (In re ONH AFC CS Investors, LLC)*,
671 B.R. 680 (Bankr. D. Del. 2025) ....11

*Skajem v. Chicken Soup for the Soul Entm't (In re Chicken Soup for the Soul Entm't)*,
Nos. 24-11442, 24-50128, 2025 Bankr. LEXIS 3185 (Bankr. D. Del. Dec. 9, 2025) ....2, 7

*Zazzali v. Hirschler Fleischer, P.C.*,
482 B.R. 495 (D. Del. 2012) ....4

**State Cases**

*Premier Healthcare, Inc. v. Waters*,
No. 2023-1263-BWD, 2024 Del. Ch. LEXIS 336 (Del. Ch. Oct. 4, 2024) ....11

*Swipe Acquisition Corp. v. Krauss*,
2020 Del. Ch. LEXIS 276 (Del. Ch. Aug. 25, 2020) ....7

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ....7

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
906 A.2d 168 (Del. Ch. 2006), aff'd, 931 A.2d 438 (Del. 2007) ....3, 4

**Federal Statutes**

PSLRA ....14

**Rules**

Fed. R. Bankr. 9011 ....14

Fed. R. Civ. P. 8(a) ....................12, 13

Fed. R. Civ. P. 9(b) ....................3, 4, 14

Fed. R. Civ. P. 11(b) ....................6

## INTRODUCTION

Despite having had unfettered access to the Company's documents for nearly ***two years*** before filing his Complaint, the Trustee seeks in all respects to avoid his obligations either to investigate his claims or to adequately plead them.

Although the Trustee alleges a significant number of claims against the Fouertis, the only specific facts that he pleads in support of those claims is an alleged 1,200 item mis-count in inventory conducted (1) ***at Polished, after the Merger*** (2) at a time when Polished is alleged to have had over 500,000 SKUs (3) sourced from an anonymous former employee account in the EDNY securities fraud complaint ("FE1") who claimed to have conducted "two hand counts" of inventory to yield this "approximate[]" number (4) which the EDNY court "decline[d] to credit" because "the SAC [did] not plead facts sufficient to allow the court to believe FE1's account," "FE1 was not in a position to know, nor had the expertise to value, the allegedly missing inventory," (5) which allegation the Trustee lifted wholesale from that now-dismissed EDNY case with no indication he conducted ***any*** independent inquiry—even though there is no indication in the EDNY complaint that FE1 had any knowledge about pre-Merger conduct by the Fouertis and (6) which allegation the Trustee ***still*** nowhere connects to any purported misrepresentation or omission the Fouertis made or to any valuation of the inventory. Given this failure to plead fraud ***with the required particularity***, the Trustee's pre-Merger claims fail.

The Trustee's post-Merger claims fail as well because Polished ***explicitly released*** Albert from "any and all" "claims…related to the Audit Committee Investigation," i.e. the very claims the Trustee asserts here. The Trustee's constructive fraudulent conveyance claims fare no better: the Trustee pleads nothing more than the statutory elements of insolvency, arguing "the Court can reasonably infer that discovery will reveal evidence of insolvency as a result of the Merger"—though, at this point, the Trustee has been in possession of ***all of the Company's documents for***

***almost two years.*** And the Trustee studiously ignores the publicly available documents from the Merger, which rebut any suggestion of insolvency. The primary basis for the alleged lack of reasonably equivalent value is, yet again, the bootstrapped hearsay concerning the alleged 1,200 mis-count in inventory, which is as insufficient a foundation for this claim as it is for fraud.

Perhaps recognizing these deficiencies, the Trustee repeatedly suggests that, by virtue of his position as a bankruptcy trustee, his pleading burdens are (or should be) lower than the caselaw mandates. Delaware courts routinely reject this argument in circumstances like these, and the reasoning behind that rejection is only deepened where, as here, the Trustee is not a "third party outsider," but rather an insider owning all of the relevant materials. No matter the standard applied, however, the Complaint fails to plead fraud with particularity and fails to plausibly plead the remainder of the claims beyond conclusory statements and rote recitations of the statutory elements of the claims. This is never enough for a complaint to survive. Because the Trustee had almost two full years to review all the Company's documents prior to filing a Complaint and nowhere explains how an amended pleading would remedy these fatal deficiencies, leave to amend would be futile. The Complaint must be dismissed with prejudice.

## ARGUMENT

### I. The Trustee fails to plead any fraud with particularity.[2]

The Trustee must plead "with particularity the circumstances constituting fraud" to put defendants "on notice of the precise misconduct with which they are charged, and to safeguard [them] against spurious charges of immoral and fraudulent behavior." *Skajem v. Chicken Soup for the Soul Entm't (In re Chicken Soup for the Soul Entm't)*, Nos. 24-11442, 24-50128, 2025 Bankr. LEXIS 3185, at *33 (Bankr. D. Del. Dec. 9, 2025) (citations omitted). He has not done so. Instead,

---

[2] The unjust enrichment claim (Claim 6) falls with the pre-Merger fraud claim. *See Accelerant Twister, LLC v. Marjo, LLC*, 2023 U.S. Dist. LEXIS 119275, at *26 (D. Del. July 11, 2023).

throughout his brief, the Trustee seeks to lower the bar on what he must plead for this Complaint to survive. First, he argues, although "the circumstances of the fraud are alleged with the requisite specificity," "the other aspects of the claims challenged by the Fouertis" including intent and damages "may be pled generally." Opp. at 3, 13, 16[3]. True, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally", but this does not obviate the Trustee's burden to plead with particularity the circumstances giving rise to the alleged fraud. *See* Fed. R. Civ. P. 9(b).

And the Trustee goes a step further, seeking to diminish his pleading burden because of who he is: "[t]he circumstances of the alleged fraud must be plead with particularity under Fed. R. Civ. P. 9(b), though a bankruptcy trustee, as an outsider to the debtor's transactions, is afforded greater liberality in pleading fraud." Opp. at 13, 32. In circumstances like these, Delaware courts have repeatedly rejected the argument that a bankruptcy trustee benefits from a lesser standard than other plaintiffs when he pleads fraud, saying "[t]hat is not a correct statement of law and its logical premise is flawed." *See e.g.*, *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 211 (Del. Ch. 2006), aff'd, 931 A.2d 438 (Del. 2007). In *Trenwick*, as here, the Litigation Trust "[r]ecogniz[ed] the deficiencies in its complaint" and so "devoted much of its briefing on its fraud claims to seeking an exemption from Rule 9(b) for itself," specifically arguing "that Rule 9(b) should be less stringently applied in the context of where a plaintiff is a third party, such as a trustee, because third parties generally have less information on which to base their allegations." *Id.* The court rejected this argument because "[t]he Litigation Trust has had far more access to information than the typical plaintiff, having access to voluminous documents during the bankruptcy proceedings, for more than a year before it filed its complaint", it was in fact "better

---

[3] All citations to "Opp." refer to Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss [D.I. 42].

positioned than most fraud plaintiffs to meet the standards of Rule 9(b)." *Id.* The court concluded, "this would be one of the last scenarios when a court's equitable heartstrings would lead it to do what it should not - that is, undercut a court rule requiring a certain level of pleading." *Id.*

Like the Litigation Trust in *Trenwick*, the Trustee here has had both access to and possession of the Company's documents ***for almost two years*** between his appointment and the time the Trustee filed his complaint. Presumably, then, the Trustee has and has had all of the Company's documents at least since 2024. This too weighs heavily against invoking this Court's "equitable heartstrings." *See Trenwick*, 906 A.2d at 211; *see also Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 511–12 (D. Del. 2012) (rejecting Trustee's argument that 9(b) pleading standard "should be relaxed" and concluding "Trustee is not entitled to a lax pleading standard").

**A. The Complaint does not plead a single fraudulent representation Albert or Elie made in connection with the Merger.**

Relying exclusively on vague generalities, the Complaint repeats, verbatim, only that "Albert caused Appliances Connection to engage in fraudulent business and accounting practices, which resulted in falsified financial statements which showed Appliances Connection to be profitable and valuable when it was not, and caused Polished to materially overpay to purchase Appliances Connection." ¶¶30, 35, 97.[4] In his Opposition, the Trustee again repeats this tagline verbatim (Albert "caused Appliances Connection to engage in fraudulent business and accounting practices") which he now says are described in "Section III.C" of his brief. Opp. at 9. Section III.C, in turn, ***still*** does not identify (i) a single, allegedly false representation—whether concerning a "business practice" or "accounting practice"—at Appliances Connection before the Merger; (ii) a single pre-Merger "falsified financial" statement from Appliances Connection; or (iii) a single allegation concerning any valuation of Appliances Connection which could establish that Polished

[4] All ¶ citations refer to paragraphs in the Complaint [D.I. 1].

"materially overpa[id]" in the Merger.

Instead, the only pre-Merger conduct the Trustee anywhere identifies as "fraudulent" remains conduct by ***Polished*** (not Appliances Connection). Opp. at 6, citing ¶ 40. In fact, in Section III.C., the Trustee doubles down on allegations about conduct that happened "***at Polished post-Merger***," (Opp. at 9), which consist of (1) "alterations of Company records for fraudulent purposes"; (2) "permit[ing] an environment at Polished that fostered noncompliance with tax obligations"; and (3) "employ[ing] large numbers of undocumented workers". Opp. at 9–10. None of this is relevant to the Trustee's claim that Albert and Elie committed fraud at Appliances Connection ***in connection with the Merger***. Because neither was an officer or director at Polished until ***after*** the June 2, 2021 Merger, any post-Merger conduct has nothing to do with an allegation of pre-Merger fraud. The Trustee even attempts some sleight of hand in the hope that the Court will elide the difference between (publicly traded) ***Polished's post-Merger conduct*** and (privately held) ***Appliances Connection's pre-Merger conduct***: "Appliances Connection had engaged in rampant fraudulent and illegal business practices before the Merger—which then continued unabated at Polished following the Merger." Opp. at 5. Polished's post-Merger conduct, however, is no substitute for allegations about Appliances Connection's pre-Merger conduct.

In fact, the only pre-Merger conduct the Trustee identifies is that (1) "the Fouertis proffered financial statements that were knowingly false because they contained inflated inventory numbers," namely "it overstated inventory by approximately 1,200 pieces"; and (2) "Appliances Connection engaged in rampant falsification of customer records and illegal labor practices." Opp. at 32. These two items, the Trustee says, "are sufficient "to place the defendants on notice of the precise misconduct with which they are charged." *Id.* These arguments fail.

The alleged inventory hand count yielding a 1,200-piece discrepancy, a cornerstone of the

Trustee's claims[5]—took place "[f]ollowing the Merger," as the Trustee admits. ¶ 48; ¶ 52(b). These allegations are taken exclusively from the complaint in the EDNY case, where they were attributed to an anonymous former employee (FE1). [Ex. 7, *Eden Alpha CI UP v. Polished.Com Inc.*, No. 22-CV-6606 (NGG) (VMS), 2026 U.S. Dist. LEXIS 49394, at *14 (E.D.N.Y. Mar. 10, 2026].[6] "[D]eclin[ing] to credit the allegations made by this anonymous account," the EDNY court explained "FE1 was not in a position to know, nor had the expertise to value, the allegedly missing inventory." *Id.* at 14, 17. This is because "[t]he SAC fails to represent how FE1 knew that 1,200 missing units at the subsidiary on a single day, 'materially misstated [Polished's inventory] on the balance sheet' for an entire quarter or fiscal year":

> Polished allegedly had 500,000 stock keeping units, or items of inventory for sale, as of March 31, 2022. There is no allegation that FE1 understood how to value this inventory, and that omission of the value of these missing units also undermines Plaintiff's credibility…Even assuming these 1,200 units were truly missing, the court cannot credit that this number was material without knowing anything about the valuation of these goods.

*Id.* at 18 –19 (and cases cited). There, as here, "Plaintiff rests most of its case on numbers from a single day, which could have changed the next day or week without FE1's knowledge." *Id.* at 18. As a result, these allegations "are not pleaded with sufficient detail for this court to credit them." *Id*. at 25. These concerns only deepen here, where the Trustee does not allege that he even spoke with FE1 or any of the attorneys in the EDNY case who did. *See Maine State Retirement Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, at *65–66 (C.D. Cal. May 5, 2011) (citing Fed. R. Civ. P. 11(b)) ("duty to make a reasonable inquiry"

---

[5] *See, e.g.*, Opp. at 2 ("inventory management issues"; 7-8 (alleging "false inventory numbers" and describing at length witness's allegations in the EDNY matter); 9 ("fraudulent inventory practices"); 32 (pre-Merger financial statements "were knowingly false because they contained inflated inventory numbers"). Polished, in any event, explicitly released Albert from "any and all" "causes of action" related to this claim, see *infra* Section I.C.

[6] All citations to Exhibits (Ex.) refer to the Exhibits attached to the Declaration of Emily Kanstroom Musgrave dated June 8, and filed concurrently with the Opening Brief of Defendants in Support of their Motion to Dismiss [D.I. 18].

"include[s] speaking directly to the sources upon which the other complaints rely… or contacting the attorneys whose allegations they copied").

The only other basis alleged for pre-Merger fraud is the "falsification of customer records and illegal labor practices" (Opp. at 32), yet the Trustee does not explain how this ***caused*** Polished to "materially overpa[y]" in the Merger either. Because there is no basis in law or in alleged facts (much less pled with particularity) for the pre-Merger fraud claim, it must be dismissed. *See Bond v. Rosen (In re NSC Wholesale Holdings LLC)*, 637 B.R. 71, 82–83 (Bankr. D. Del. 2022); *see also Skajem*, 2025 Bankr. LEXIS 3185, at *33 (plaintiff must plead "who, what, where, when, how, and why" of alleged fraud) (citations omitted).[7]

**B. The Trustee lacks standing to plead post-Merger fraud.**

The Trustee does not have standing to plead his claim that, after the Merger, "as a result of the fraud and deceit of [Albert and Elie]…Polished suffered damages." ¶ 99.[8] This is precisely the type of "fraud," arising from a decrease in the price of a Company's stock, that affected stockholders might assert—not the Company, and so not the bankruptcy estate. *See, e.g., Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital, LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, 282–83 (3d Cir. 2020) (trustee may assert only "general" claims that enlarge the estate; "personal" claims belong to the individual and are not property of the estate); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (distinguishing between

[7] Even were the Court to find the pre-Merger fraud has been alleged with particularity, the Complaint still fails to plead Albert and Elie's pre-Merger knowledge or intent concerning any allegedly fraudulent activities or the alleged damage to Polished as a result. In both instances, the Trustee demurs on the grounds that he need only allege the elements "generally". Opp. at 13, 33. Even under the Trustee's own caselaw, "[a] plaintiff adequately pleads damages resulting from fraud when the complaint sufficiently puts defendants on notice of the precise way in which [defendant] may have been harmed." *Id.* at 33, citing *Swipe Acquisition Corp. v. Krauss*, 2020 Del. Ch. LEXIS 276, at *22 (Del. Ch. Aug. 25, 2020). The Trustee has not even "generally" done so.

[8] For avoidance of doubt, the Fouertis do not concede the Trustee's standing to bring 'pre-merger' conduct claims (Opp. at 30). As stated in the Fouerti's Opening Brief at 23, fraud claims, like those the trustee asserts here, are not estate property, regardless of whether such claims arose before or after the Merger.

direct and derivative claims based on who suffered the harm and who would recover).

In response, the Trustee says only that, in addition to shareholders, "Polished was harmed too," which permits him to "recover for the bankruptcy estate itself." Opp. at 31. The only case on which he relies, *Brown Schools*, is inapposite – indeed, the case did not address allegations of fraud at all (much less fraud based on a decline in stock value). Rather, the allegations that Mr. Miller, as Chapter 7 Trustee, brought in *Brown Schools* actually were "claims on behalf of an estate's creditors," including (1) wrongful prolongation of the Debtors resulting in the unlawful preference of certain defendants; (2) breach of fiduciary duties to the Debtors and creditors; and (3) "deepening insolvency and liquidation of the Debtors…to prefer and enrich [certain defendants] at the expense of the Debtors and their creditors." *Miller v. McCown De Leeux & Co. (In re Brown Sch.)*, 368 B.R. 394, 400 (Bankr. D. Del. 2007). It was in ***that*** context, that the court commented, "[a]lthough the Trustee has included language that alleges creditors were damaged, the Trustee in every instance also asserts that the Debtors were damaged. Even though the Trustee's claims incidentally implicate creditors' rights, the Trustee has standing to assert the claims of the Debtors." *Id.* (internal citations omitted); *see* Opp. at 31. This case is entirely different. Here, the Trustee seeks to assert classic shareholder fraud claims against Polished's officers and directors, and the Trustee does not have standing to bring it. *See JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*, 558 B.R. 116, 132 (Bank. D. Del. 2016) (dismissing common law fraud claim because "[f]raud claims are personal claims that belong to affected stockholders, not the Company . . . they "are not estate property, and therefore the Trustee lacks standing to bring them.").

**C. *Even if the Trustee had standing, Polished explicitly released Albert from "any and all claims" "related to the Audit Investigation" and in any event fails to adequately plead these post-Merger claims.***

Even if the Trustee had standing, Polished ***explicitly released*** Albert from "any and all" "claims…related to the Audit Committee Investigation," [Ex. 3] barring the Trustee's post-Merger

claims. The Trustee's argument that "further discovery" is required to "determine[]" "the contours" of the investigation (Opp. at 20) is belied by the express allegations in the Complaint. Indeed, the Trustee references the Audit Committee investigation more than 20 times in the Complaint, citing Polished's public disclosure meticulously documenting its scope. ¶¶ 75, 77. Tellingly, after nearly 2 years with the Company's documents, ***the only document the Trustee cites from Polished's files is a slide presentation concerning the Audit Committee investigation***, which, he represents "summarized the investigation's findings by 5 key categories," including the very categories on which the Trustee relies in his Complaint for the alleged misconduct. ¶ 78.[9] As pled, the scope and findings of the Audit Committee investigation are crystal clear and the release (which the Trustee does not challenge) expressly released Albert from any claims related to those findings.[10]

Even were the Trustee's post-Merger claims not explicitly barred by the release, the Complaint fails to plead, much less with the requisite particularity for any fraud claim, any post-Merger conduct. In support of his claims that Albert and Elie and others committed fraud, breached their fiduciary duties or aided and abetted the same while at Polished after the Merger, the Trustee points this Court to (1) the same alleged 1,200-piece inventory issue on which he relied for the pre-Merger fraud theory; (2) "alteration of Company records" for unspecific "fraudulent purposes"; (3) causing Polished "not to pay its workman's compensation insurance premium" "permit[ing] an environment at Polished that fostered noncompliance with tax obligations; and

[9] These 5 categories are: (1) "[M]anagement and accounting of inventory" (including the alleged 1,200 unit miscount); (2) "[D]esignation and sale of damages (scrap) goods," (3) "Misappropriation of company resources by former management"; (4) "Violations of immigration laws"; and (5) "Violations of labor and safety laws and regulations." ¶ 78. In fact, the only alleged misconduct potentially ***not*** covered by the release is the "Tax Case," ¶¶ 60–68, which the Trustee alleges to have caused "penalties and interest for its failure to pay sales and use tax" during August-November 2022," ¶ 64(h)—nowhere near the $200 million in damages the Trustee alleges.

[10] Although the Complaint pleads fraud (Count 1) against Elie, in his brief the Trustee appears to now pursue only Albert. *See, e.g.,* Opp. at 5 ("Albert Fouerti orchestrated the merger for his personal enrichment.")

"employ[ing] large numbers of undocumented workers." Opp. at 5, 8–10, 18, 26. This disjointed collection of allegations fails to explain on what facts the Trustee relies to plead with particularity that, after the Merger (1) Albert or Elie made material, false statements or omissions (2) with "the intent to induce" Polished to take a particular action; (3) that Polished acted in "justifiable reliance" on their representations; and (4) that Polished was damaged in the amount of $200 million as a result. *In re NSC Wholesale Holdings LLC*, 637 B.R. at 81. Because "[t]here are no facts pled whatsoever to support that any misrepresentations or omissions were made *to the Debtors* and that the *Debtors relied* on said misrepresentations," the post-Merger fraud claim fails. *Id.* at 82.

## II. The Trustee failed to adequately plead insolvency.

Insisting his burden "is not onerous," the Trustee does not plead a single, non-conclusory fact in support of insolvency. The only paragraph in the Complaint that the Trustee points this Court to in support of his insolvency allegations is Paragraph 131, which reads "[a]t all times material hereto, Polished had at least one creditor prior to making the Transfer." Opp. at 38. And the only additional allegations the Trustee *could* point the Court to are the surrounding two paragraphs which repeat the statutory elements: (1) "[o]n or around June 2, 2021, Polished transferred $180 million to Albert Fouerti and/or affiliates of Albert Fouerti, in cash (the "Transfer")"; and (2) "[a]t all times material hereto, Polished was insolvent or was rendered insolvent as a result of this Transfer." ¶¶ 130, 132. This is not enough.

"Mere recitations by a trustee that a debtor is insolvent are conclusory, and are therefore insufficient to survive a motion to dismiss." *Off. Comm. of Unsecured Creditors of Pack Liquidating, LLC v. Vagenas (In re Pack Liquidating, LLC)*, Nos. 22-10797 (CTG), 23-50590 (CTG), 2025 Bankr. LEXIS 2215, at *22 (Bankr. D. Del. Sep. 5, 2025) ("conclusory assertions of insolvency…ought to be disregarded."). The sum total of the Trustee's argument is that "Polished overpaid substantially in the transaction" and "Appliance Connection was not actually a profitable

business (despite what its false and inflated financial stated).” Yet the Trustee ***neither pleads in the Complaint nor argues in his Opposition a single fact in support of either contention***. He says nothing about Polished’s assets or income at the time of the transfer, nor even whether the $180 million Polished paid to acquire Appliances Connection was a substantial or even relevant portion of those assets or income. Instead, the Trustee urges, because Polished “struggled financially following the Merger,” “the Court can reasonably infer that discovery will reveal evidence of insolvency as a result of the Merger,” though (given that he has all the Company’s documents) it is unclear what sources the Trustee plans to mine that he does not already possess. Opp. at 38.

Courts routinely dismiss complaints like this one for failure to adequately plead insolvency, and this case—which is in fact more egregious in the skeletal allegations the Trustee offers—is no exception. *See, e.g.*, *Premier Healthcare, Inc. v. Waters*, No. 2023-1263-BWD, 2024 Del. Ch. LEXIS 336, at *6–7 (Del. Ch. Oct. 4, 2024) (dismissing complaint for fraudulent conveyance where “[d]espite conclusory allegations that ‘[a] substantial portion of [Decedent’s] assets, funds, and income’ was transferred and Decedent ‘was otherwise insolvent,’ Plaintiff pleads no *facts* supporting an inference that Decedent was insolvent.”); *Phillips v. Josmic 2 LLC (In re ONH AFC CS Investors, LLC),* 671 B.R. 680, 697–98 (Bankr. D. Del. 2025) (dismissing a constructive fraudulent transfer claim for failure to plead specific facts supporting insolvency).

None of the cases on which the Trustee relies (Opp. at 38) stand for the proposition that merely rehearsing the standard for insolvency followed by plaintiff’s own *ipse dixit* is sufficient to survive a motion to dismiss. *Compare Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft* (*In re FAH Liquidating Corp.)*, 572 B.R. 117, 128 (Bankr. D. Del. 2017) (insolvency adequately pled based on publicly available documents incorporated into the complaint showing setbacks during the Transfer period that prevented Debtors from meeting

milestones under their loan agreement); *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 856 (Bankr. D. Del. 2018) ("Trustee must do more than simply recite statutory elements, but he need only state facts with sufficient particularity to provide the defendant fair notice of the charges against him."); *In re Glencoe Acquisition, Inc.*, 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015) (finding insolvency adequately pled where complaint showed "extremely insufficient surpluses" and failure to "maintain sufficient reserves to satisfy the potential claims"); *Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ., LLC)*, 587 B.R. 445, 459 (Bankr. D. Del. 2018) (Defendants did not challenge insolvency pleading). Even if insolvency is often a "fact driven" inquiry at trial, (Opp. at 39), that does not obviate the Trustee's burden to adequately plead a plausible basis for his claims at this stage. *See* Fed. R. Civ. P. 8(a).

Moreover, to the extent the factual record before this Court raises any inference, it is that Polished was ***not*** insolvent at the time of the Merger. The Trustee offers no response to the Company's SEC filings (Opening Br. at 13–14)[11], which show that not only was there no going concern qualification in the S-1, but the stock offering Prospectus filed with it evinced Polished Management's view that the Company was not insolvent: "Management has prepared estimates for fiscal years 2021 and 2022 and believes that sufficient funds will be generated from operations to fund our operations and to serve our debt obligations for one year from the date of the filing of our quarterly report on Form 10-Q for the quarter ended March 31, 2021." [Ex. 2 at 62]. The very fact that Polished raised over $200 million from the public markets speaks for itself. Further, Polished Management represented the "accompanying consolidated financial statements have been prepared on a going concern basis under which we are expected to be able to realize our assets and satisfy our liabilities in the normal course of business." The Trustee nowhere connects

[11] Citations to "Opening Br." Refer to the Opening Brief of Defendants Albert Fouerti and Elie Fouerti in Support of their Motion to Dismiss the Chapter 7 Trustee's Complaint [D.I. 18].

the vague allegations of "wrongdoing" to Polished being driven "out of business" ***three years later***.

## III. The Trustee failed to adequately allege the absence of reasonably equivalent value.

Even if the Complaint adequately pled insolvency, it "must still sufficiently allege that the value received in exchange for the transfer was not reasonably equivalent." *In re Pack Liquidating, LLC,* 2025 Bankr. LEXIS 2215, at *23; *see Faulkner v. Lone Star Brokering LLC (In re Reagor-Dykes Motors, LP)*, 2021 Bankr. LEXIS 1643, at *11–12 (Bankr. N.D. Tex. June 21, 2021) (stating only "debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8").

In response, the Trustee argues: (1) the conclusory allegation that "Polished did not receive reasonably equivalent value … because the purchase price paid for Appliances Connection substantially exceeded the fair market value of the company and was substantially inflated by false financials and the concealed violations of law which infected its operations" (none of which is factually supported); (2) Appliances Connection's "balance sheet" included "overstated inventory by approximately 1,200 pieces"; and (3) that any argument citing to facts indicating the Merger ***was*** for reasonably equivalent value create "only factual disputes" that ought to be resolved later. [Br. at 39–40]. None of this is sufficient: the Trustee certainly cannot bootstrap a lack of reasonably equivalent value from the 1,200-piece inventory issue when that allegation is itself uncredible and untethered to any valuation, *see supra* Section I.A. Simply put, the Trustee does not plead any facts supporting a claim that the price Polished paid was more than Appliances Connection was worth.

## IV. All claims that rely on hearsay allegations from the now-dismissed EDNY case which the Trustee has neither investigated nor verified must be dismissed.

Parties have a "duty" "to conduct a reasonable pre-filing factual investigation." *McGown v. Silverman & Borenstein, PLLC*, No. 13-cv-748-RGA/MPT, 2014 U.S. Dist. LEXIS 15489, at

*3 (D. Del. Feb. 7, 2014). Yet the Trustee argues that because the PSLRA does not apply to the Trustee's claims here (though it did apply to the EDNY case from which these claims are lifted) his burden is diminished and his Complaint may rest on the same hearsay allegations from anonymous former employees that the court in EDNY rejected, and which the Trustee did not investigate. *See* Opp. at 17 (arguing that because the PSLRA is not in play, "courts do not require pleading of evidence, weight that evidence for "probability determination, or require detailed valuations at the pleading stage."). This conclusory statement is both unsupported (the Trustee cites not a single case) and beside the point.

The point is not that the Complaint fails to meet the PSLRA's pleading standard, but rather that nearly every allegation in the Complaint is based on statements from anonymous witnesses with whom the Trustee never spoke and which the EDNY court found were pled with insufficient detail to credit. [Ex. 7, *Eden Alpha CI UP*, 2026 U.S. Dist. LEXIS 49394, at *14–15]. Regardless of the difference between Rule 9(b) and the PSLRA, the Trustee must conduct a pre-filing investigation sufficient to "validate the truth and legal reasonableness" of the Complaint. *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (citations omitted); *see* Fed. R. Bankr. 9011. Plainly, he has not. The Trustee says nothing to the contrary, insisting (without citing a single case) that "there is nothing unusual or inappropriate" about this behavior. Opp. at 15–18.

**V. The Complaint should be dismissed with prejudice because amendment is futile.**

Leave to amend should be denied where futile. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174–75 (3d Cir. 2010). Having now been "put on notice of the deficiencies in the complaint by the motion to dismiss," if the Trustee "had something relevant to add, [he] should have moved to add it" here. *Fire & Police Pension Ass'n of Colo. V. Abiomed*, Inc., 778 F.3d 228, 247 (1st Cir. 2015); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st

Cir. 2008) (plaintiffs "may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint"). The Trustee has had access to the Company's documents for almost two years and still does not explain what he intends to plead in an amended complaint that he did not plead here. This Complaint should be dismissed with prejudice. *See Great Western Mining*, 615 F.3d at 179.

## CONCLUSION

For the foregoing reasons and those in their Opening Brief, Albert and Elie Fouerti respectfully request that the Court dismiss this case in its entirety, with prejudice.

## RULE 7008-1 STATEMENT

Albert and Elie Fouerti do not consent to the entry of final orders or judgments by the Court.

Dated: August 28, 2026

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Email: ckunz@morrisjames.com
jwaxman@morrisjames.com

John F. Sylvia (*pro hac vice*)
Emily K. Musgrave (*pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
Telephone: (617) 348-1820
Email: JFSylvia@mintz.com
EKMusgrave@mintz.com

*Counsel to Defendants Albert and Elie Fouerti*